*Filer's Name, Address, Phone, Email:*

CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com
aito@hibklaw.com
Attorneys for the Debtors





hib_6004-1a (12/20)

To upload form in CM/ECF, "flatten" file to lock in the information. "Print to PDF" or print to paper and scan it to make a PDF. Do not use "Save" or "Save As...."

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF HAWAII**
**1132 Bishop Street, Suite 250**
**Honolulu, Hawaii 96813**

Debtor(s):

**Pacific Links U.S. Holdings, Inc.; Hawaii MVCC LLC; Hawaii MGCW LLC; MDRE LLC; MDRE 2 LLC; MDRE 3 LLC; MDRE 4 LLC; MDRE 5 LLC ("Debtors")**

Chapter: **11**     Case No.: **21-00094** (Jointly Administered)
Hearing Date: July 1, 2022
Time: 2:00 pm

| COVER SHEET – MOTION TO SELL PROPERTY | |
|---|---|
| Moving Party: | Debtors |
| Property Description: | Tax Map Key Nos. (1) 8/4/002: 5, 12, 53, 55, 56, 57, 67, 70, 76; (1) 8-4-019:032; (1) 8-4-020:15; (1) 8-4-021:068 (1) 8-4-023:14, 15; and (1)8-4-024-0001 (the "Land"), furniture, fixtures and equipment located and used in the Makaha East golf course operations, the tradename "Makaha Valley Country Club" |
| This motion affects property rights of: | (a) Kehalani Commercial Associates LLC<br>(b) MRGC LLC; and<br>(c) Tianjin Dinghui Hongjun Equity Investment Partnership |
| Selling Price: | $20,700,000.00 |
| Proposed Buyer: | KH Gangwon Development, Inc., or assignee |
| Overbid Provisions: | Approve the Bidding Procedures set forth in the PSA, including without limitation, (i) payment of US$400,000.00 to KH, the proposed "stalking horse bidder", (ii) allowing KH to receive a "bid credit" in the amount of the Break Up Fee at each round of bidding at any auction, and (iii) setting minimum incremental bidding of $100,000.00 |
| ☑ Sale is property of the estate and is being sold free and clear of liens under 11 U.S.C. § 363(f).*<br><br>**$188 filing fee due** | *Check each statement that applies*:<br>☐ (1) Applicable bankruptcy law permits sale of such property free and clear of such interest.<br>☑ (2) Such entity consents.<br>☐ (3) Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property.<br>☑ (4) Such interest is in bona fide dispute.<br>☐ (5) Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. |

Dated: 6/3/2022

/s/ Allison A. Ito

For Moving Party

*In CM/ECF, select Motions & Responses > Motions/Applications > Sell Property Free and Clear of Liens Under Section 363(f) (Motion) (FEE 188).  If not a sale under § 363(f) because property is not property of the estate, is unencumbered, or is being sold subject to liens, select Approve Sale (Motion).*

CHOI & ITO
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com
aito@hibklaw.com

Attorneys for Debtor
and Debtor-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>PACIFIC LINKS U.S. HOLDINGS, INC, a Delaware Corporation,<br><br>Debtor and<br>Debtor-in-possession | **Case No. 21-00094**<br>(Chapter 11)<br>(Jointly Administered)<br><br><br>MOTION FOR ORDER AUTHORIZING (A) SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS AND ENCUMBRANCES; (B) ASSUMPTION AND ASSIGNMENT OF COLLECTIVE BARGAINING AGREEMENT; AND (C) RELATED RELIEF; EXHIBITS "A" - "H"; DECLARATION OF WEI ZHOU |
| This document relates to:<br>ALL CASES. | HEARING:<br>Date: July 1, 2022<br>Time: 2:00 p.m.<br>Judge: Hon. Robert J. Faris |

PACIFIC LINKS U.S. HOLDINGS, INC. a Delaware corporation ("PLUSH"), HAWAII MVCC LLC, a Hawaii limited liability company ("MVCC") HAWAII MGCW LLC, a Hawaii limited liability company ("MGCW"), MDRE LLC, a Hawaii limited liability company ("MDRE"), MDRE 2 LLC, a Hawaii limited liability company ("MDRE 2"), MDRE 3 LLC, a Hawaii limited liability company ("MDRE 3"), MDRE 4 LLC, a Hawaii limited liability company ("MDRE 4") and MDRE 5 LLC, a Hawaii limited liability company ("MDRE 5") (collectively, the "Debtors"), by and through their undersigned counsel, hereby moves this Court for an order as follows:

(a) Approving the sale of substantially all of the Debtors assets free and clear of liens and encumbrances to KH Gangwon Development, Inc. ("KH") or a higher bidder, substantially on the terms set forth in the pre-petition Purchase and Sale Agreement ("PSA") with KH attached hereto as **Exhibit A**;

(b) Approving Hawaii MVCC LLC's assumption and assignment of the Collective Bargaining Agreement by and between Hawaii MVCC LLC and Laborers' International Union of North America Local, 368 dated May 18, 2018 (as amended, the "CBA") attached hereto as **Exhibit H**;

(c) Authorizing the Debtors to accept overbids for the Property (as defined in the PSA) at an Auction[1] on the terms described herein and authorizing payment at closing of a $400,000.00 break-up fee to KH in the event that it is not the winning bidder;

---

[1] The auction date and time will be set by the Court at the hearing on the Debtor's *Motion For Order Approving Bid Procedures For Sale Of Substantially All Of Debtor's Assets And Related Relief* (the "Bid Procedures Motion"). *See* dkt. #504.

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed 06/03/22   Page 3 of 185

(d) Determining that the purchase of the Property by KH (or the winning bidder, if not KH) is made in good faith within the meaning of Bankruptcy Code § 363(m); and

(e) Authorizing the Debtors to disburse the sales proceeds to pay in the following priority: (i) any ordinary and customary closing costs of sale including, standard seller's title policy, real property taxes, conveyance tax, and recordation fees; (ii) the payment of the higher of $6 million or 30% of the gross sale price in full satisfaction of all amounts owed to secured creditor Kehalani Commercial Associates LLC and MRGC LLC (together, "Towne"); and (iii) turning over the balance of the proceeds to the Debtors, subject to the terms of the Debtors' confirmed Plan;

In support of this motion (the "Motion"), the Debtors respectfully represents as follows:

## I.   **JURISDICTION AND VENUE**

This Court has jurisdiction over this matter, pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2).

Venue is proper before the Court, pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.   **BACKGROUND**

### A.   **BANKRUPTCY AND FACTUAL BACKGROUND**

PLUSH and its seven subsidiaries, MVCC, MGCW, MDRE, MDRE 2, MDRE 3, MDRE 4 and MDRE 5 (collectively, the "Subsidiary Debtors"), are the debtors and debtors-in-possession in Chapter 11 case nos. 21-00094, 21-00095, 21-00096, 21-00097, 21-00098, 21-00099, 21-00100, and 21-00101 (collectively, the "Chapter 11 Cases"), which were commenced by the filing of voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on February 1,

2021 (the "Petition Date"), in the United States Bankruptcy Court for the District of Hawaii (the "Court").

The major asset of the Debtors is approximately 644-acres (the "Makaha Property") of entitled, master-planned development property commonly referred to as the "Makaha Valley Resort" in the Makaha Valley on Oahu, owned by the Subsidiary Debtors. MVCC owns and operates the Makaha East golf course, and has approximately 18 employees. MGCW owns the fallow Makaha West golf course.

As of the Petition Date, approximately 44-acres of real property owned by MDRE 3 and MDRE 4 were subject to valid, enforceable pre-petition mortgages in favor of MRGC LLC and Kehalani Commercial Associates LLC, which had commenced a foreclosure action against MDRE 3 and MDRE 4 in the Circuit Court for the First Circuit Court of the State of Hawaii on March 18, 2020.

As of the Petition Date, the approximately 600-acres of real property owned by MVCC, MGCW, MDRE, MDRE 2, MDRE 4 (as to just approximately three acres) and MDRE 5 were subject to disputed, pre-petition mortgages in favor of Tianjin Dinghui Hongjun Equity Investment Partnership, a Chinese limited partnership ("TDH" or "CDH"), which had commenced a foreclosure action against MVCC, MGCW, MDRE, MDRE 2, MDRE 4, and MDRE 5 in the First Circuit Court of the State of Hawaii on January 22, 2021.

On March 7, 2022, the Debtors filed its *First Modified Second Amended Joint Chapter 11 Plan [of Liquidation]* (the "Plan"), which the Court confirmed recently.  *See* dkt. ## 500 and 501.

The Plan contemplates the sale of the Makaha Property free and clear of Towne's mortgages so long as Towne receives, on or before December 31, 2022, the greater of $6 million or 30% of the gross sale price for the Makaha Property. *See* Plan, at II.C.2, IV.A.4.  *See also* dkt. # 516 (Towne's Joinder in Bid Procedures Motion).  The Plan also provides for the distribution of the proceeds of the sale of the Makaha Property after the conclusion of the fraudulent transfer adversary proceeding, and an auction of the Makaha Property in the event that a consensual sale does not close by December 31, 2022.  *See* Plan, at §IV.A.5.

On May 16, 2022, the Debtors filed their Bid Procedures Motion.  *See* dkt. #504.  The hearing on the Bid Procedures Motion is scheduled for June 13, 2022.

## B.    PROPOSED SALE AND CONSIDERATION

The PSA provides for the purchase and sale of substantially all of the Debtors' assets, collectively defined as "Property" to KH for $20.7 million, subject to overbids and Court approval.  The Property to be sold includes approximately 644 acres of land identified with Tax Map Key Nos. (1) 8/4/002: 5, 12, 53, 55, 56, 57, 67, 70, 76; (1) 8-4-019:032; (1) 8-4-020:15; (1) 8-4-021:068 (1) 8-4-023:14, 15; and (1)8-4-024-0001 (the "Land"), furniture, fixtures and equipment located

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 6 of 185

and used in the Makaha East golf course operations, the tradename "Makaha Valley Country Club," and the assumption and assignment of the  CBA. [2]  Among other terms, the PSA is conditioned upon a finding that the Buyer is a "good faith purchaser" within the meaning of 11 U.S.C. § 363(m).

The PSA provides that the sale is subject to overbids from qualified bidders. KH has opened escrow at Title Guaranty Escrow Services and made the non-refundable deposit of $1.5 million as required under section 2.1 of the PSA.

The major terms of the proposed sale are summarized below:

     a. Buyer:  KH Gangwon Development, Inc., or assignee.

     b. Purchase Price: $20,700,000.00.

     c. Deposit: $1,500,000.00.

     d. Closing date: Deadline to close of August 2, 2022.

     e.  "Bidding Protections" to KH as more fully set forth in Section 8.6.3 of the PSA, and in the Bid Procedures Motion.

Attached hereto as **Exhibits "C" – "G"** is a true and correct copy of title reports for the Property issued by Title Guaranty of Hawaii dated as of May 6, 2022.

## III.  ARGUMENT

---

[2] The CBA covers certain employees of the Makaha East golf course which is owned and operated by MVCC.  To facilitate the continued alcohol sales at the golf course snack bar, MVCC intends to enter into a Liquor Management Agreement with KH until such time as KH can obtain its own liquor license.

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 7 of 185

## A. PROPOSED SALE MUST BE FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCES.

The Court may approve the sale of the Property as set forth above pursuant to Bankruptcy Code sections 363(f).  Under Bankruptcy Code section 363(f), the Court may approve a sale of assets free of the interests of a third party if:

1. applicable nonbankruptcy law permits sale of such property free and clear of such interest;

2. such entity consents;

3. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

4. such interest in bona fide dispute; or

5. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

With respect to undisputed secured creditor Towne, it has consented to the proposed sale.  *See* dkt. # 501 (Plan confirmation order); *see also* dkt. # 516 (Towne joinder to Bid Procedures Motion).  By agreement, Towne will be paid the greater of $6 million or 30% of the gross sale price for the Makaha Property at closing which satisfies section 363(f)(2).

With respect to disputed secured creditor, TDH, its liens are disputed and subject to a pending fraudulent transfer lawsuit which is scheduled to go to trial during the week of June 27, 2022.  This Motion satisfies section 363(f)(4) of the Bankruptcy Code.

For the avoidance of doubt, the sale of the Property would also be free and clear of any Encumbrances asserted by any government entity, including but not limited to the United States of America and the State of Hawaii, Department of Taxation, whose outstanding real property taxes will be paid at closing.

## A. THE BUSINESS JUDGMENT RULE IS SATISFIED FOR THE ASSUMPTION AND ASSIGNMENT OF THE CBA.

As contemplated by the PSA, MVCC seeks authority to assume and assign the CBA to KH or the successful bidder. Bankruptcy Court sections 365(a) and 365(f) permit the MVCC, subject to court approval, to assume any executory contract or unexpired lease and assign the same to a third party. In the Ninth Circuit, the decision to assume or assign an executory contract or unexpired lease is within the reasonable business judgment of the debtor. *See In re Chi-Feng Huang*, 23 B.R. 798 (Bankr. 9th Cir. 1982). The business judgment test requires a showing that the assumption will benefit the debtor's estate. *Id*. at 800-801.

MVCC submits that there is sound business justification for the assumption and assignment of the CBA to the Buyer because the assumption will allow for a seamless operation of the golf course post-closing. The approximately four employees covered by the CBA are maintenance workers whose roles are vital to the continued operation of the Makaha East golf course. MVCC is current on its obligations to the union under the CBA. Moreover, since KH has the resources to

continue the golf course operations in the ordinary course, adequate assurance of future performance is not an issue.

**B. THE EVIDENCE SUPPORTS A FINDING THAT BUYER IS A GOOD FAITH PURCHASER UNDER SECTION 363(M).**

Section 363(m) of the Bankruptcy Code protects the purchaser from the "unwinding" of a transaction of the Debtor's assets due to an appeal. In this case, the certainty of the transaction for the ongoing golf course operations is essential. Pursuant to Section 363(m), "[w]hen a sale of assets is made to a good faith purchaser, it may not be modified or set aside unless the sale was stayed pending appeal." *In re Filtercorp, Inc.*, 163 F.3d 570, 577 (9th Cir. 1998). A "good faith" purchaser is one who purchases in "good faith," and "for value." *See id.* The absence of "good faith" is "typically shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Filtercorp, Inc.*, 163 F.3d at 577 (internal quotation marks and alterations omitted). The "good faith" inquiry focuses on the conduct during the sales proceeding. *See In re Suchy*, 786 F.2d 900, 902 (9th Cir. 1985).

Here, the Declaration of KH's CEO sets forth facts that demonstrate that it has acted in good faith and without any fraud or collusion. *See* Declaration of Gyusik Bang filed herewith, at ¶¶ #3 - #9. The PSA is a product of good-faith, arms-length negotiations.

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 10 of 185

## B.    THE COURT SHOULD APPROVE THE PAYMENT OF TOWNE AT CLOSING

The Debtors also seek authority to disburse the sales proceeds to pay in the following priority: (i) any ordinary and customary closing costs of sale including, closing costs required to be paid by Debtors in accordance with the PSA, including but not limited to one-half (1/2) of the escrow fees, all recording fees, the conveyance tax, the premiums for a standard owner's policy in the amount of the Purchase Price and an extended Owner's ALTA title insurance policy including endorsements required by buyer, the cost of all surveys including any ALTA survey ordered by buyer, and such other costs and expenses which are to be paid by Debtors under the PSA, and Debtors' share of prorations, including but not limited to utility charges and real property taxes and assessments; (ii) payment of the amounts owed to Towne pursuant to the terms of the Plan (i.e, the greater of 6 million or 30% of the gross sale price for the Makaha Property); and (iii) to hold the net proceeds until further order of the Court.

## C.    REQUEST FOR WAIVER OF 14-DAY STAY.

Pursuant to Rule 6004(h), the Debtors request that the Court waive the fourteen (14) day stay and authorize the closing on the Sale and consummate the transactions contemplated by the Agreement immediately upon entry of the Sale Order.  The prompt closing of the transaction will save the estate hundreds of dollars daily in real property tax accruals.

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 11 of 185

## IV.  CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court grant the Motion and approve (a) the proposed sale free and clear of liens and encumbrances; (b) the proposed distribution/payment of sales proceeds as set forth above; (c) MVCC's assumption and assignment of the CBA to KH or the winning bidder; and (d) grant other and further relief that this Court deems just and proper.

DATED: Honolulu, Hawaii, June 3, 2022.

/s/ Allison A. Ito
CHUCK C. CHOI
ALLISON A. ITO
Attorneys for Debtors
and Debtors-in-Possession

# EXHIBIT A

<u>PURCHASE AND SALE AGREEMENT</u>

THIS PURCHASE AND SALE AGREEMENT ("<u>Agreement</u>") is made and entered into as of May 2, 2022 ("<u>Effective Date</u>"), by and among HAWAII MVCC LLC ("MVCC"), HAWAII MGCW LLC ("MGCW"), MDRE LLC, MDRE 2 LLC, MDRE 3 LLC, MDRE 4 LLC, and MDRE 5 LLC (collectively, "<u>Seller</u>"), which are debtors and debtors-in-possession in jointly administered Chapter 11 cases pending in the United States Bankruptcy Court for the District of Hawaii (the "<u>Bankruptcy Court</u>") as case no. 21-00094 (the "<u>Bankruptcy Case</u>") and KH Gangwon Development, Inc. ("<u>Buyer</u>").

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and adequacy of which are hereby acknowledged, Seller and Buyer agree as follows:

1. <u>Property</u>. Seller hereby agrees to sell and convey to Buyer, and Buyer hereby agrees to purchase from Seller, subject to the terms and conditions set forth herein, the following:

 1.1. <u>Land</u>. Seller's fee simple interest in the land described in <u>Exhibit A</u> attached hereto ("<u>Land</u>").

 1.2. <u>Improvements</u>. Any and all improvements located on the Land ("<u>Improvements</u>"), which together with the Land are collectively referred to as the "<u>Real Property</u>".

 1.3. <u>Tangible Property</u>. All tangible personal property (not part of the Improvements) owned by Seller located on the Real Property and used in connection with the ownership, use or operation of the golf course business on the Real Property, including without limitation, (i) all fixtures, furniture, furnishings, apparatus and fittings, equipment, machinery, motor vehicles, golf carts, appliances, signage, works of art, building supplies, tools, plans, and studies and reports, with such deletions and additions as may occur in the ordinary course of business, (ii) all computer hardware and software and telecommunications and information technology systems, and (iii) all goods of an expendable nature, including without limitation linens, tableware, china and glassware, and other supplies, and food and beverages which are usable and held for use in connection with the golf course business operated on the Real Property, with such deletions and additions as may occur in the ordinary course of business ("<u>Tangible Property</u>").

 1.4. <u>Intangible Property</u>. All intangible property owned by Seller and used in connection with the ownership, use or operation of the Real Property and Tangible Property, including, without limitation: (i) all warranties and guaranties with respect to the Real Property and Tangible Property, to the extent assignable and for which consents to assignment have been obtained by Closing if so required; (ii) all engineering reports and studies, surveys, development and construction specifications, designs, schematics, drawings, renderings, and plans with respect to the Real Property and Tangible Property; (iii) all tradenames, service marks, and trademarks used in connection with the Real Property and the use and operation of the Real Property ("<u>Trademarks</u>"); (iv) all unexpired licenses, permits, certificates, and approvals issued by any governmental authority or any other applicable party, with respect to the construction, development, ownership, operation, leasing, maintenance, or use of the Real Property and Tangible Property or any portion thereof held by and issued to Seller; and (v) all books and records, accounting and financial files, human resource files, operating data, property tax bills, and correspondence ***excluding*** attorney client communications (collectively, together with the Assumed Contracts (as defined below), if any, "<u>Intangible Property</u>"). Intangible Property and Tangible Property are collectively referred to herein as the "<u>Personal Property</u>".

NOTWITHSTANDING THE FORGOING, all of the following shall be excluded from the Property (except as otherwise expressly set forth herein regarding Assumed Contracts): all contracts

84781

and licenses and amendments thereto (collectively, "Contracts"), which Seller shall terminate as of Closing except for contracts and licenses, if any, which are designated in writing by Buyer in its sole discretion for assignment and assumption and which contracts and licenses are assignable and for which consents to assignment have been obtained by Closing if so required ("Assumed Contracts").

   The Real Property and Personal Property are collectively referred to herein as the "Property".

  2. Purchase Price. The total purchase price of the Property is TWENTY MILLION SEVEN HUNDRED THOUSAND DOLLARS ($20,700,000.00) ("Purchase Price") and shall be payable by Buyer to Seller on or before the Closing Date, plus Buyer's share of prorations and Closing costs, as follows:

   2.1. Deposit. A deposit ("Deposit") of One Million Five Hundred Thousand and no/100ths U.S. DOLLARS ($1,500,000.00) by cashier's check, wire transfer or other immediately available funds shall be delivered to Escrow Agent, as hereinafter defined, within seven (7) Business Days, as hereinafter defined, after the Effective Date. If Buyer fails to deliver such Deposit within seven (7) Business Days after the Effective Date, at the option of Seller, this Agreement shall terminate. The Deposit shall be deposited by Escrow Agent into an interest-bearing account with interest to be credited to Buyer unless Seller is entitled to such interest as a part of liquidated damages as provided herein

   2.2. Treatment of Deposit. The Deposit, together with interest accrued thereon shall become non-refundable, except as otherwise provided in this Agreement. If Closing fails to occur due to a default by Buyer, the Deposit shall be treated as liquidated damages in accordance with, and subject to, Sections 10.3.2. and 17.1. of this Agreement. If Closing fails to occur due to a default by Seller, the Deposit shall be treated as liquidated damages in accordance with, and subject to, Sections 10.3.1. and 17.2. of this Agreement. The Deposit shall be credited and applied against the Purchase Price at the Closing.

   2.3. Balance of Purchase Price. The balance of the Purchase Price in the sum of NINETEEN MILLION TWO HUNDRED THOUSAND DOLLARS ($19,200,000.00), plus Buyer's share of prorations and Closing costs, by cashier's check, wire transfer or other immediately available funds, shall be paid by Buyer to Escrow Agent by 9:00 a.m. (Hawaii Standard Time) two (2) Business Days prior to the Scheduled Closing Date or as otherwise required by Escrow Agent to comply with the good funds requirement.

   2.4. Allocation of Purchase Price. Buyer and Seller, having exercised reasonable discretion in good faith, allocate the Purchase Price as follows:

| Property Category | Debtor Name | Tax Map Key No. (if applicable) | Purchase Price Allocation |
|---|---|---|---|
| Resort (approximately 70.60 acres) | | | |
| | MDRE LLC | (1) 8-4-002-051 | $ .00 |
| | MDRE LLC | (1) 8-4-002-075 | $ .00 |
| | MDRE 3 LLC | (1) 8-4-002-052 | $ .00 |
| | MDRE 4 LLC | (1) 8-4-002-054 | $ .00 |
| | MDRE 4 LLC | (1) 8-4-002-077 | $ .00 |
| | Hawaii MGCW | (1) 8-4-002-074 | $ .00 |

Ex. A - 2

| Property Category | Debtor Name | Tax Map Key No. (if applicable) | Purchase Price Allocation |
|---|---|---|---|
| | LLC | | |
| | | **SUBOTAL** | $ .00 |
| *Residential (approximately 66.90 acres)* | | | |
| | MDRE 2 LLC | (1) 8-4-002-007 | $ .00 |
| | | **SUBOTAL** | $ .00 |
| *Makaha East Golf Course (currently open)* | | | |
| | Hawaii MVCC LLC | (1) 8-4-002-005 | $ .00 |
| | Hawaii MVCC LLC | (1) 8-4-002-056 | $ .00 |
| | Hawaii MVCC LLC | (1) 8-4-002-057 | $ .00 |
| | Hawaii MVCC LLC | (1) 8-4-002-076 | $ .00 |
| | Hawaii MVCC LLC | (1) 8-4-023-014 | $ .00 |
| | Hawaii MVCC LLC | (1) 8-4-023-015 | $ .00 |
| | Hawaii MVCC LLC | (1) 8-4-024-001 | $ .00 |
| | | **SUBOTAL** | $ .00 |
| *Makaha West Golf Course (currently closed)* | | | |
| | Hawaii MGCW LLC | (1) 8-4-002-053 | $ .00 |
| | Hawaii MGCW LLC | (1) 8-4-002-055 | $ .00 |
| | Hawaii MGCW LLC | (1) 8-4-002-067 | $ .00 |
| | | **SUBOTAL** | $ .00 |
| *Infrastructure/Private Roads* | | | |
| | MDRE 5 LLC | (1) 8-4-002-070 | $ .00 |
| | MDRE 5 LLC | (1) 8-4-020-015 | $ .00 |
| | MDRE 5 LLC | (1) 8-4-19:32 | $ .00 |
| | MDRE 5 LLC | (1) 8-4-021-068 | $ .00 |
| | MDRE 5 LLC | (1) 8-4-002-012 | |
| | | **SUBTOTAL** | $500.00 |
| *TANGIBLE PROPERTY* | | | $ .00 |

Ex. A - 3

| Property Category | Debtor Name | Tax Map Key No. (if applicable) | Purchase Price Allocation |
|---|---|---|---|
| *INTANGIBLE PROPERTY* | | | $ .00 |
| | GRAND TOTAL: | | $20,700,000.00 |

3. Conveyance of Property.

3.1. Real Property. Seller shall convey the Real Property to Buyer by a duly executed Limited Warranty Deed. Such conveyance shall be free and clear of all liens and encumbrances made by, through or under the Seller except for Permitted Exceptions, as hereinafter defined. The Limited Warranty Deed shall be in the form mutually agreed upon by the parties two (2) Business Days before the expiration of the Due Diligence Period ("Deed").

3.2. Personal Property. Seller shall convey the Personal Property, excluding Assumed Contracts, if any, to Buyer by a duly executed Bill of Sale in the form mutually agreed upon by the parties two weeks before the Closing Date ("Bill of Sale").

3.3. Assumed Contracts. Seller shall convey all Assumed Contracts, if any, and Buyer shall assume all Assumed Contracts, if any, as of the Closing Date by a duly executed Assignment and Assumption of Assumed Contracts in the form mutually agreed upon by the parties two weeks before the Closing Date ("Assignment and Assumption of Assumed Contracts").

4. Buyer's Due Diligence.

4.1. Commencement. The due diligence period shall commence upon the Effective Date and shall end on April 30, 2022 ("Due Diligence Period").

4.2. Due Diligence.

4.2.1. Due Diligence Investigation. Buyer shall investigate, inspect and study the Property to determine if all aspects of the Property are acceptable to Buyer, in Buyer's sole and absolute discretion, including but not limited to, all improvements thereon and including, without limitation, status of title, survey results, zoning classification of the Property, availability and adequacy of all utilities, availability of all approvals and permits from the local municipality and all necessary country, state and federal agencies as required for Buyer's intended use of the Property, rezoning of the Property and receipt of special land use approval, if needed, for the Buyer's intended use of the Property, the economic suitability and feasibility of the Property for the Buyer's intended use, availability of financing acceptable to Buyer, availability of sufficient parking to serve Buyer's intended use, review and acceptance of environmental and geo-technical inspections, review and acceptance of the physical condition of the Property, including subsurface conditions, availability of adequate access to the Property by public or private roadway or acceptable easements, review of all service contracts, and statements of income and expenses pertaining to the Property and review and approval of such other matters as Buyer shall deem necessary for its intended use of the Property. Buyer acknowledges receipt of the due diligence documents from the online Makaha Valley Deal room located at www.cbredealflow.com.

4.2.2. Access to the Property and Investigations. Until the date of termination of this Agreement, Seller shall, subject to the terms of this Section 4.2.2., provide Buyer and Buyer's officers, employees, contractors, consultants and agents (collectively, "Buyer Parties") access to the Property for the purpose of physical investigation and inspection of the Property during normal business

Ex. A - 4

hours ("Permitted Inspections"); provided, however, Buyer and Buyer Parties must obtain Seller's prior written consent (which consent shall not be unreasonably withheld, delayed or conditioned) for any physically intrusive inspection or testing (e.g., core sampling) ("Invasive Testing"). Buyer and Buyer Parties may conduct Permitted Inspections upon not less than two (2) Business Days' prior written request to Seller (which request may be made by e-mail).

4.2.2.1. Leased Spaces. In no event shall Buyer or Buyer Parties enter into or cause to be entered into any leased spaces of the Real Property or conduct or permit to be conducted any activities therein outside the ordinary course of Business without Seller's prior written consent (which consent shall not be unreasonably withheld, delayed or conditioned).

4.2.2.2. Other Requirements. All Permitted Inspections, Invasive Testing, and any other inspections performed at the Real Property by Buyer and/or Buyer Parties must comply with all applicable federal, state, and local laws, rules, ordinances, regulations, and requirements ("Laws"). All Permitted Inspections, Invasive Testing, and any other inspections undertaken by Buyer or Buyer Parties shall be at Buyer's sole cost and expense.

4.2.3. Indemnity. Buyer agrees to defend, indemnify and hold Seller and Seller's members, managers, officers, employees and agents (collectively, "Seller Parties") harmless from and against any and all losses, claims, liens, suits, damages and expenses, including but not limited to reasonable attorneys' fees ("Losses"), incurred in connection with or arising out of Buyer's and Buyer Parties' entry, inspections or tests of the Real Property; provided, however, in no event shall Buyer's indemnification and defense obligations hereunder be applicable to any Losses to the extent the same are (i) caused by the negligence or willful misconduct of any of the Seller Parties or (ii) due to the mere discovery of any pre-existing condition.

4.3. Right of Termination. If Buyer determines, in its sole discretion, not to purchase the Property, Buyer may terminate this Agreement by written notice to Seller at any time prior to 5:00 p.m. Hawaii Standard Time on the last day of the Due Diligence Period. If Buyer fails to provide timely written notice of its intent to terminate this Agreement pursuant to the terms of this Section 4.3., Buyer will be deemed to have elected to terminate this Agreement. If Buyer timely terminates this Agreement in accordance with this Section 4.3. or is deemed to have terminated this Agreement as provided herein, the following provisions shall apply upon such termination (collectively, "Termination Provisions"): (i) each party shall promptly execute and deliver to Escrow Agent such documents as Escrow Agent may reasonably require to evidence such termination; (ii) Escrow Agent shall return all documents to the respective party who delivered such documents to Escrow Agent; (iii) Escrow Agent shall immediately return the Deposit to Buyer; (iv) the cancellation charges required to be paid to Escrow Agent shall be borne by Seller, and all other charges shall be borne by the party incurring same; and (v) the respective obligations of Buyer and Seller under this Agreement shall terminate except with respect to covenants and indemnifications which shall expressly survive termination.

4.4. Condition of Property. Buyer understands that it will be accepting the Property "**AS IS**" "**WHERE IS**" without express or implied representation or warranty by Seller. Buyer therefore knows it must rely upon its own inspection, and its own professional advisors in its examination of the Property and all improvements thereon. Buyer recognizes that Seller would not permit the transfer of the Property except on an "**AS IS**" "**WHERE IS**" basis, and acknowledges that Seller has made no representations or warranties of any kind, express or implied, in connection with the Property. Buyer understands that Seller makes no warranties, express or implied, with respect to the completeness, accuracy or substance of any materials provided by Seller to Buyer with regard to the Property, and Buyer acknowledges that as a part of its investigation of the Property it assumes the risk of verifying any and all information in

Ex. A - 5

U.S. Bankruptcy Court - Hawaii  #21-00094  Dkt # 521  Filed  06/03/22  Page 18 of 185

materials provided by Seller to Buyer regarding the Property. No person on behalf of Seller is authorized to make any representation, warranty, guaranty or promise except as set forth herein and no agreement, statement, representation or promise made by any person which is not contained herein shall be valid or binding on Seller. The only representations or warranties applicable to this sale are set forth herein.

5. Title.

5.1. Title Policy. The Closing shall be subject to the condition precedent that TITLE GUARANTY OF HAWAII LLC ("Title Company") is irrevocably committed to issue to Buyer an Owner's ALTA policy of title insurance with extended coverage insuring the Real Property in an amount not less than the Purchase Price, together with such endorsements as required by Buyer and subject only to the Permitted Exceptions ("Title Policy"). Seller shall cooperate with the reasonable requests of Buyer and the Title Company in order for Title Company to commit to issue the Title Policy to Buyer by providing owner's declarations, including but not limited to affidavits in connection with the issuance of a mechanic's lien endorsement and matters relating to parties in possession, and providing documents in its actual possession.

5.2. Title Report; Title Objections; Subsequent Title Objections; Permitted Exceptions.

5.2.1. Title Report. Seller has delivered, and Buyer acknowledges delivery to Buyer of, the preliminary reports nos. 202052796, 202052799, 202052805, 202052806, 202052809, and 202052812 issued by Title Company dated as of December 10, 2020 (collectively, "Title Report").

5.2.2. Title Objections. If any exceptions appear in the Title Report that are unacceptable to Buyer, Buyer shall on or before the last day of the Due Diligence Period notify Seller in writing of such objections to title ("Title Objections"). Except for any Title Objections which are raised in accordance with this Section 5.2.2., Buyer shall be deemed to have accepted title as set forth in the Title Report. Within five (5) Business Days after Seller's receipt of the Title Objections, Seller shall notify Buyer in writing regarding whether Seller will (i) cause the removal or discharge of each of the Title Objections on or prior to Closing, (ii) arrange for the Title Company to insure over such Title Objections to the reasonable satisfaction of Buyer at Closing, or (iii) not take any action to remove, discharge or insure over such Title Objections. In the event Seller is unable or unwilling to cure all of the Title Objections to the satisfaction of Buyer, Buyer may either (a) waive such Title Objections and proceed to Closing or (b) terminate this Agreement by delivering notice thereof in writing to Seller no later than five (5) Business Days after Buyer's receipt of Seller's written notice to Buyer of Seller's decision not to cure all of the Title Objections or prior to the Scheduled Closing Date, whichever is later, in which event the Termination Provisions shall apply.

5.2.3. Subsequent Title Objections. Buyer shall have the right to object in writing to any exceptions to title that are not disclosed in the Title Report (collectively, "Subsequent Exceptions") within five (5) Business Days after Buyer first receives written notice thereof from Seller or the Title Company or Buyer's discovery thereof (or any time before Closing if such written notice is received after the sixth (6th) Business Day before the Scheduled Closing Date) ("Subsequent Title Objection Deadline"). Unless Buyer notifies Seller in writing that Buyer objects to the Subsequent Exceptions on or before the Subsequent Title Objection Deadline, the Subsequent Exceptions shall be deemed to constitute Permitted Exceptions. Subsequent Exceptions to which Buyer objects on or before the Subsequent Title Objection Deadline shall be herein collectively referred to as "Subsequent Title Objections". Seller shall notify Buyer in writing within five (5) Business Days after receipt of Buyer's written notice of Subsequent Title Objections (or any time before the Scheduled Closing Date if such written notice is received after the sixth (6th) Business Day before the Scheduled Closing Date) whether

Ex. A - 6

Seller will (i) cause the removal or discharge of each of the Subsequent Title Objections on or prior to Closing, (ii) arrange for the Title Company to insure over the Subsequent Title Objections to the reasonable satisfaction of Buyer at Closing, or (iii) not take any action to remove, discharge or insure over the Subsequent Title Objections. In the event Seller is unable or unwilling to cure all of the Subsequent Title Objections to the reasonable satisfaction of Buyer, Buyer may either (a) waive such Subsequent Title Objections and proceed to Closing or (b) terminate this Agreement by delivering notice thereof in writing to Seller no later than five (5) Business Days after Buyer's receipt of Seller's written notice to Buyer of Seller's decision not to cure all of the Subsequent Title Objections or prior to the Scheduled Closing Date, whichever is later, in which event the Termination Provisions shall apply.

      5.2.4.   Permitted Exceptions. The term "Permitted Exceptions" as used in this Agreement includes: (i) the lien of real property taxes and/or assessments not yet due and owing as of the Closing Date; (ii) those exceptions to title that were disclosed in the Title Report and which were expressly or deemed approved by Buyer pursuant to Section 5.2.2. of this Agreement; (iii) those exceptions to title, if any, that were disclosed in any title reports issued subsequent to the Title Report and which either (a) were not included in a Subsequent Title Objection or (b) were included in a Subsequent Title Objection but Seller elected not to take any action to remove, discharge or insure over such objections and Buyer did not elect to terminate this Agreement as provided above; and (iv) matters disclosed by any ALTA survey obtained in accordance with Section 5.3. of this Agreement and which either (a) were not included in a Survey Disapproval Notice as provided in Section 5.3. of this Agreement or (b) were included in a Survey Disapproval Notice but Seller was unable or unwilling to cure all matters disapproved by Buyer in its Survey Disapproval Notice and Buyer did not elect to terminate this Agreement as provided in Section 5.3. of this Agreement. Notwithstanding the provisions of the immediately preceding sentence, Permitted Exceptions shall not include (i) liens securing a monetary obligation of Seller (such as a mortgage, assignment of leases and rents or a UCC financing statement naming Seller as a borrower, mortgagor, and/or debtor, liens and claims as to unpaid general excise tax, income tax or other taxes (including unpaid real property taxes and assessments that are due and owing)), (ii) statutory liens (such as mechanic's and materialmen's liens) securing an obligation incurred by Seller while Seller has owned the Property, (iii) judgment liens against Seller (collectively, sub-sections (i) through and including (iii) are referred to herein as "Monetary Exceptions"), (iv) Tenant Leases, and (v) Contracts (except for Assumed Contracts, if any). Seller shall cause the discharge of all Monetary Exceptions and terminate all Tenant Leases and Contracts (except Assumed Contracts, if any) at its sole cost and expense at Closing.

      5.3.   Survey. Buyer may order and obtain an ALTA survey for the Property. The cost of the ALTA survey shall be paid by Seller. Buyer shall have the right to object to any matter revealed in the ALTA survey, by written notice given to Seller within five (5) Business Days after Buyer has received the ALTA survey or the last day of the Due Diligence Period, whichever is later ("Survey Disapproval Notice"). Buyer's failure to give Seller a Survey Disapproval Notice in accordance with the immediately preceding sentence shall be deemed to be an approval by Buyer of the ALTA survey and all matters which are revealed in the ALTA survey. If Buyer gives a Survey Disapproval Notice in accordance with this Section 5.3., Seller shall have five (5) Business Days following the receipt of the Survey Disapproval Notice to advise Buyer in writing that Seller intends to cure all matters disapproved by Buyer in its Survey Disapproval Notice or is unable or unwilling to cure all matters disapproved by Buyer in its Survey Disapproval Notice ("Survey Cure Notice"). In the event Seller fails to give Buyer the Survey Cure Notice or is unable or unwilling to cure all matters disapproved by Buyer in its Survey Disapproval Notice to the reasonable satisfaction of Buyer, Buyer may either (a) waive such matters disapproved by Buyer in its Survey Disapproval Notice and proceed to Closing or (b) terminate this Agreement by delivering notice thereof in writing to Seller no later than five (5) Business Days after Buyer's receipt of Seller's Survey Cure Notice indicating Seller's decision not to cure all such matters disapproved by Buyer in its Survey Disapproval Notice or prior to the Scheduled Closing Date, whichever is later, in which event the Termination Provisions shall apply.

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 20 of 185

6. Seller's Representations.

Seller, by Seller's execution of this Agreement, makes the following representations to Buyer, which representations shall be true and correct as of the Effective Date and as of the Closing Date, and shall survive the Closing:

6.1. Organization and Standing. Each of the Seller is a limited liability company, duly organized, validly existing, and in good standing under the laws of the State of Hawaii and registered to do business in the State of Hawaii and in good standing under the laws of the State of Hawaii.

6.2. Authority. Subject to entry of the Sale Order, as hereinafter defined, Seller has the requisite power and authority to enter into this Agreement to perform its obligations hereunder and to consummate the transactions contemplated hereby. The execution and delivery of this Agreement and the conveyance documents by Seller and the consummation by Seller of the transactions contemplated hereby have been duly authorized by its managers and members, and no other actions on the part of Seller, its members and managers are necessary to authorize the execution, delivery and performance of this Agreement, the conveyance documents and the transactions contemplated hereby. Subject to entry of the Sale Order, this Agreement and each other agreement required to be executed and delivered by Seller in connection herewith constitutes the valid and binding obligation of Seller enforceable against Seller in accordance with its terms.

6.3. Consents. Except for the entry of the Sale Order in accordance with Section 8.6. of this Agreement approving this Agreement and the sale of the Property, no consent of, approval from, or notice to, any of natural person, corporation, partnership, limited liability company, limited liability partnership, joint venture, trust or trustee, estate, association, joint stock company, business trust, government or government entity and any other form of business or legal entity in its own or any representative capacity ("Person") is required with respect to the execution and delivery by Seller of this Agreement and of any document to be executed and delivered pursuant hereto by Seller and the performance by Seller of its obligations under this Agreement or any document to be executed and delivered pursuant hereto. The execution, delivery and performance of this Agreement and any documents to be delivered pursuant hereto by Seller and the consummation of the transactions contemplated hereby by Seller do not and will not (i) violate any provision of any organizational or governing document of Seller, (ii) violate any applicable law to which Seller is subject, (iii) result in the creation or imposition of any lien or encumbrance on the Property or any portion thereof, or (iv) result in a violation or breach, or constitute a default under, any agreements to which Seller is a party or by which it is otherwise bound.

6.4. Real Property. Seller is the owner of the Property. Seller has not granted and has no knowledge of any outstanding rights to purchase the Property, including rights of first refusal, rights of first offer, purchase options or similar purchase rights with respect to the Property or any portion of the Property. Seller has not received any written notice from any governmental entities that all or any portion of the Real Property is in violation of any applicable local, state or federal law or regulation to which Seller or the Real Property are subject, which violation has not been cured or remedied prior to the date hereof. To the best of Seller's knowledge, the Real Property and Seller's operations thereon are not in violation of any applicable building code, fire code or any applicable zoning or land use or other local, state or federal law or regulation to which Seller or the Real Property are subject, which violation has not been cured or remedied prior to the date hereof. To the best of Seller's knowledge, the Property and Seller's operations on the Real Property are not subject to any federal, state, or local investigation of violations of the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12101 et seq., ("ADA"), any judicial or administrative proceeding alleging the material violation of or liability under ADA, any

Ex. A - 8

outstanding written order or agreement with any governmental entity or private party relating to claims under ADA, or any claims under ADA. To the best of Seller's knowledge, there are no Hazardous Materials, as hereinafter defined, in, on or about the Property except those Hazardous Materials required or customarily used in full compliance with applicable Hazardous Materials Laws, as hereinafter defined, in the ordinary course of operating a golf course, and to the best of Seller's knowledge, the Real Property and Seller's operations on the Real Property are not subject to any federal, state, or local investigation of Hazardous Materials claims, any judicial or administrative proceeding alleging the material violation of or liability under any of the Hazardous Materials Laws, or any outstanding written order or agreement with any governmental entity or private party relating to any of the Hazardous Materials Laws or Hazardous Materials claims. The term "Hazardous Materials" means and includes any and all radioactive materials, radon and asbestos, organic compounds known as polychlorinated biphenyls, chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, hazardous wastes, toxic substances, toxic pollutants, petroleum substances or petroleum products, pesticides, and any and all other substances or materials defined as, or included in the definition, of hazardous substances, hazardous wastes, hazardous materials, toxic substances or toxic pollutants under, or for the purposes of, any Hazardous Materials Law. The term "Hazardous Materials Laws" means and includes all federal, state or local laws, statutes, ordinances, rules, regulations and other requirements of any governmental authority or agency, now or hereafter in effect, relating to environmental conditions, industrial hygiene or hazardous substances, including without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. and the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq. To the best of Seller's knowledge, the Property and Seller's operations on the Real Property are not subject to any federal, state, or local investigation of claims with respect to mold or indoor air quality, any judicial or administrative proceeding alleging the material violation of or liability under any law with respect to mold or indoor air quality, any outstanding written order or agreement with any governmental entity or private party relating to any claim with respect to mold or indoor air quality, or any investigation or claim with respect to mold or indoor air quality. Seller has not received any notice of and is not aware of any pending or, to the best of Seller's knowledge, threatened condemnation, eminent domain or similar proceedings affecting the Property, or any portion thereof. To the best of Seller's knowledge, that there are no material defects in the design or construction of the improvements located on the Real Property. The Real Property is served by water, electricity, sewer, gas, telephone and cable. The Real Property abuts or has legal access to a public street or highway.

      6.5.    <u>Personal Property</u>. Seller owns all the Personal Property free and clear of any encumbrances except as disclosed by the Title Report. None of the Personal Property is leased pursuant to a lease.

      6.6.    <u>Reserved</u>.

      6.7.    <u>Contracts</u>. Seller has delivered true, correct and complete copies of all Contracts to Buyer. To the best of Seller's knowledge, there are no outstanding material defaults, disputes, claims, defenses, rights of set off or events which with the giving of notice or the passage of time or both could become a default under the Contracts.

      6.8.    <u>Litigation</u>. Except as otherwise disclosed in writing delivered by Seller to Buyer, Seller has not received any notice of and is not aware of any legal actions, suits, or other legal or administrative proceedings, including condemnation cases, pending or, to the best of Seller's knowledge, threatened against the Property or against Seller, and there are no outstanding judgments against Seller. There is no pending or to the best of Seller's knowledge, threatened litigation which, if adversely determined, would restrain the consummation of any of the transactions referred to herein, or declare illegal, invalid or non-binding any of the covenants or obligations of Seller herein.

6.9.    Taxes.  Except for real property taxes, Seller has paid any and all local, state and federal taxes required to be paid by Seller, including, without limitation, real and personal property taxes and assessments, employee withholding taxes, conveyance taxes, and general excise taxes (exclusive of prorations to be done through the Closing Date).  To the best of Seller's knowledge, there have been no supplemental or special taxes assessed against the Property.

6.10.    Licenses and Permits.  Seller has delivered true, correct and complete copies of all licenses and permits with respect to the Property to Buyer.  To the best of Seller's knowledge, all the licenses and permits are in full force and effect, and there is no action or proceeding pending or threatened to revoke any license or permit. To the best of Seller's knowledge, Seller holds all licenses and permits necessary to operate the Property.  Seller shall not modify or rescind any of the licenses and permits prior to the Closing Date and shall use its best efforts to obtain any renewal or extension of licenses and permits as may be required by law in the ordinary course of business. Seller has not taken any action, and to the best of Seller's knowledge no condition presently exists arising out of the Seller's activities in connection with the operation of the Property, which would preclude transfer and/or issuance of any licenses or permits which may be transferred and/or issued to Buyer as provided in this Agreement.

6.11.    Employees.  Seller is a party to a collective bargaining agreement for 5 of its approximately 18 employees which expires on February 28, 2023.  There is no pending or, to Seller's knowledge, threatened employee union organizing effort, strike, work stoppage, slowdown, picketing or material labor dispute with respect to its employees.  To Seller's knowledge, no petition has been filed, nor has any proceeding been instituted by any of the employees with any labor relations board or commission seeking recognition of a collective bargaining representative.

6.12.    Financial Information.  All financial statements prepared by Seller or any Affiliate, as hereinafter defined, of Seller or any property manager for the Property and delivered to Buyer by Seller or any Affiliate of Seller were relied on by Seller in its operation of the Property and, to the best of Seller's knowledge, are materially true and correct.

6.13.    Seller is Not a Foreign Person; OFAC.  Seller is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986, as amended, or a "nonresident person" as that term is used in Section 235-68 of the Hawaii Revised Statutes, as amended, and the regulations relating thereto.  Seller is a disregarded entity as defined in Section 1.1445-2(b)(2)(iii) of the Income Tax Regulations, and Pacific Links U.S. Holdings, Inc., a Delaware corporation,  is the owner of Seller who shall be treated as the transferor of the Property for purposes of Section 1.1445-2(b)(2)(iii) of the Income Tax Regulations.  Neither Seller nor, to Seller's knowledge, any of its equity owners, is a Person with whom U.S. Persons are restricted from doing business under regulations of the Office of Foreign Assets Control of the Department of the Treasury ("OFAC") or under any similar statute, executive order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other similar governmental action.

6.14.    Seller's Knowledge.  The representations and warranties set forth in this Section 6 are made as of the Effective Date and as of the Closing Date.  The phrase to the "best of Seller's knowledge" or to "Seller's knowledge" shall be deemed to mean Seller's knowledge after a commercially reasonable investigation of the matters to which such knowledge, or the absence thereof, pertain, including without limitation review of the contents of the files, documents, and materials made available to or disclosed to Buyer and the contents of files maintained by Seller or any of the Seller Parties. Where representations and warranties are made in this Agreement to the "best of Seller's knowledge" or to "Seller's knowledge", such phrases shall mean the knowledge of Seller Parties, who it is represented to have prepared and/or reviewed and are knowledgeable about the facts and matters which serve as the basis of Seller's representations and warranties.

Ex. A - 10

U.S. Bankruptcy Court - Hawaii  #21-00094  Dkt # 521  Filed  06/03/22  Page 23 of 185

7.      Buyer's Representations.  Buyer, by Buyer's execution of this Agreement, makes the following representations to Seller, which representations shall be true and correct as of the Effective Date and as of the Closing Date and shall survive the Closing in accordance with and pursuant to Section 7.6. of this Agreement:

7.1.      Organization.  Buyer is a corporation organized and validly existing and in good standing under the laws of South Korea. Buyer has all requisite power and authority to enter into this Agreement and to consummate the transactions contemplated hereunder.

7.2.      Due Authorization.  All the documents executed by Buyer which are to be delivered to Seller at the Closing are, and at the Closing will be, duly authorized, executed, and delivered by Buyer and will be legal, valid and binding obligations of Buyer in accordance with their respective terms. Prior to closing, Buyer shall form a shall form a special purpose limited liability company or a corporation to take title to the Property.

7.3.      Consents.  No consent, notice or approval of any Person is required with respect to the execution and delivery of this Agreement and any document pursuant hereto by Buyer or the performance by Buyer of its obligations under this Agreement or any document to be delivered pursuant hereto. The execution, delivery and performance of this Agreement and any document to be delivered pursuant hereto by Buyer and the consummation of the transactions contemplated hereby by Buyer do not violate any provision of any organizational document of Buyer. Neither the execution and delivery of this Agreement, or the consummation of the transactions contemplated hereby, will violate any statute, regulation, rule, injunction, judgment, order, ruling, or other restriction of any government, governmental agency, or court to which Buyer is subject or the provisions of any agreement to which Buyer is a party or by which it is bound.

7.4.      No Pending Actions.  No action at law or in equity and no investigation or other proceeding whatsoever is now pending or threatened to liquidate or dissolve Buyer, or to declare any of its rights, powers or privileges to be null or void or otherwise than in full force and effect.

7.5.      OFAC.  Neither Buyer nor, to Buyer's knowledge, any of its equity owners, is a Person with whom U.S. Persons are restricted from doing business under regulations of the OFAC or under any similar statute, executive order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other similar governmental action.

7.6.      Survival. The representations and warranties in this Section 7 and in any document executed by Buyer pursuant to this Agreement shall survive the Closing until and including the one hundred eightieth (180th) day after the Closing Date, at which time such representations and warranties shall terminate and be of no further force or effect except with respect to claims asserted during such one hundred eighty (180) day period. Any claim for breach of a representation or warranty may be asserted only during the Limitation Period.

8.      Covenants of the Parties.

8.1.      Operation.  Seller shall cause the Real Property to be managed and operated in a manner consistent with past practices and policies, subject to reasonable wear and tear, taking by eminent domain or unavoidable casualty excepted. Seller shall purchase a tail insurance policy to cover liability arising from claims accruing prior to Closing.

U.S. Bankruptcy Court - Hawaii  #21-00094  Dkt # 521  Filed  06/03/22  Page 24 of 185

8.2.   Marketing. Seller shall not solicit backup offers and enter into discussions, negotiations, or any other communications concerning or related to the sale of the Property with any third party until termination of this Agreement, except as set forth in Section 8.6. of this Agreement.

8.3.   Reserved.

8.4.   Employment Matters.

8.4.1.   Termination by Seller. As of the Closing Date, Seller shall terminate or cause the termination of employment of all Employees. Seller shall be responsible for all wages, bonuses, other compensation, social security taxes, and other payroll taxes, including unemployment contributions, for the Employees accrued before the Closing Date and for benefit payments payable to the Employees accrued before the Closing Date. Seller shall pay to the appropriate governmental agencies on or before the date such taxes become due, including all payroll taxes required to be withheld from such wages. Seller shall issue a Form W-2 with respect to each such Employee for wages paid before the Closing Date. Seller shall waive its unemployment compensation experience record so that it may be transferred to Buyer.

8.4.2.   Plant Closing Notices. Within five (5) Business Days after the Effective Date, Seller shall deliver, at its sole cost and expense, all necessary plant closing notices to the applicable governmental agencies and Employees.

8.4.3.   Re-Hire by Buyer. Buyer may, in its sole discretion, offer employment to any Employee as of the Closing Date on terms and conditions determined by Buyer in its sole discretion. Employees who accept such offers of employment are referred to collectively herein as the "Transferred Employees". Seller shall transfer all personnel files for Transferred Employees to Buyer at Closing, provided that Seller shall have reasonable access to such personnel files after Closing with respect to employment matters for which Seller is responsible.

8.4.4.   Employee Rights. Nothing in this Agreement shall be deemed to confer upon any Person any rights under or with respect to any plan, program, or arrangement described in or contemplated by this Agreement, and each Person shall be entitled to look only to the express terms of any such plan, program, or arrangement for such Person's rights thereunder.

8.4.5.   Survival. This Section 8.4. shall survive the Closing Date and recordation of the Deed.

8.5.   Reserved.

8.6.   Seller's Bankruptcy and Bankruptcy Court Approval.

8.6.1   Bankruptcy Court Approval.

8.6.1.1. Seller and Buyer acknowledge that this Agreement and the sale of the Property are subject to Bankruptcy Court approval in accordance with the terms of this Agreement including this Section 8.6. and entry of a final unappealable Sale Order confirming such approval. The entry of such Sale Order shall be a Condition Precedent to this Agreement in favor of Buyer.

8.6.1.2. Seller shall promptly seek approval of this Agreement ("Sale Motion") upon the receipt of Buyer's election to proceed with the transactions contemplated herein, and shall exercise good faith and use reasonable efforts to obtain approval of the Sale Order, subject to

Ex. A - 12

overbids on the terms set forth herein. The term "Sale Order" shall mean a final order of the Bankruptcy Court authorizing the sale of the Property to Buyer in accordance with the terms of this Agreement and in a form satisfactory to Buyer.

8.6.1.3. Seller agrees to proceed in good faith to obtain Bankruptcy Court approval of the sale contemplated herein with a determination that Buyer is in good faith pursuant to Bankruptcy Code Section 363(m) and to file such declarations and other evidence as may be required to support a finding of good faith.

8.6.1.4. From and after the Effective Date and prior to the Closing or the termination of this Agreement, Seller shall not take any action which is intended to (or is reasonably likely to), or fail to take any action the intent (or the reasonably likely result) of which failure to act is to, result in the reversal, voiding, modification or staying of this Agreement.

8.6.2. <u>Bankruptcy Filings</u>. Seller shall use reasonable efforts to provide such prior notice to Buyer as may be reasonable under the circumstances before the filing any papers that relate, in whole or in part, to this Agreement or to Buyer or its agents or representatives. Notwithstanding the foregoing, Seller shall not file any pleadings, motions, notices, statements, schedules, applications, reports and other papers in the Bankruptcy Case that would, or would reasonably be expected to, alter, modify, limit or restrict Buyer's rights or remedies pursuant to this Agreement, without the prior written consent of Buyer (which may be granted or withheld in Buyer's sole discretion).

8.6.3. <u>Bidding Procedures</u>. Seller reserves the right to obtain a higher bid for the Property pursuant to the following bidding procedures ("Bidding Procedures"):

8.6.3.1. Competing offers to acquire the Property shall be submitted in writing to Seller's counsel on or before 4:00 p.m. Hawaii Standard Time two (2) days prior to the Auction (as hereinafter defined).

8.6.3.2. Competing offers shall provide for an all-cash purchase price to be paid to Seller that exceeds the Purchase Price by at least SEVEN HUNDRED THOUSAND AND NO/100 DOLLARS ($700,000.00), which reflects a THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($300,000.00) initial overbid plus the FOUR HUNDRED THOUSAND AND NO/100 DOLLARS ($400,000.00) Break-Up Fee (as hereinafter defined).

8.6.3.3. Competing offers shall be accompanied by a purchase agreement in form and substance substantially identical this Agreement, together with a redlined, marked copy showing all changes to this Agreement, except there shall be no Condition Precedents or contingencies other than those expressly set forth in Section 10.1 of this Agreement (excluding, however, the Condition Precedent for financing set forth in Sections 8.3. and 10.1.5. of this Agreement), no due diligence provision and no right to terminate after a due diligence review, no break-up fee, topping fee, termination fee, expense reimbursement or similar type of payment, no financing conditions, and no internal approval conditions ("Competing Agreement").

8.6.3.4. The Competing Agreement shall not be subject to a due diligence period or right to terminate after a due diligence review or any other due diligence contingencies. Any qualified bidder may have an opportunity to evaluate the Property prior to the submission of a Competing Agreement. Prior to being permitted to conduct any due diligence, a party must execute a confidentiality agreement in form and substance satisfactory to Seller. Seller will provide parties interested in acquiring the Property with reasonable access to Seller's books, records, independent accountants and legal counsel for the purpose of conducting such due diligence. Seller shall not be

required to provide confidential or proprietary information to a potential buyer if Seller reasonably believes that such disclosure would be detrimental to the interests of Seller. All due diligence review must be completed by all qualified bidders prior to submitting a Competing Agreement.

8.6.3.5. Competing offers must remain open until the conclusion of the hearing on the Sale Motion.

8.6.3.6. Competing offers must be accompanied by admissible evidence in the form of affidavits or declarations establishing the bidder's good faith within the meaning of Section 363(m) of the Bankruptcy Code.

8.6.3.7. Competing offers must be accompanied by admissible evidence in the form of affidavits or declarations establishing that the bidder is capable and qualified, financially, legally, and otherwise, of unconditionally performing all obligations under the Competing Agreement.

8.6.3.8. Competing offers must contain information, acceptable to Seller, which demonstrates to Seller in its sole and absolute discretion that the potential buyer has sufficient cash on hand or a binding financial commitment from an established and financially sound financial institution to ensure such potential buyer's ability to meet its commitments and otherwise fully perform pursuant to its offer.

8.6.3.9. Competing offers must disclose the identity of the potential buyer, including confirmation that its bid is made as principal for the potential buyer's account and, if not, the basis upon which the potential buyer is acting and the identities of all other participants, if any. The potential buyer must also disclose any agreements or understandings between the potential buyer and any third party with respect to the Property. The offer must also be accompanied by sufficient indicia that the person submitting the offer is legally empowered, by power of attorney or otherwise, to (i) bid on behalf of the potential buyer, and (ii) complete and sign, on behalf of the potential buyer, a binding and enforceable Competing Agreement.

8.6.3.10. Competing offers may not request or entitle the potential buyer to any fee, including, but not limited to, a break-up fee, topping fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a competing offer, a potential buyer shall be deemed to waive the right to pursue a substantial contribution claim under Section 503 of the Bankruptcy Code related in any way to the sale of the Property.

8.6.3.11. All competing offers must be accompanied by a cashier's check made payable to the order of Seller in an amount of ONE MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($1,500,000.00) ("Over Bidder's Deposit"), and further provide that (1) if the Bankruptcy Court approves a sale of the Property to that bidder, Seller may retain the Over Bidder's Deposit for application as a non-refundable deposit to be applied against the purchase price at the closing of the transaction, and (2) if the Bankruptcy Court does not approve a sale of the Property to that bidder, Seller will return the Over Bidder's Deposit within five (5) Business Days after entry of the order of the Bankruptcy Court disapproving such sale.

8.6.3.12. All competing offers must contain a proposed scheduled closing date that is not later than the Scheduled Closing Date set forth in this Agreement.

8.6.3.13. In order to provide adequate assurance of future performance under the executory contracts and leases designated for assignment and assumption, all qualified bidders

Ex. A - 14

shall submit a declaration with evidence demonstrating that they have sufficient financial resources to perform fully and timely under any assumed contracts and leases.

If any bidders have submitted a qualifying competing offer in accordance with these Bidding Procedures (each such bid, a "Qualified Bid"), then a public auction of the Property ("Auction") shall be held at a time and location to be subsequently designated. Members of the public may attend the Auction, it being understood that such members cannot impede the progress of the Auction. A court reporter will transcribe the Auction and a copy of the transcript will be filed with the Bankruptcy Court as soon as is reasonably possible. The Auction shall be governed by the following procedures:

i. All bidders shall be deemed to have consented to the jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction or the sale of the Property.

ii. Bidding will commence at the amount of the highest Qualified Bid.

iii. Each subsequent bid shall be in increments of no less than ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00). In the event Buyer makes any overbids, Buyer shall not be required to provide an Over Bidder's Deposit. Seller recognizes that in the event of overbidding, the net economic value to the bankruptcy estate will be reduced by the Break-Up Fee and also wishes to incentivize Buyer to bid further. Consequently, Seller agrees that in each round of bidding, Buyer shall receive a bid credit in the amount of the Break-Up Fee.

iv. Any bidder that fails to submit a timely, conforming Qualified Bid, as set forth above, shall be disqualified from bidding for the Property at the Auction, shall not be permitted to make any statements on the record at the Auction, and shall have no standing at the hearing on the Sale Motion.

v. All qualified bidders must appear in person at the Auction, or through a duly authorized representative. If multiple Qualifying Bids satisfying all Auction requirements are received, each party shall have the right to continue to improve its bid at the Auction. The Auction will be an 'open format' such that all participants are contemporaneously to be made aware of the particulars of any Qualified Bids that are submitted.

vi. Seller may conduct the Auction in all respects in the manner it determines will result in the highest, best or otherwise financially superior offer for the Property provided that such manner is not inconsistent with the provisions of the Sale Motion or the Bankruptcy Code.

vii. At the conclusion of the Auction, Seller may enter into a purchase and sale agreement with a back-up prospective buyer ("Back-up Buyer").

viii. If no timely, conforming Qualified Bid is submitted, Seller will request at the hearing on the Sale Motion that the Bankruptcy Court approve the proposed sale to Buyer.

8.6.4. Break-Up Fee. Upon Seller's consummation of a transaction other than a sale to Buyer, Seller shall request authorization of the Bankruptcy Court to pay Buyer's fees and expenses associated with the contemplated sale of the Property in an amount of Buyer's fees and expenses, agreed by the parties to be Four Hundred Thousand AND NO/100 DOLLARS ($400,000.00). The Break-Up Fee will be subject to Bankruptcy Court approval and shall constitute a super-priority administrative expense of Seller under Section 364(c)(l) of the Bankruptcy Code with priority over any and all

U.S. Bankruptcy Court - Hawaii  #21-00094  Dkt # 521  Filed 06/03/22  Page 28 of 185

administrative expenses of any kind, including those specified in Sections 503(b) or 507(b) of the Bankruptcy Code.

8.6.5. <u>Appeal of Sale Order</u>. In the event an appeal is taken or a stay pending appeal is requested from the Sale Order, Seller shall immediately notify Buyer of such appeal or stay request and shall promptly provide to Buyer a copy of the related notice of appeal or order of stay. Seller shall also provide Buyer with written notice of any motion or application filed in connection with any notice of appeal or order of stay. In the event of an appeal of the Sale Order, Seller shall be primarily responsible for drafting pleadings and attending hearings as necessary to defend against the appeal.

9.      <u>Closing</u>.

9.1.    <u>Scheduled Closing Date</u>. The closing shall occur within thirty (30) day after entry of the Sale Order (subject to satisfaction or waiver of all Conditions Precedent) ("<u>Scheduled Closing Date</u>"); provided that in the event that the Closing does not occur on or before August 2, 2022 for any reason other than a material default by Buyer, Buyer may in its sole discretion terminate this Agreement by written notice to Seller in which event the Termination Provisions shall apply.

9.2.    <u>Closing</u>. The terms "<u>Closing</u>" or "<u>Closing Date</u>" shall mean the time and date the Deed is recorded in the Bureau of Conveyances of the State of Hawaii. Possession of the Property shall be delivered to Buyer upon the Closing. This transaction shall be escrowed with TITLE GUARANTY ESCROW SERVICES, INC. ("<u>Escrow Agent</u>"). The escrow officer shall be ***Jeremy Trueblood*** or another senior escrow officer in the event ***Jeremy Trueblood*** is unavailable.

9.3.    <u>Escrow Instructions</u>. The terms and conditions set forth in this Agreement shall constitute both an agreement between Seller and Buyer and escrow instructions for Escrow Agent. Seller and Buyer shall promptly execute and deliver to Escrow Agent any separate or additional escrow instructions requested by Escrow Agent that are consistent with the terms of this Agreement. Any separate or additional instructions shall not modify or amend this Agreement unless expressly set forth by the mutual consent of Seller and Buyer and to the extent of any conflict between this Agreement and any such separate or additional instructions, the provisions of this Agreement shall control.

10.     <u>Conditions to the Closing</u>. The following shall be conditions precedent ("<u>Conditions Precedent</u>") to the obligation of the parties to the Closing hereunder:

10.1.   <u>Conditions Precedent to Buyer's Obligations</u>. Buyer's obligations under this Agreement are subject to the fulfillment of each of the following Conditions Precedent which are included herein for the benefit of Buyer and may be waived or asserted only by Buyer:

10.1.1. <u>Seller's Performance</u>. Seller is not in default as to its obligations under this Agreement;

10.1.2. <u>Seller's Representations</u>. All of Seller's representations as set forth herein shall be true and correct in all material respects as of the Effective Date and on the Closing Date;

10.1.3. <u>Title Policy Commitment</u>. Title Company shall be unconditionally committed to issue the Title Policy to Buyer at the Closing;

10.1.4. <u>No Material Adverse Change</u>. There shall not have occurred any material adverse change with respect to the condition of the Property between the Effective Date and the Closing Date;

Ex. A - 16

10.1.5. RESERVED.

10.1.6. RESERVED.

10.1.7. Bankruptcy Court Approval. A final non-appealable Sale Order shall have been entered by the Bankruptcy Court approving this Agreement and Seller has complied with all of the provisions of Section 8.6. of this Agreement.

10.2. Conditions Precedent to Seller's Obligation to Close. Seller's obligations under this Agreement are subject to the fulfillment of each of the following Conditions Precedent which are included herein for the benefit of Seller and may be waived or asserted only by Seller.

10.2.1. Buyer's Performance. Buyer is not in default as to its obligations under this Agreement;

10.2.2. Buyer's Representations. All of Buyer's representations as set forth herein shall be true and correct in all material respects as of the Effective Date and on the Closing Date; and

10.2.3. Patriot Act Compliance. Seller shall have confirmed Buyer's compliance with the requirements of the USA Patriot Act of 2001, 31 U.S.C. Section 5318.

10.3. Failure of Conditions Precedent.

10.3.1. Failure of Buyer's Conditions Precedent. If any of the Conditions Precedent set forth in Sections 10.1.1. and/or 10.1.2. above are not satisfied or waived in writing by Buyer on or prior to the Scheduled Closing Date, Buyer may elect, at its option, (i) to terminate this Agreement or bring a suit seeking any or all legal and equitable remedies, in accordance with and subject to Sections 8.6. and 17.2. of this Agreement, or (ii) to waive the unsatisfied conditions and any default in writing and proceed to Closing, and if necessary seek specific performance compelling the conveyance of the Property, in accordance with and subject to Sections 8.6. and 17.2. of this Agreement.

If the Conditions Precedent set forth in Sections 10.1.3., 10.1.4., 10.1.5., 10.1.6. and/or 10.1.7. above are not satisfied on or prior to the Scheduled Closing Date, this Agreement shall terminate and the Termination Provisions shall apply.

10.3.2. Failure of Seller's Conditions Precedent. If any of the Conditions Precedent set forth in Sections 10.2.1., 10.2.2. and/or 10.2.3. above are not satisfied or waived in writing by Seller on or prior to the Scheduled Closing Date, Seller may elect, at its option, (i) to terminate this Agreement and retain the Deposit as liquidated damages in accordance with and subject to Sections 8.6. and 17.1. of this Agreement, or (ii) to waive the unsatisfied conditions in writing and proceed to Closing.

11. Seller's Obligations at Closing. Except as noted below, two (2) Business Days prior to the Closing Date, Seller shall, at Seller's expense, deliver the following to Escrow Agent:

11.1. Two (2) duplicate originals each of:

(i)     Deed, duly executed and acknowledged by Seller;

(ii)    Bill of Sale, duly executed by Seller;

Ex. A - 17

          (iii)    Assignment and Assumption of Assumed Contracts, duly executed by Seller, if applicable;

11.2.    State of Hawaii conveyance tax certificate, duly executed by Seller;

11.3.    A certificate or registration of title for any motor vehicle, duly executed by Seller;

11.4.    Assignments of Trademarks and domain names, in forms appropriate for each type of Trademark and domain name, duly executed by Seller;

11.5.    A certification in the form required by Section 1445(e) of the Internal Revenue Code, duly executed by Seller;

11.6.    A certification in the form required by Section 235-68 of the Hawaii Revised Statutes (Form N-289), as amended, duly executed by Seller;

11.7.    A Sale Order expressly providing that the Property is sold free and clear of liens and encumbrances, including any and all taxes owing by Seller to the Hawaii State Department of Taxation;

11.8.    Such other documents, consents and affidavits reasonably necessary to effectuate the valid consummation of the transaction described in this Agreement; and

11.9.    By 9:00 a.m. (Hawaii Standard Time) two (2) Business Day prior to the Closing Date (or such other time as Escrow Agent may permit), escrow funds to pay Seller's share of prorations, one-half (1/2) of the escrow fees, all recording fees, the conveyance tax, the premiums for a standard owner's policy in the amount of the Purchase Price and an extended Owner's ALTA title insurance policy *excluding the premiums for any special title endorsements required by Buyer*, the cost of all surveys including any ALTA survey ordered by Buyer, and such other costs and expenses which are to be paid by Seller under this Agreement. Seller may, as an alternative to providing such funds, deposit with escrow a written authorization to Escrow Agent providing for a deduction of the Closing costs from the proceeds to be disbursed to Seller by Escrow Agent on Closing. Seller shall pay its own attorneys' fees outside of escrow.

12.    <u>Buyer's Obligations at Closing</u>. Except as noted below, two (2) Business Days prior to the Closing Date, Buyer shall deliver the following to Escrow Agent:

12.1.    Two (2) duplicate originals of the Assignment and Assumption of Assumed Contracts, duly executed by Buyer, if applicable;

12.2.    State of Hawaii conveyance tax certificate appropriately completed and duly executed by Buyer;

12.3.    Assignments of Trademarks and domain names, in forms appropriate for each type of Trademark and domain name, duly executed by Buyer, if Buyer's signature is required;

12.4.    A corporate consent of Buyer's board of directors authorizing (i) the purchase of the Property from Seller pursuant to the terms and conditions hereof, (ii) the execution and delivery of all instruments of conveyance, and (iii) authorizing the individual executing the instruments of conveyance to execute, acknowledge and deliver such instruments to Seller on behalf of Buyer;

Ex. A - 18

12.5.    Such other documents, consents and affidavits reasonably necessary to effect the valid consummation of the transaction described in this Agreement; and

12.6.    By 9:00 a.m. (Hawaii Standard Time) two (2) Business Day prior to the Closing Date (or such other time as Escrow Agent may permit), escrow funds in the amount of the cash balance of the Purchase Price, Buyer's share of prorations, one-half (1/2) of the escrow fees, the premiums for any special title endorsements required by Buyer, and such other funds as are necessary to cover any other costs and expenses which are to be paid by Buyer under this Agreement. Buyer shall pay its own attorneys' fees outside of escrow.

13.    Prorations.

13.1.    Adjustments and Prorations. The following matters and items pertaining to the Property shall be prorated as of 12:01 a.m. (Hawaii Standard Time) on the Closing Date ("Cutoff Time"). Net credits in favor of Buyer shall be deducted from the balance of the Purchase Price at the Closing and net credits in favor of Seller shall be paid by Buyer in cash at the Closing.  Except as otherwise provided herein, all such allocations and/or prorations shall be made in accordance with generally accepted accounting principles and practices.  Estimated prorations shall be adjusted after Closing as set forth herein.

13.1.1.    Utility Charges. Seller shall provide written notice to the utility companies of the pending change of ownership of the Property not less than five (5) calendar days prior to the Closing Date and shall concurrently therewith deliver copies of such notices to Buyer.  To the extent reasonably practicable, Seller shall cause all the utility meters to be read on the Closing Date and will be responsible for the cost of all utilities used prior to the Cutoff Time; provided, however, that if it is not reasonably practicable to cause such utility meters to be read as of the Cutoff Time, then the parties shall prorate utility charges upon the Closing on the basis of estimated utility costs and adjust the proration of the utility costs after Closing as set forth herein.

13.1.2.    Real Estate Taxes and Special Assessments. All real property taxes and assessments for the fiscal year in which the Closing shall occur shall be prorated as of the Cutoff Time. Installments for any special assessments for improvements to the Property which accrue prior to the Cutoff Time shall be paid by Seller, and installments for any special assessments for improvements to the Property which accrue after the Cutoff Time shall be paid by Buyer.  If the amount of any such item is not ascertainable as of the Cutoff Time, the credit therefor shall be based on the most recent available bill or on such other basis as Escrow Agent may require, subject to adjustment after Closing as set forth herein.

13.1.3.    Insurance. Buyer may not assume any of the existing insurance policies maintained by Seller in connection with the Property.  Seller shall be entitled to any refunds due for existing policies upon receipt of the same by Seller or Buyer.

13.1.4.    Other Apportionments.  Such other items as are provided for in this Agreement or as are normally prorated and adjusted in the sale of real property in the State of Hawaii.

13.2.    Proration Statement.

13.2.1.    Cooperation.  Seller and Buyer shall cooperate with each other to make such inventories, examinations and audits of the Property, and of the books and records of the Property, as each party may deem necessary to make the adjustments and prorations required hereunder or under any other provisions of this Agreement.  Based upon such audits and inventories, Seller and Buyer will jointly prepare, no later than five (5) Business Days prior to the Closing, a proration estimate. Such proration

Ex. A - 19

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 32 of 185

estimate shall contain the parties' reasonable estimate of the amounts of the items requiring prorations and adjustments in this Agreement and shall be subject to a final proration as soon as the amount of each item can be ascertained with reasonable certainty. The amounts set forth in such proration estimate shall be the basis upon which the prorations and adjustments provided for herein shall be made at the Closing.

13.2.2. <u>Final Adjustments</u>. Seller and Buyer agree to make a final accounting of the adjustments and prorations within ninety (90) days after the Closing Date. If the parties cannot agree on such final accounting then the parties shall submit such dispute to a CPA firm mutually agreed to by the parties ("Outside Accountant"). The Outside Accountant shall be furnished all records relevant to such determination. The determination of the Outside Accountant, which shall be made within a period of thirty (30) days after such submittal by the parties and receipt of such records, shall be conclusive in the absence of manifest error and each party may enter judgment thereon. The foregoing limitation shall not apply to any item which, by its nature, cannot be finally determined within the period specified. However, no further adjustments shall be made beyond one (1) year after the Closing Date. The fees and expenses of the Outside Accountant shall be paid equally by Buyer and Seller. Either party owing the other party a sum of money based on adjustments or prorations after the Closing Date made pursuant to the final proration shall promptly pay that sum to the other party within ten (10) Business Days after delivery of a bill therefor, together with interest thereon at the rate of twelve percent (12%) per annum from the Closing Date to the date of payment if payment is not made within such ten (10) Business Day period. This Section shall survive the Closing.

14. <u>Brokerage</u>. Seller and Buyer acknowledge and agree that CBRE, Inc. ("CBRE") is representing the Seller in connection with the sale of the Property and Business and the Seller is, subject to Bankruptcy Court approval, responsible for the brokerage commission to CBRE. Buyer represents that NAI CBI is representing Buyer in connection with the purchase of the Property and Business. Buyer further represents to the Seller that Buyer has no knowledge of any other real estate broker, consultant or any finder in connection with, or making any claim for a commission in connection with, the transaction contemplated in this instrument, and Buyer represents and warrants that Buyer has not committed any act or suffered any act to be committed so as to create any liability or give rise to a claim for a real estate brokerage commission or finder's fee to any other person or entity except as stated above. From the brokerage commission Seller paying to CBRE, Seller agrees that the sales commission paid to CBRE will be shared with Buyer's Broker (NAI CBI) pursuant to a cooperating brokerage agreement, and payable through escrow at Closing of the transaction contemplated in this instrument. This Section shall survive the Closing.

15. <u>Casualty</u>.

15.1. <u>Notice of Casualty</u>. If, at any time after the Effective Date and prior to Closing or earlier termination of this Agreement, the Property or any portion thereof is damaged or destroyed by fire or any other casualty ("Casualty"), Seller shall give written notice of such Casualty, including the estimated amount of the damage and time required to repair the damage, to Buyer within three (3) days after the occurrence of such Casualty.

15.2. <u>Material Casualty</u>. If (i) the amount of the repair or restoration of the Property damaged by a Casualty equals or exceeds TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($200,000.00) or (ii) the time to fully repair and restore any damage caused by such Casualty is reasonably expected to exceed six (6) months (each, a "Material Casualty"), then Buyer shall have the right to elect, by providing written notice to Seller within ten (10) days after Buyer's receipt of Seller's written notice of such Material Casualty to (A) terminate this Agreement, in which case the Termination Provisions shall apply, or (B) proceed to Closing, without terminating this Agreement, in which case Seller shall (i) provide Buyer with a credit against the Purchase Price in an amount equal to the applicable

Ex. A - 20

insurance deductible and (ii) transfer and assign to Buyer all of Seller's right, title and interest in and to all proceeds from all casualty and lost profits insurance policies maintained by Seller with respect to the Property, and Buyer shall assume full responsibility for all needed repairs upon Closing. If Buyer fails to provide written notice of its election to Seller within such time period, then Buyer shall be deemed to have elected to terminate this Agreement pursuant to clause (A) of the preceding sentence. If the Closing is scheduled to occur within Buyer's ten (10) day election period, the Closing Date shall be postponed until the date which is five (5) Business Days after the expiration of such ten (10) day election period.

15.3. Non-Material Casualty. In the event of any Casualty which is not a Material Casualty, then Buyer shall not have the right to terminate this Agreement and shall proceed to Closing, in which case Seller shall (A) provide Buyer with a credit against the Purchase Price in an amount equal to the applicable insurance deductible and (B) transfer and assign to Buyer all of Seller's right, title and interest in and to all proceeds from all casualty and lost profits insurance policies maintained by Seller with respect to the Property, and Buyer shall assume full responsibility for all needed repairs upon Closing.

16. Eminent Domain.

16.1. Notice of Condemnation. If, at any time after the Effective Date and prior to Closing, any governmental authority commences any condemnation proceeding or other proceeding in eminent domain with respect to all or any portion of the Real Property (a "Condemnation"), Seller shall give written notice of such Condemnation to Buyer within three (3) days after Seller receives notice of such Condemnation.

16.2. Material Condemnation. If the Condemnation would (i) result in the permanent loss of a portion of the Real Property with a fair market value more than TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($200,000.00), (ii) result in any permanent material reduction or restriction in access to the Land or Improvements, or (iii) have a permanent materially adverse effect on the ownership and operation of the Real Property as conducted prior to such Condemnation (each, a "Material Condemnation"), then Buyer shall have the right to elect, by providing written notice to Seller within ten (10) days after Buyer's receipt of Seller's written notice of such Material Condemnation, to (A) terminate this Agreement, in which case the Termination Provisions shall apply, or (B) proceed to Closing, without terminating this Agreement, in which case Seller shall assign to Buyer all of Seller's right, title and interest in all proceeds and awards from such Material Condemnation. If Buyer fails to provide written notice of its election to Seller within such time period, then Buyer shall be deemed to have elected to terminate this Agreement pursuant to clause (A) of the preceding sentence. If the Closing is scheduled to occur within Buyer's ten (10) day election period, the Closing shall be postponed until the date which is five (5) Business Days after the expiration of such ten (10) day election period.

16.3. Non-Material Condemnation. In the event of any Condemnation other than a Material Condemnation, Buyer shall not have the right to terminate this Agreement and shall proceed to Closing, in which case Seller shall assign to Buyer all of Seller's right, title and interest in all proceeds and awards from such Condemnation.

17. Defaults and Remedies.

17.1. Buyer's Default/Seller's Remedies. If Buyer is in default in the performance of any obligation or covenant under this Agreement and Seller is not in default and Buyer does not cure such default to the reasonable satisfaction of Seller within five (5) Business Days following Buyer's receipt of written notice from Seller of such default, then Seller's sole and exclusive remedy shall be to terminate this Agreement in which event Seller shall be entitled to the Deposit as full and complete liquidated

Ex. A - 21

damages for Buyer's default of its obligations under this Agreement, it being agreed between the parties that Seller's damages in the event of such a breach would be extremely difficult or impractical to determine and the amount of the Deposit is a reasonable estimate thereof. Thereafter, the parties shall be released from all further obligations and liabilities under this Agreement.

17.2   Seller's Default/Buyer's Remedies. If Seller is in default in the performance of any obligation or covenant under this Agreement, including but not limited to, the obligation to convey the Property to Buyer and Buyer is not in default and Seller does not cure such default to the reasonable satisfaction of Buyer within five (5) Business Days following Seller's receipt of written notice from Buyer of such default, Buyer shall elect as its remedy one of the following: (i) to terminate this Agreement, and upon such termination (a) Buyer shall be entitled to the return of the Deposit, and (b) Seller shall pay all escrow cancellation charges and reimburse Buyer for Buyer's costs and fees incurred in connection with this transaction including its due diligence investigation or (ii) proceed to close and bring a suit for damages, specific performance if necessary or any other remedy at law or in equity.

18.   Miscellaneous.

18.1.   Instruments of Further Assurance, Good Faith. Each of the parties hereto agrees, at its own expense, to execute and deliver to the other at or after the Closing any and all further instruments and documents as either may reasonably request in order to carry out any of the provisions of this Agreement. Seller and Buyer shall act in good faith in all respects relative to the transactions contemplated hereby. This Section shall survive the Closing.

18.2.   Notices. Any notice, consent or approval required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given (i) upon hand delivery, (ii) two (2) Business Days after being deposited with Federal Express or another reliable overnight courier service for next day delivery, or (iii) three (3) Business Days after being deposited in the United States mail, registered or certified mail, postage prepaid, return receipt required, and addressed as follows (or such other address as either party may from time to time specify in writing to the other in accordance with this Section):

If to Seller:        David Zhou
                     255 Duncan Mill Road, Unit 307
                     Toronto, ON
                     Canada M3B 3H9


with a copy to:      Choi & Ito
                     700 Bishop Street, Suite 1107
                     Honolulu, Hawaii 96813
                     Attention: Chuck C. Choi

If to Buyer:         Jinwook Shin
                     SHIN & YOO
                     11th Floor, Woori Tech Bldg. 9
                     WorldCup Bukro 56-gil, Mapo-gu
                     Seoul 03923, S. KOREA

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 35 of 185

<table>
<tr><td>with a copy to:</td><td>Warren Kim, Esq.<br>1888 Kalakaua Lane, Ste C312<br>Honolulu, Hawaii 96815</td></tr>
<tr><td>If to Escrow Agent:</td><td>Title Guaranty Escrow Services, Inc.<br>Attn: Jeremy Trueblood<br>235 Queen Street<br>Honolulu, Hawaii 96813</td></tr>
</table>

18.3. <u>Parties in Interest</u>. This Agreement, and each and every term and provision hereof, shall inure to the benefit of, and be binding upon and enforceable against, Buyer and Seller hereto and their respective successors and permitted assigns.

18.4. <u>Incorporation of Exhibits and Schedules</u>. The following Exhibits shall be construed with and as integral parts of this Agreement to the same extent as if the same had been set forth verbatim herein:

Exhibits      A      Land Description

18.5. <u>Third-Party Beneficiaries</u>. This Agreement does not confer any rights or remedies on any Person other than (i) the parties hereto and their respective successors and permitted assigns and (ii) any indemnitee to the extent such indemnitee is expressly provided a right of defense or indemnification in this Agreement.

18.6. <u>Assignment</u>. Buyer is permitted to assign this Agreement to a new special purpose entity, provided that (i) such new entity is an Affiliate of Buyer, (ii) the assignment shall not release Buyer from its obligations under this Agreement, (iii) the assignment does not delay the Closing, and (iv) the permitted assignee assumes all the duties and obligations of Buyer under this Agreement. This Agreement shall not otherwise be assignable or transferable in whole or in part, or by operation of law, by either party and nothing in this Agreement is intended to confer upon any Person, other than the parties hereto except as set forth in Section 18.6., any rights, remedies or obligations under, or by reason of, this Agreement. The term "<u>Affiliate</u>" means an entity directly or indirectly, through one or more intermediaries, controlled by or under common control with an entity (a) assigning or transferring the applicable interest or (b) being referred to. The terms "<u>controlled</u>" and "<u>control</u>", as used in the immediately preceding sentence, means, with respect to an entity that is a corporation, the right to the exercise, directly or indirectly, of more than fifty percent (50%) of the voting rights attributable to the shares of the controlled corporation and, with respect to an entity that is not a corporation, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the controlled entity.

18.7. <u>Titles and Headings</u>. Titles and headings to sections and paragraphs herein are for the purpose of convenience and reference only and shall in no way limit, define or otherwise affect the provisions thereof.

18.8. <u>Severability</u>. If any term, provision, covenant or condition of this Agreement should be held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of this Agreement shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby.

Ex. A - 23

18.9. <u>Time is of the Essence</u>. Time is specifically declared to be of the essence of this Agreement and of acts required to be done and performed by Buyer and Seller.

18.10. <u>Applicable Law and Forum</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Hawaii, excluding its choice of law rules that may otherwise require the application of the law of another jurisdiction. Any legal action or any other proceeding, including an action for declaratory relief, brought to enforce the Agreement or because of or relating to any dispute, breach, default, or misrepresentation in connection with the Agreement, shall be brought and maintained solely in the Circuit Court of the First Circuit, State of Hawaii, or the Bankruptcy Court, as appropriate. Buyer and Seller by execution of this Agreement consent to exclusive personal jurisdiction and venue in such courts, and waive any right to object to such forum or seek any transfer or change of venue to any other forum.

18.11. <u>Attorneys' Fees</u>. Should either party hereto reasonably retain counsel for the purpose of enforcing or preventing the breach of any provision hereof, including, but not limited to, instituting any action or proceedings to enforce any provision hereof, for damages by reason of any alleged breach of any provision of this Agreement, for a declaration of such party's rights or obligations hereunder or for any other judicial remedy, then the prevailing party shall be entitled to be reimbursed by the other party for all costs and expenses incurred in connection therewith, including, without limitation, reasonable attorneys' fees and costs for the services rendered to such prevailing party.

18.12. <u>No Party Deemed Drafter</u>. The parties agree that no party shall be deemed to be the drafter of this Agreement and further that in the event that this Agreement is ever construed by a court of law, such court shall not construe this Agreement or any provision of this Agreement against any party as the drafter of this Agreement.

18.13. <u>Entire Agreement</u>. This Agreement constitutes and contains the entire agreement between Seller and Buyer and supersedes any and all prior negotiations, correspondence, understandings and agreements between the parties respecting the subject matter hereof.

18.14. <u>Amendment</u>. This Agreement may be amended only by a writing signed by each of the parties hereto.

18.15. <u>No Partnership</u>. Seller and Buyer are not and shall not be considered joint venturers or partners and neither shall have the power to bind, obligate or represent the other.

18.16. <u>Grammar</u>. The necessary grammatical changes required to make the provisions of this Agreement apply in the plural sense and to either entities, individuals, males or females, shall in all instances be assumed.

18.17. <u>Calculation of Time Periods</u>. Unless otherwise specified in this Agreement, when computing any period of time described in this Agreement, the day of the act or event after which the designated period of time begins to run is not to be included and the last day of the period so computed is to be included, unless such last day is a Saturday, Sunday or legal holiday under the laws of the State of Hawaii or the United States, in which event the period shall run until the end of the next day which is neither a Saturday, Sunday nor such legal holiday. The final day of any such period shall be deemed to end at 5:00 p.m. Hawaii Standard Time.

18.18. <u>Business Days</u>. "Business Days" means Mondays to Fridays (Hawaii Standard Time), other than United States and State of Hawaii holidays.

Ex. A - 24

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 37 of 185

18.19. No Personal Liability. The parties hereby agree that no individual officer, director, member, manager, employee or representative of Buyer shall have any personal liability under this Agreement. The provisions of this Section shall survive the termination of this Agreement and/or the Closing and the recordation of the Deed.

18.20. Waivers. The failure of any party hereto to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, nor in any way to affect the validity of this Agreement or any part hereof or the right of any party thereafter to enforce each and every

such provision. No waiver of any breach of this Agreement shall be held to constitute a waiver of any other or subsequent breach. No waiver hereunder shall be effective unless in writing and signed by the waiving party.

18.21. Counterparts; Electronic Signatures. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Facsimile and PDF e-mail copies of this executed Agreement shall be fully binding and effective for all purposes whether or not originally executed documents are transmitted to the other party. Facsimile and PDF e-mail signatures on documents will be treated the same as original signatures. Notwithstanding the foregoing, all documents to be recorded shall be originals.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date _____

"Seller"

Hawaii MGCW LLC

By: _____
Name: Wei Zhou
Its: Manager

Hawaii MVCC LLC

By: _____
Name: Wei Zhou
Its: Manager

MDRE LLC

By: _____
Name: Wei Zhou
Its: Manager

MDRE 3 LLC

By: _____
Name: Wei Zhou
Its: Manager

MDRE 4 LLC

By: _____
Name: Wei Zhou
Its: Manager

MDRE 5 LLC

By: _____
Name: Wei Zhou
Its: Manager

Ex. A - 25

MDRE 2 LLC

By: _____
Name: Wei Zhou
Its: Manager

"Buyer"

KH Gangwon Development, Inc.

By: _____
Printed Name: Gyusik Bang
Its: President & CEO
Date: 2022. 5. 16

Ex. A - 26

## EXHIBIT A

Property Description
[To be inserted]

# EXHIBIT B

# PRELIMINARY REPORT
(No Liability Hereunder)

This report (and any revisions thereto) is issued solely for the convenience of the titleholder, the titleholder's agent, counsel, purchaser or mortgagee, or the person ordering it for the purpose of facilitating the issuance of a policy of title insurance by Title Guaranty of Hawaii, LLC and no liability will arise under this report.

--------------------------------------------

# SCHEDULE A

Title Guaranty of Hawaii, LLC (the "Company") hereby reports that, subject to those matters set forth in Schedule "B" hereof, the title to the estate or interest to the land described in Schedule "C" hereof is vested in:

HAWAII MVCC LLC,
a Hawaii limited liability company,
as Fee Owner

This report is dated as of May 06, 2022 at 8:00 a.m.

**Inquiries concerning escrow should be directed to:**
Escrow Officer - Jeremy Trueblood; Office: (808)521-0208
Email: jtrueblood@tghawaii.com

**Inquiries concerning this report should be directed to:**
Title Officer - Susan Iloreta; Office: (808)533-5836
Email: siloreta@tghawaii.com
Please reference Order No. 7311254448E, Escrow No.

© Title Guaranty of Hawaii, LLC.
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

## SCHEDULE B
## EXCEPTIONS

1. Real Property Taxes, if any, that may be due and owing.

   ITEM I (LOT 1429-C) is(are) covered by Tax Key: (1) 8-4-002-005.

   ITEM II (LOT 1029) is(are) covered by Tax Key: (1) 8-4-002-056.

   ITEM III (LOT 1030) is(are) covered by Tax Key: (1) 8-4-002-057.

   ITEM IV (LOT 714) is(are) covered by Tax Key: (1) 8-4-023-014.

   ITEM V (LOT 715) is(are) covered by Tax Key: (1) 8-4-023-015.

   ITEM VI (LOT 1624) is(are) covered by Tax Key: (1) 8-4-024-001.

   ITEM VII (LOT 698-A) is(are) covered by Tax Key: (1) 8-4-002-076.

2. Mineral and water rights of any nature.

3. -AS TO ITEM I (LOT 1429-C):-

   (A) Roadway as referenced on the tax map.

   (B) Rights of others who may have easement or access rights in
       the land described in Schedule C.

   (C) Ditch as referenced in Map 107 filed in the Office of the
       Assistant Registrar of the Land Court of the  State of
       Hawaii with Land Court Application No. 1052 (amended) of
       Waianae Company.

   (D) Right of way in the nature of an easement of way of
       necessity in favor of owners of Exclusion 3, for the
       purpose of egress and ingress from and to said Exclusion 3,
       as approximately shown and delineated on Map of Land Court
       Application No. 1052.

   (E) Thirty-foot easements for road purposes to the public
       highway, in favor of Lots 411, 412-A, 412-B, 1031, 1430 and
       1431, as set forth by Land Court Order No. 7840, filed
       November 20, 1947.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

-NOTE:- Lot 1430 has been subdivided into Lots 1430-A, 1430-B
          and 1430-C as set forth by Land Court Order No. 68011,
          filed November 29, 1983.  Said above easements is now
          in favor of Lots 1430-A and 1430-C.

(F)  Free flowage of water in natural stream beds, as set forth
     by Land Court Order No. 10157, filed March 7, 1951.

(G)  Designation of the following easements as shown on Map 18 of
     Land Court Application No. 1053, as set forth by Land Court
     Order No. 10510, filed July 31, 1951:

     (i)  EASEMENT "40" (10 feet wide) for water pipeline
          purposes.

     (ii) EASEMENT "42" (25 feet wide) for telephone and electric
     powerline purposes.

(H) GRANT

TO          :  CITY AND COUNTY OF HONOLULU, a municipal
               corporation of the State of Hawaii

DATED       :  February 6, 1950
FILED       :  Land Court Document No. 116618
GRANTING    :  all rights in basal water only

(I) GRANT

TO          :  HAWAIIAN ELECTRIC COMPANY, INC. and GTE HAWAIIAN
               TELEPHONE COMPANY INCORPORATED, now known as
               HAWAIIAN TELCOM, INC.

DATED       :  February 19, 1951
FILED       :  Land Court Document No. 126432
GRANTING    :  an easement for utility purposes

(J) GRANT

TO          :  HAWAIIAN ELECTRIC COMPANY, INC. and GTE HAWAIIAN
               TELEPHONE COMPANY INCORPORATED, now known as
               HAWAIIAN TELCOM, INC.

DATED       :  August 22, 1957
FILED       :  Land Court Document No. 208785
GRANTING    :  an easement for utility purposes

(K) GRANT

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE B CONTINUED


TO          :   HAWAIIAN ELECTRIC COMPANY, INC. and GTE HAWAIIAN
                TELEPHONE COMPANY INCORPORATED, now known a
                HAWAIIAN TELCOM, INC.

DATED       :   April 8, 1965
FILED       :   Land Court Document No. 360456
GRANTING    :   an easement for utility purposes

(L)  Reservation of all water rights in favor of Waianae
     Development Company, Limited, as reserved in DEED dated
     February 9, 1968, filed as Land Court Document No. 437151.

(M) GRANT

TO          :   HAWAIIAN ELECTRIC COMPANY, INC. and GTE HAWAIIAN
                TELEPHONE COMPANY INCORPORATED, now known as
                HAWAIIAN TELCOM, INC.

DATED       :   September 11, 1968
FILED       :   Land Court Document No. 456388
GRANTING    :   an easement for utility purposes

(N) DESIGNATION OF EASEMENT "65"

PURPOSE     :   access
SHOWN       :   on Map 75 of Land Court Application No. 1052, as
                set forth by Land Court Order No. 36325, filed
                November 14, 1972

(O)  Said Easement "65" is subject to right of way in favor of
     Lots 1030 and 1031, as set forth in Land Court Order No.
     68011, filed November 29, 1983.

(P)  Designation of the following easements as shown on Map 119
     of Land Court Application No. 1052, as set forth by Land
     Court Order No. 42446, filed July 23, 1975:

     (i)   EASEMENT "97" (25 feet wide)

     (ii)  EASEMENT "98" (5 feet wide)

(Q) DESIGNATION OF EASEMENT "156" (52,542 square feet)

SHOWN       :   on Map 156 of Land Court Application No. 1052, as
                set forth by Land Court Order No. 52561, filed
                March 1, 1979

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261
Page 45

SCHEDULE B CONTINUED

(R) The terms and provisions contained in the following:

INSTRUMENT : DECLARATION

DATED     : March 6, 1979
FILED     : Land Court Document No. 931192

(S) Rights of way for road, utility and irrigation purposes, as
    granted to ANA HOTELS HAWAII, INC., a Hawaii corporation by
    DEED dated march 30, 1979, filed as Land Court Document No.
    931193.

(T) Designation of the following easements as shown on Map 185
    of Land Court Application No. 1052, as set forth by Land
    Court Order No. 68011, filed November 29, 1983:

    (i)   EASEMENT "198" (10 feet wide, 1,573 square feet)

    (ii)  EASEMENT "199" (11,709 square feet)

    (iii) EASEMENT "200" (10 feet wide, 10,519 square feet)

(U) Right of way in favor of Lots 1429-A, 1430-A and 1430-C, as
    set forth by Land Court Order No. 68011, filed November 29,
    1983.

(V) GRANT

TO        : HONOLULU FEDERAL SAVINGS AND LOAN ASSOCIATION, a
            federal savings and loan association, now known as
            BANK OF AMERICA, FSB, a federal savings bank

DATED     : August 5, 1988
FILED     : Land Court Document No. 1574278
GRANTING  : an easement over said Easement "199" for drainage
            purposes

(W) DESIGNATION OF EASEMENT "307" (10 feet wide, 2,192 square
feet)

PURPOSE   : sewerline
SHOWN     : on Map 215 of Land Court Application No. 1052, as
            set forth by Land Court Order No. 91596, filed
            November 2, 1988

(X) GRANT

TO        : ANA HOTELS HAWAII, INC., a Hawaii corporation

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

```
DATED      :  November 23, 1988
FILED      :  Land Court Document No. 1608301
GRANTING   :  an easement over said Easement "307"
```

(Y) GRANT

```
TO         :  CITY AND COUNTY OF HONOLULU, a municipal
              corporation of the State of Hawaii

DATED      :  August 5, 1988
FILED      :  Land Court Document No. 1647858
GRANTING   :  an easement over said Easement "198" for sewer
              purposes
```

(Z) GRANT

```
TO         :  CITY AND COUNTY OF HONOLULU, a municipal
              corporation of the State of Hawaii

DATED      :  ---, 1989 (acknowledged March 5, 1989 and May 23,
              1989)
FILED      :  Land Court Document No. 1735842
GRANTING   :  an easement over said Easement "307"
```

(AA) GRANT OF NON-EXCLUSIVE EASEMENT AND MEMORANDUM OF WATER
     AGREEMENT

```
TO         :  KO OLINA MAKAHA EAST LLC, a Hawaii limited
              liability company, and KO OLINA MAKAHA EAST II LLC,
              a Hawaii limited liability company

DATED      :  March 30, 2012
FILED      :  Land Court Document No. T-8124404
GRANTING   :  a non-exclusive easement over, across, through and
              under the Golf Course for utilities, pedestrian and
              vehicular ingress and egress between the Dominant
              Land and the public road
```

(BB) The terms and provisions contained in unrecorded WATER
     AGREEMENT dated March 30, 2012, as mentioned in GRANT OF
     NONEXCLUSIVE EASEMENT AND WATER FACILITIES LICENSE, dated
     march 30, 2012, recorded as Document No. T-8124405.

(CC) Any claim or boundary dispute which may exist or arise by
     reason of the failure of the GRANT OF NON-EXCLUSIVE
     EASEMENT AND WATER FACILITIES LICENSE, dated March 30,
     2012, filed as Land Court Document No. T-8124405, referred

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

to in Schedule C to locate with certainty the boundaries of the easements described in said instrument.

(DD)  The terms and provisions contained in the following:

INSTRUMENT :  MEMORANDUM OF NON-EXCLUSIVE TEE TIME ALLOCATION
              AGREEMENT AND OPTION TO LEASE

DATED      :  effective March 30, 2012
FILED      :  Land Court Document No. T-8124406
PARTIES    :  HAWAII MVCC LLC, a Hawaii limited liability
              company, and HAWAIIAN GOLF PROPERTIES LLC, a Hawaii
              limited liability company, "Golf Course Owner", and
              KO OLINA MAKAHA EAST LLC, a Hawaii limited
              liability company, and KO OLINA MAKAHA EAST II LLC,
              a Hawaii limited liability company, "Ko Olina"
RE         :  The "Golf Use Agreement" shall expire on the first
              to occur of: (1) 30 years from the date of the
              reopening of the Makaha West Golf Course to the
              public and (2) December 31, 2060.  The "Option to
              Lease" must be exercised prior to the earlier to
              occur of: (1) 10 years from the date of the
              reopening of the Makaha West Golf Course to the
              public and (2) December 31, 2025.

(EE)  Matters shown on DPP File No. 2013/SUB-155 approved by t
      Department of Planning and Permitting, City and County of
      Honolulu, on November 8, 2013.

4.  -AS TO ITEM II (LOT 1029):-

(A)  Ditch as referenced in Map 107 filed in the Office of the
     Assistant Registrar of the Land Court of the State of Hawaii
     with Land Court Application No. 1052 (amended) of Waianae
     Company.

(B)  Roadway as referenced on the tax map.

(C)  Right of way in the nature of an easement of way of
     necessity in favor of owners of Exclusion 3, for the purpose
     of egress and ingress from and to said Exclusion 3, as
     approximately shown and delineated on Map 8, Land Court
     Application No. 1052.

U.S. Bankruptcy Court - Hawaii #22-00425 Dkt # 44-4 Filed 06/03/22  Page 48 of 185

SCHEDULE B CONTINUED

(D)  Thirty-foot easements for road purposes to the public
     highway, in favor of Lots 411, 412-A, 412-B, and 1008, shown
     on Map 8, as set forth by Land Court Order No. 7840, filed
     November 20, 1947.

(E)  Grant and covenant as set forth in instrument dated February
     6, 1950, filed as Land Court Document No. 116618; granting
     all rights in basal water only.

(F)  Free flowage of water in natural stream beds, as set fort by
     Land Court Order Nos. 10157, filed March 7, 1951. and 10510
     filed July 31, 1951.

(G)  Reservation of all water rights in favor of Waianae
     Development Company, Limited, as reserved in DEED dated
     February 9, 1968, filed as Land Court Document No. 437151.

(H)  The terms and provisions contained in the following:

INSTRUMENT : DEED

DATED       : April 30, 1973
FILED       : Land Court Document No. 628620

The foregoing includes, but is not limited to, matters relating
to the following:

Reserving, however, to Makaha Valley, Incorporated, reasonable
easements over, upon, under and across Lots 1029 and 1030,
besides other land, as shown on Map 107 of Land Court Application
No. 1052 (amended), for the existing water pipe lines from the
Glover Tunnel to Lots 1008 and 1004, both as shown on said Map
107, the existing reservoir on said Lots 1029 and 1030, besides
other land, and for the existing well and pipe line from the well
to said reservoir situate on said Lots 1029 and 1030, besides
other land, all of which easements and pipe lines may be
relocated by Makaha Properties, Ltd. at its sole expense.

(I) GRANT

TO          : KO OLINA MAKAHA EAST LLC, a Hawaii limited
              liability company, and KO OLINA MAKAHA EAST II LLC,
              a Hawaii limited liability company

DATED       : March 30, 2012
FILED       : Land Court Document No. T-8124404
GRANTING    : non-exclusive easement over, across, through and
              under the Golf Course for utilities, pedestrian and

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

vehicular ingress and egress between the Dominant
Land and the public road

(J)  The terms and provisions contained in unrecorded WATER
     AGREEMENT dated March 30, 2012, as mentioned in GRANT OF
     NONEXCLUSIVE EASEMENT AND WATER FACILITIES LICENSE, dated
     March 30, 2012, recorded as Document No. T-8124405.

(K)  Any claim or boundary dispute which may exist or arise by
     reason of the failure of the GRANT OF NON-EXCLUSIVE EASEMENT
     AND WATER FACILITIES LICENSE, dated March 30, 2012, filed as
     Land Court Document No. T-8124405, referred to in Schedule C
     to locate with certainty the boundaries of the easements
     described in said instrument.

(L)  The terms and provisions contained in the following:

INSTRUMENT :  MEMORANDUM OF NON-EXCLUSIVE TEE TIME ALLOCATION
              AGREEMENT AND OPTION TO LEASE

DATED      :  effective March 30, 2012
FILED      :  Land Court Document No. T-8124406
PARTIES    :  HAWAII MVCC LLC, a Hawaii limited liability
              company, and HAWAIIAN GOLF PROPERTIES LLC, a Hawaii
              limited liability company, "Golf Course Owner", and
              KO OLINA MAKAHA EAST LLC, a Hawaii limited
              liability company, and KO OLINA MAKAHA EAST II LLC,
              a Hawaii limited liability company, "Ko Olina"
RE         :  The "Golf Use Agreement" shall expire on the first
              to occur of: (1) 30 years from the date of the
              reopening of the Makaha West Golf Course to the
              public and (2) December 31, 2060.  The "Option to
              Lease" must be exercised prior to the earlier to
              occur of: (1) 10 years from the date of the
              reopening of the Makaha West Golf Course to the
              public and (2) December 31, 2025.

(M)  Claims arising out of customary and traditional rights an
     practices, including without limitation those exercised for
     subsistence, cultural, religious, access or gathering
     purposes, as provided for in the Hawaii Constitution or the
     Hawaii Revised Statutes.

(N)  The land described in Schedule C should be conveyed and/or
     mortgaged with appropriate and applicable access.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

5.   -AS TO ITEM III (LOT 1030):-

(A)  Roadway as referenced on the tax map.

(B)  Ditch as referenced in Map 107 filed in the Office of the
     Assistant Registrar of the Land Court of the State of Hawaii
     with Land Court Application No. 1052 (amended) of Waianae
     Company.

(C)  Right of way in the nature of an easement of way of
     necessity in favor of owners of Exclusion 3, for the purpose
     of egress and ingress from and to said Exclusion 3, as
     approximately shown and delineated on Map 8 of Land Court
     Application 1052.

(D)  Thirty-foot easements for road purposes to the public
     highway, in favor of Lots 411, 412-A, 412-B, 1031, 1430 and
     1431, as set forth by Land Court Order No. 7840, filed
     November 20, 1947.

     -NOTE:-  Lot 1430 has been subdivided into Lots 1430-A,
              1430-B and 1430-C, as set forth in Land Court Order
              No. 68011 filed November 29, 1983. Said above
              easements is now in favor of Los 1430-a and 1430-C.

(E)  GRANT

TO          :  CITY AND COUNTY OF HONOLULU, a municipal
               corporation of the State of Hawaii

DATED       :  February 6, 1950
FILED       :  Land Court Document No. 116618
GRANTING    :  all rights to basal water only

(F)  Free flowage of water in natural stream beds, as set forth
     by Land Court Document No. 10157, filed March 7, 1951.

(G)  Reservation of all water rights in favor of Waianae
     Development Company, Limited, as reserved in DEED dated
     February 9, 1968, filed as Land Court Document No. 437151.

(H)  The terms and provisions contained in the following:

INSTRUMENT : DEED

DATED       :  April 30, 1973

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261
Page 85

SCHEDULE B CONTINUED

FILED        :  Land Court Document No. 628620

The foregoing includes, but is not limited to, matters relating
to the following:

Reserving, however, to Makaha Valley, Incorporated, reasonable
easements over, upon, under and across Lots 1029 and 1030,
besides other land, as shown on Map 107 of Land Court Application
No. 1052 (amended), for the existing water pipe lines from the
Glover Tunnel to Lots 1008 and 1004, both as shown on said Map
107, the existing reservoir on said Lots 1029 and 1030, besides
other land, and for the existing well and pipe line from the well
to said reservoir situate on said Lots 1029 and 1030, besides
other land, all of which easements and pipe lines may be
relocated by Makaha Properties, Ltd. at its sole expense.

(I)  GRANT OF NON-EXCLUSIVE EASEMENT AND MEMORANDUM OF WATER
     AGREEMENT

TO           :  KO OLINA MAKAHA EAST LLC, a Hawaii limited
                liability company, and KO OLINA MAKAHA EAST II LLC,
                a Hawaii limited liability company

DATED        :  March 30, 2012
FILED        :  Land Court Document No. T-8124404
GRANTING     :  a non-exclusive easement over, across, through and
                under the Golf Course for utilities, pedestrian and
                vehicular ingress and egress between the Dominant
                Land and the public road

(J)  The terms and provisions contained in unrecorded WATER
     AGREEMENT dated March 30, 2012, as mentioned in GRANT OF
     NON-EXCLUSIVE EASEMENT AND WATER FACILITIES LICENSE, dated
     March 30, 2012, filed as Land Court Document No. T-8124405.

(K)  Any claim or boundary dispute which may exist or arise by
     reason of the failure of the GRANT OF NON-EXCLUSIVE EASEMENT
     AND WATER FACILITIES LICENSE, dated March 30, 2012, filed as
     Land Court Document No. T-8124405.

(L)  The terms and provisions contained in the following:

INSTRUMENT :  MEMORANDUM OF NON-EXCLUSIVE TEE TIME ALLOCATION
              AGREEMENT AND OPTION TO LEASE

DATED        :  effective March 30, 2012
FILED        :  Land Court Document No. T-8124406

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

SCHEDULE B CONTINUED


PARTIES     :  HAWAII MVCC LLC, a Hawaii limited liability
               company, and HAWAIIAN GOLF PROPERTIES LLC, a Hawaii
               limited liability company, "Golf Course Owner", and
               KO OLINA MAKAHA EAST LLC, a Hawaii limited
               liability company, and KO OLINA MAKAHA EAST II LLC,
               a Hawaii limited liability company, "Ko Olina"

RE          :  The "Golf Use Agreement" shall expire on the first
               to occur of: (1) 30 years from the date of the
               reopening of the Makaha West Golf Course to the
               public and (2) December 31, 2060.  The "Option to
               Lease" must be exercised prior to the earlier to
               occur of: (1) 10 years from the date of the
               reopening of the Makaha West Golf Course to the
               public and (2) December 31, 2025.


(M)  Claims arising out of customary and traditional rights and
     practices, including without limitation those exercised for
     subsistence, cultural, religious, access or gathering
     purposes, as provided for in the Hawaii Constitution or the
     Hawaii Revised Statutes.

(N)  The land described in Schedule C should be conveyed and/or
     mortgaged with appropriate and applicable access.




6.   -AS TO ITEM IV (LOT 714):-

     (A)  The terms and provisions contained in the following:

     INSTRUMENT :  DEED

     DATED      :  November 21, 1947
     FILED      :  Land Court Document No. 97068

     (B)  An easement for the free flowage of water in natural stream
          beds, as set forth by Land Court Order No. 10157, filed
          March 7, 1951.

     (C)  Designation of the following easements as shown on Map 18,
          as set forth by Land Court Order No. 10510, filed July 31,
          1951:

          (i)  EASEMENT "36" (10 feet wide) for ditch purposes.

          (ii) EASEMENT "37" (10 feet wide) for ditch purposes.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

(D)  GRANT

```
TO          :  KO OLINA MAKAHA EAST LLC, a Hawaii limited
               liability company, and KO OLINA EAST II LLC, a
               Hawaii limited liability company

DATED       :  March 30, 2012
FILED       :  Land Court Document No. T-8124404
GRANTING    :  non-exclusive easements in favor of Lot 1430-C for
               (a) water, sewer, drainage, flowage and utility
               purposes and (b) access to and from the public road
```

(E)  The terms and provisions contained in unrecorded WATER
     AGREEMENT dated March 30, 2012, as mentioned in GRANT OF
     NON-EXCLUSIVE EASEMENT AND WATER FACILITIES LICENSE, dated
     March 30, 2012, filed as Document No. T-8124405.

(F)  Any claim or boundary dispute which may exist or arise by
     reason of the failure of the GRANT OF NON-EXCLUSIVE EASEMENT
     AND WATER FACILITIES LICENSE, dated March 30, 2012, filed as
     Land Court Document No. T-8124405, referred to in Schedule C
     to locate with certainty the boundaries or the easements
     described in said instrument.

(G)  The terms and provisions contained in the following:

```
INSTRUMENT :  MEMORANDUM OF NON-EXCLUSIVE TEE TIME ALLOCATION
              AGREEMENT AND OPTION TO LEASE

DATED       :  effective March 30, 2012
FILED       :  Land Court Document No. T-8124406
PARTIES     :  HAWAII MVCC LLC, a Hawaii limited liability
               company, and HAWAIIAN GOLF PROPERTIES LLC, a Hawaii
               limited liability company, "Golf Course Owner", and
               KO OLINA MAKAHA EAST LLC, a Hawaii limited
               liability company, and KO OLINA MAKAHA EAST II LLC,
               a Hawaii limited liability company, "Ko Olina"
RE          :  The "Golf Use Agreement" shall expire on the first
               to occur of: (1) 30 years from the date of the
               reopening of the Makaha West Golf Course to the
               public and (2) December 31, 2060.  The "Option to
               Lease" must be exercised prior to the earlier to
               occur of: (1) 10 years from the date of the
               reopening of the Makaha West Golf Course to the
               public and (2) December 31, 2025
```

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

7.   -AS TO ITEM V (LOT 715):-

(A) The terms and provisions contained in the following:

INSTRUMENT : DEED

DATED     : November 21, 1947
FILED     : Land Court Document No. 97068

(B) An easement for the free flowage of water in natural stream
    beds, as set forth by Land Court Order No. 10157, filed
    March 7, 1951.

(C) Designation of the following easements as shown on Map 18,
    as set forth by Land Court Order No. 10510, filed July 31,
    1951:

    (i)  EASEMENT "36" (10 feet wide) for ditch purposes.

    (ii) EASEMENT "37" (10 feet wide) for ditch purposes.

(D) GRANT

TO        : KO OLINA MAKAHA EAST LLC, a Hawaii limited
            liability company, and KO OLINA EAST II LLC, a
            Hawaii limited liability company

DATED     : March 30, 2012
FILED     : Land Court Document No. T-8124404
GRANTING  : non-exclusive easements in favor of Lot 1430-C for
            (a) water, sewer, drainage, flowage and utility
            purposes and (b) access to and from the public road

(E) The terms and provisions contained in unrecorded WATER
    AGREEMENT dated March 30, 2012, as mentioned in GRANT OF
    NON-EXCLUSIVE EASEMENT AND WATER FACILITIES LICENSE, dated
    March 30, 2012, recorded as Document No. T-8124405.

(F) Any claim or boundary dispute which may exist or arise by
    reason of the failure of the GRANT OF NON-EXCLUSIVE EASEMENT
    AND WATER FACILITIES LICENSE, dated March 30, 2012, filed as
    Land Court Document No. T-8124405, referred to in Schedule C
    to locate with certainty the boundaries of the easements
    described in said instrument.

(G) The terms and provisions contained in the following:

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

INSTRUMENT :  MEMORANDUM OF NON-EXCLUSIVE TEE TIME ALLOCATION
              AGREEMENT AND OPTION TO LEASE

DATED      :  effective March 30, 2012
FILED      :  Land Court Document No. T-8124406

PARTIES    :  HAWAII MVCC LLC, a Hawaii limited liability
              company, and HAWAIIAN GOLF PROPERTIES LLC, a Hawaii
              limited liability company, "Golf Course Owner", and
              KO OLINA MAKAHA EAST LLC, a Hawaii limited
              liability company, and KO OLINA MAKAHA EAST II LLC,
              a Hawaii limited liability company, "Ko Olina"
RE         :  The "Golf Use Agreement" shall expire on the first
              to occur of: (1) 30 years from the date of the
              reopening of the Makaha West Golf Course to the
              public and (2) December 31, 2060.  The "Option to
              Lease" must be exercised prior to the earlier to
              occur of: (1) 10 years from the date of the
              reopening of the Makaha West Golf Course to the
              public and (2) December 31, 2025.


8.   -AS TO ITEM VI (LOT 1624):-

     (A)  Designation of the following easements as shown on Maps 215,
          as set forth by Land Court Order No, 91596, filed November
          2, 1988:

          (i)   EASEMENT "305" (10 feet wide, 1,579 square feet) for
                sewerline purposes.

          (ii)  EASEMENT "306" (10 feet wide, 1,579 square feet) for
                sewerline purposes.

     (B)  GRANT

          TO        :  ANA HOTELS HAWAII, INC., a Hawaii corporation

          DATED     :  November 23, 1988
          FILED     :  Land Court Document No. 1608301
          GRANTING  :  an easement over said Easement(s) "305" and "306"

     (C)  GRANT

          TO        :  CITY AND COUNTY OF HONOLULU, a municipal
                       corporation of the State of Hawaii

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

```
DATED       :  ---, 1989 (acknowledged March 6, 1989 and May 23,
               1989)
FILED       :  Land Court Document No. 1735842
GRANTING    :  an easement over said Easement(s) "305" and "306"
```

(D) GRANT

```
TO          :  KO OLINA MAKAHA EAST LLC, a Hawaii limited
               liability company, and KO OLINA MAKAHA EAST II LLC,
               a Hawaii limited liability company
```

```
DATED       :  March 30, 2012
FILED       :  Land Court Document No. T-8124404
GRANTING    :  non-exclusive easements in favor of Lot 1430-C for
               (a) water, sewer, drainage, flowage and utility
               purposes and (b) access to and from the public road
```

(E)    The terms and provisions contained in unrecorded WATER
       AGREEMENT dated March 30, 2012, as mentioned in GRANT OF
       NON-EXCLUSIVE EASEMENT AND WATER FACILITIES LICENSE, dated
       March 30, 2012, filed as Land Court Document No. T-8124405.

(F)    Any claim or boundary dispute which may exist or arise by
       reason of the failure of the GRANT OF NON-EXCLUSIVE EASEMENT
       AND WATER FACILITIES LICENSE, dated March 30, 2012, filed as
       Land Court Document No. T-8124405, referred to in Schedule C
       to locate with certainty the boundaries of the easements
       described in said instrument.

(G) The terms and provisions contained in the following:

```
INSTRUMENT :  MEMORANDUM OF NON-EXCLUSIVE TEE TIME ALLOCATION
              AGREEMENT AND OPTION TO LEASE
```

```
DATED       :  effective March 30, 2012
FILED       :  Land Court Document No. T-8124406
PARTIES     :  HAWAII MVCC LLC, a Hawaii limited liability
               company, and HAWAIIAN GOLF PROPERTIES LLC, a Hawaii
               limited liability company, "Golf Course Owner", and
               KO OLINA MAKAHA EAST LLC, a Hawaii limited
               liability company, and KO OLINA MAKAHA EAST II LLC,
               a Hawaii limited liability company, "Ko Olina"
RE          :  The "Golf Use Agreement" shall expire on the first
               to occur of: (1) 30 years from the date of the
               reopening of the Makaha West Golf Course to the
               public and (2) December 31, 2060.  The "Option to
               Lease" must be exercised prior to the earlier to
               occur of: (1) 10 years from the date of the
```

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

reopening of the Makaha West Golf Course to the
public and (2) December 31, 2025

9.   -AS TO ITEM VII (LOT 698-A):-

(A) The terms and provisions contained in the following:

INSTRUMENT : DEED

DATED      : November 21, 1947
FILED      : Land Court Document No. 97068

(B)  Designation of the following easements as shown on Map 18,
     as set forth by Land Court Order No. 10510, filed July 31,
     1951:

     (i)    EASEMENT "37" (10 feet wide) for ditch purposes.

     (ii)   EASEMENT "39" (10 feet wide) for ditch purposes.

     (iii)  EASEMENT "40" (10 feet wide) for water pipeline
            purposes.

(C)  The free flowage of water through the natural stream beds
     now covered by Ditch Easements "37" and "39", as set forth
     by Land Court Order Nos. 10157, filed March 7, 1951 and
     10510, filed July 31, 1951.

(D)  Designation of Lot 698-A as a roadway giving lots abutting
     thereon a means of right of way to and from the public
     highway, as set forth in Land Court Order No. 10510, filed
     July 31, 1951.

(E)  Right of way for road, utility and irrigation purposes in
     favor of various lots as granted in sundry Deeds, as
     contained in Transfer Certificate of Title No. 243,410.

(F)  GRANT

TO         : HAWAIIAN ELECTRIC COMPANY, INC. and GTE HAWAIIAN
             TELEPHONE COMPANY INCORPORATED, now known as
             HAWAIIAN TELCOM, INC.

DATED      : April 8, 1965
FILED      : Land Court Document No. 360456

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE B CONTINUED


GRANTING     :  an easement for utility purposes

(G)  GRANT

TO           :  HAWAIIAN ELECTRIC COMPANY, INC. and GTE HAWAIIAN
                TELEPHONE COMPANY INCORPORATED, now known as
                HAWAIIAN TELCOM, INC.

DATED        :  March 7, 1966
FILED        :  Land Court Document No. 396826
GRANTING     :  an easement for underground water pipeline
                purposes

(H)  GRANT

TO           :  CITY AND COUNTY OF HONOLULU

DATED        :  March 18, 1981
FILED        :  Land Court Document No. 1072489
GRANTING     :  an easement for sewer system purposes

(I)  GRANT

TO           :  CITY AND COUNTY OF HONOLULU

DATED        :  -----, 1989 (acknowledged March 6, 1989 and May
                23, 1989)
FILED        :  Land Court Document No. 1735842
GRANTING     :  an easement over said Easement "304"

 -NOTE:-  Said Easement "304" was cancelled as set forth in Land
          Court Order No. T-10522223, filed October 23, 2018.

(J)  Rights of others who may have easement or access rights in
     the land described in Schedule C.

(K) GRANT

TO           :  KO OLINA MAKAHA EAST LLC, a Hawaii limited
                liability company, and KO OLINA MAKAHA EAST II LLC,
                a Hawaii limited liability company

DATED        :  March 30, 2012
FILED        :  Land Court Document No. T-8124404
GRANTING     :  non-exclusive easements in favor of Lot 1430-C for
                (a) water, sewer, drainage, flowage and utility
                purposes and (b) access to and from the public road

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

(L)  The terms and provisions contained in unrecorded WATER
     AGREEMENT dated March 30, 2012, as mentioned in GRANT OF
     NON-EXCLUSIVE EASEMENT AND WATER FACILITIES LICENSE, dated
     March 30, 2012, filed as Land Court Document No. T-8124405.

(M)  Any claim or boundary dispute which may exist or arise by
     reason of the failure of the GRANT OF NON-EXCLUSIVE EASEMENT
     AND WATER FACILITIES LICENSE, dated March 30, 2012, filed as
     Land Court Document No. T-8124405, referred to in Schedule C
     to locate with certainty the boundaries of the easements
     described in said instrument.

(N)  The terms and provisions contained in the following:

INSTRUMENT :  MEMORANDUM OF NON-EXCLUSIVE TEE TIME ALLOCATION
              AGREEMENT AND OPTION TO LEASE

DATED      :  effective March 30, 2012
FILED      :  Land Court Document No. T-8124406
PARTIES    :  HAWAII MVCC LLC, a Hawaii limited liability
              company, and HAWAIIAN GOLF PROPERTIES LLC, a Hawaii
              limited liability company, "Golf Course Owner", and
              KO OLINA MAKAHA EAST LLC, a Hawaii limited
              liability company, and KO OLINA MAKAHA EAST II LLC,
              a Hawaii limited liability company, "Ko Olina"
RE         :  The "Golf Use Agreement" shall expire on the first
              to occur of: (1) 30 years from the date of the
              reopening of the Makaha West Golf Course to the
              public and (2) December 31, 2060.  The "Option to
              Lease" must be exercised prior to the earlier to
              occur of: (1) 10 years from the date of the
              reopening of the Makaha West Golf Course to the
              public and (2) December 31, 2025

(O) DESIGNATION OF EASEMENT "400"

PURPOSE    :  sanitary sewer
SHOWN      :  on map 313, as set forth by Land Court Order No. T-
              10522223, filed October 23, 2018

 (P) GRANT

TO         :  CITY AND COUNTY OF HONOLULU, a municipal
              corporation of the State of Hawaii
DATED      :  December 6, 2019
FILED      :  Land Court Document No. T-11685345
GRANTING   :  an easement over said Easement "400"

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

10. MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND
    FIXTURE FILING

    MORTGAGOR   :  HAWAII MVCC LLC, a Hawaii limited liability company

    MORTGAGEE   :  TIANJIN DINGHUI HONGJUN EQUITY INVESTMENT
                    PARTNERSHIP (Limited Partnership), a limited
                    partnership organized under the laws of the
                    People's Republic of China

    DATED       :  December 11, 2019
    FILED       :  Land Court Document No. T-11048182
    AMOUNT     :  Four Hundred Million Chinese Yuan


11. NOTICE OF PENDENCY OF ACTION

    PLAINTIFF   :  TIANJIN DINGHUI HONGJUN EQUITY INVESTMENT
                    PARTNERSHIP, a foreign limited partnership

    DEFENDANT   :  HAWAII MVCC LLC, et al.

    DATED       :  January 25, 2021
    FILED       :  Circuit Court of the First Circuit, State of
                    Hawaii, Case No. 21-0000082, on January 25, 2021
    FILED       :  Land Court Document No. T-11355336 on February 2,
                    2021
    RE         :  foreclosure of that certain Mortgage filed as Land
                    Court Document No. T-11048182


12. Pending Bankruptcy No. 21-00095 filed in the United States
    Bankruptcy Court for the District of Hawaii, in the matter of the
    bankruptcy of HAWAII MVCC LLC, Debtor(s).  Voluntary Petition
    under Chapter 11 filed February 1, 2021.


13. Discrepancies, conflicts in boundary lines, shortage in area,
    encroachments or any other matters which a correct survey or
    archaeological study would disclose.

© Title Guaranty of Hawaii, LLC.
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

14.   Any unrecorded leases and matters arising from or affecting the
      same.

## END OF SCHEDULE B

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

# SCHEDULE C

-ITEM I:-

All of that certain parcel of land situate at Makaha, Waianae, District of Waianae, City and County of Honolulu, State of Hawaii, described as follows:

LOT 1429-C, area 145.395 acres, more or less, as shown on Map 185, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1052 (amended) of Waianae Company.

-Note:-    A Consolidation of Lot 1429-C and 1430-C, as shown on Map 185 of Land Court Application 1052, and a Resubdivision of said Consolidation into LOT 1432 (containing an area of 148.774 Acres) and LOT 1433 (containing an area of 63.519 acres), as shown on survey map prepared by prepared by Michael G. Berueda, Land Surveyor, with Alcon & Associates Inc., dated November 6, 2013, approved by the Department of Planning and Permitting, City and County of Honolulu, 2013/SUB-155, on November 8, 2013.

The lands in Schedule C will remain as described until such time that said Lots 1432 and 1433, are recognized and designated as Land Court lots by an Order filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii.

Together with a right of way across Lot 632, as shown on Map 15; Lot 649, as shown on Map 17; Lot 698, as shown on Map 18 (now Lots 698-A and 698-B, Map 184) and Lot 1430, as shown on Map 171 (now Lots 1430-A, 1430-B and 1430-C, Map 185), of said Application.

Together also with a right of way across Easement "62" across Lots 1248 and 1241, as shown on Maps 168 and 131 and across Lots 975 and 1005, as shown on Maps 58 and 75 of said Application, as set forth by Land Court Order No. 29882, filed April 18, 1969.

Together with an easement across Easement "158" affecting Lot 1025-B, Easement "159" affecting Lot 1025-C, as shown on Map 156, Easement "160" affecting Lot 1430-A, as shown on Map 185, and Lot 1429-B as granted by Land Court Order No. 68011, filed November 29, 1983.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE C CONTINUED

-ITEM II:-

All of that certain parcel of land situate at Makaha, Waianae,
District of Waianae, City and County of Honolulu, State of Hawaii,
described as follows:

LOT 1029, area 44.513 acres, more or less, as shown on Map 107, filed
in the Office of the Assistant Registrar of the Land Court of the
State of Hawaii with Land Court Application No. 1052 (amended);

Together with a right of way over Easement "71" as shown on Map 107,
Lot 632, as shown on Map 15; Lot 649, as shown on Map 17; Lots 1004,
1005, 1006 and 1008, as shown on Map 75; of said Land Court
Application No. 1052 (amended), as set forth by Land Court Order No.
39581, filed April 15, 1971.

Together also with a right of way over Lot 975 and Easement "62" over
and across Lots 999 and 1000, as shown on Maps 58, 68 and 69, as set
forth by Land Court Order No. 29882, filed April 18, 1969;

-ITEM III:-

All of that certain parcel of land situate at Makaha, Waianae,
District of Waianae, City and County of Honolulu, State of Hawaii,
described as follows:

LOT 1030, area 40.257 acres, more or less, as shown on Map 107, filed
in the said Office of the Assistant Registrar of the Land Court with
Land Court Application No. 1052 (amended).

Together with a right of way over Lot 632, as shown on Map 15; Lot
649, as shown on Map 17; Lots 1004, 1005, 1006 and 1008, as shown on
Map 75; of said Land Court Application No. 1052 (amended).

Together also with a right of way over Lot 975 and Easement "62" over
and across Lots 999 and 1000, as shown on Maps 58, 68 and 69, as set
forth by Land Court Order No. 29882, filed April 18, 1969.

Together also with a right of way over Easement "65" (85 feet wide)
for access purposes, as shown on Map 75, as set forth by Land Court
Order No. 36325, filed November 15, 1972.

-ITEM IV-:

All of that certain parcel of land situate at Makaha, District of
Waianae, City and County of Honolulu, State of Hawaii, described as
follows:

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE C CONTINUED

LOT 714, area 1.000 acre, more or less, as shown on Map 18, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1052 (amended) of Waianae Company.

Together with an easement appurtenant to Lot 714 over and across Lot 698, as shown on said Map 18 (now Lots 698-A and 698-B, Map 184), for road, utility and irrigation purposes.

-ITEM V-:

All of that certain parcel of land situate at Makaha, District of Waianae, City and County of Honolulu, State of Hawaii, described as follows:

LOT 715, area 1.443 acres, more or less, as shown on Map 18, filed in the said Office of the Assistant Registrar of the Land Court with said Land Court Application No. 1052 (amended).

Together with an easement appurtenant to Lot 715 over and across Lot 698 (now Lots 698-A and 698-B, Map 184), as shown on said Map 18, for road, utility and irrigation purposes.

-ITEM VI-:

All of that certain parcel of land situate at Makaha, District of Waianae, City and County of Honolulu, State of Hawaii, described as follows:

LOT 1624, area 2.925 acres, more or less, as shown on Map 264, filed in the said Office of the Assistant Registrar of the Land Court with said Land Court Application No. 1052 (amended).

Together with access across Lots 698-A and 698-B appurtenant to Lot 1624, as set forth by Land Court Order No. 114971, filed January 3, 1994.

-ITEM VII-:

All of that certain parcel of land situate at Makaha, District of Waianae, City and County of Honolulu, State of Hawaii, described as follows:

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE C CONTINUED

LOT 698-A, area 0.446 acres, more or less, as shown on Map 184, filed in the said Office of the Assistant Registrar of the Land Court with said Land Court Application No. 1052 (amended).

Together with a right of way for road, utility and irrigation purposes across Lot 698-B, as set forth in Land Court Order No. 67897, filed November 16, 1983.

Being land(s) described in Transfer Certificate of Title No. 1,040,426 issued to HAWAII MVCC LLC, a Hawaii limited liability company.

BEING THE PREMISES ACQUIRED BY QUITCLAIM DEED

GRANTOR      :  KO OLINA MAKAHA EAST LLC, a Hawaii limited liability company, and KO OLINA MAKAHA EAST II LLC, a Hawaii limited liability company

GRANTEE      :  HAWAII MVCC LLC, a Hawaii limited liability company

DATED        :  March 15, 2012
FILED        :  Land Court Document No. T-8124402

Together with a non-exclusive easement appurtenant to said Lot 1429-C, over and across Lot 1430-C, area 66.898 acres, more or less, as shown on Map 185, filed in the said Office of the Assistant Registrar of the Land Court with said Land Court Application No. 1052 (amended), for (a) water, sewer, drainage, flowage, and utility purposes and (b) access, use, maintenance and operation of the wells and reservoirs and the facilities associated therewith, as granted by GRANT OF NON-EXCLUSIVE EASEMENT AND WATER FACILITIES LICENSE, dated March 30, 2012, filed as Land Court Document No. T-8124405; and subject to the terms and conditions contained therein.

**END OF SCHEDULE C**

© **Title Guaranty of Hawaii, LLC**
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

# GENERAL NOTES

1. There is hereby omitted from any covenants, conditions and reservations contained herein any covenant or restriction based on race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law. Lawful restrictions under state or federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

2. Pending Adversary Proceeding filed in the United States Bankruptcy Court for the District of Hawaii, in the matter of the bankruptcy of PACIFIC LINKS U.S. HOLDINGS, INC., a Delaware corporation, Debtor(s). Petition under Chapter 11, on March 4, 2021, Case No. 21-90009.

# BUYER(S) LIEN INFORMATION

1. The Company finds no liens docketed against KH GANGWONG DEVELOPMENT, INC., the proposed purchaser(s).

2. There is no evidence of KH GANGWONG DEVELOPMENT, INC. having been formed or registered with the applicable state and/or country agency.

   We will require evidence of formation or registration with the applicable state and/or country agency prior to the issuance of a title insurance policy.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

# GUIDELINES FOR THE ISSUANCE OF INSURANCE

A.  Taxes shown in Schedule B are as of the date such information is available from the taxing authority. Evidence of payment of all taxes and assessments subsequent to such date must be provided prior to recordation.

B.  Evidence of authority regarding the execution of all documents pertaining to the transaction is required prior to recordation.  This includes corporate resolutions, copies of partnership agreements, powers of attorney and trust instruments.

C.  If an entity (corporation, partnership, limited liability company, etc.) is not registered in Hawaii, evidence of its formation and existence under the laws where such entity is formed must be presented prior to recordation.

D.  If the transaction involves a construction loan, the following is required:

   (1)  a letter confirming that there is no construction prior to recordation; or

   (2)  if there is such construction, appropriate indemnity agreements, financial statements and other relevant information from the owner, developer, general contractor and major sub-contractors must be submitted to the Company for approval at least one week prior to the anticipated date of recordation.

   Forms are available upon request from the Company.

E.  Chapter 669, Hawaii Revised Statutes, sets forth acceptable tolerances for discrepancies in structures or improvements relative to private property boundaries for various classes of real property.  If your survey map shows a position discrepancy that falls within the tolerances of Chapter 669, call your title officer as affirmative coverage may be available to insured lenders.

F.  The right is reserved to make additional exceptions and/or requirements upon examination of all documents submitted in connection with this transaction.

G.  If a policy of title insurance is issued, it will exclude from coverage all matters set forth in Schedule B of this report and in the printed Exclusions from Coverage contained in an ALTA policy or in the Hawaii Standard Owner's Policy, as applicable.  Different forms may have different exclusions and should be reviewed.  Copies of the policy forms are available upon request from the Company or on our website at www.tghawaii.com.

H.  Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

# EXHIBIT C

# PRELIMINARY REPORT
(No Liability Hereunder)


This report (and any revisions thereto) is issued solely for the convenience of the titleholder, the titleholder's agent, counsel, purchaser or mortgagee, or the person ordering it for the purpose of facilitating the issuance of a policy of title insurance by Title Guaranty of Hawaii, LLC and no liability will arise under this report.

--------------------------------------------

## SCHEDULE A


Title Guaranty of Hawaii, LLC (the "Company") hereby reports that, subject to those matters set forth in Schedule "B" hereof, the title to the estate or interest to the land described in Schedule "C" hereof is vested in:


HAWAII MGCW LLC,
a Hawaii limited liability company,
as Fee Owner


This report is dated as of May 6, 2022 at 8:00 a.m.


**Inquiries concerning escrow should be directed to:**
Escrow Officer - Jeremy Trueblood; Office: (808)521-0208
Email: jtrueblood@tghawaii.com

**Inquiries concerning this report should be directed to:**
Title Officer - Susan Iloreta; Office: (808)533-5836
Email: siloreta@tghawaii.com
Please reference Order No. 7311254448C, Escrow No.

© Title Guaranty of Hawaii, LLC.
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

**SCHEDULE B**
**EXCEPTIONS**

1. Real Property Taxes, if any, that may be due and owing for the following:

   Item I (Lot 1024) is covered by Tax Key (1) 8-4-002-053.
   Item II (Lot 1447) is covered by Tax Key (1) 8-4-002-055.
   Item III (Lot 1429-A) is covered by Tax Key (1) 8-4-002-067.
   Item IV (Lot 1613) is covered by Tax Key (1) 8-4-002-074.

2. Mineral and water rights of any nature.

3. -AS TO ITEM I (LOT 1024):-

   (A)  GRANT AND COVENANT

   TO            :  CITY AND COUNTY OF HONOLULU

   DATED         :  February 6, 1950
   FILED         :  Land Court Document No. 116618
   GRANTING      :  all rights in basal water only

   (B)  BILL OF SALE dated February 6, 1950, filed as Land Court
        Document No. 116621, in favor of the CITY AND COUNTY OF
        HONOLULU, for 8" water line, etc., laid out and existing
        along Easement "26".

   AGREEMENT dated August 2, 1976, filed as Land Court Document No.
   808567, in favor of the CITY AND COUNTY OF HONOLULU; re: said
   Bill of Sale filed as Land Court Document No. 116621 now affects
   Easement "136" instead of Easement "26".

   (C)  GRANT

   TO            :  HAWAIIAN ELECTRIC COMPANY, INC. and GTE HAWAIIAN
                    TELEPHONE COMPANY INCORPORATED, now known as
                    HAWAIIAN TELCOM, INC.

   DATED         :  February 19, 1951
   FILED         :  Land Court Document No. 126432

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE B CONTINUED


GRANTING    :  an easement for utility purposes


(D)  Free flowage of water through the natural stream beds, as
     set forth by Land Court Orders Nos. 10157, filed March 7,
     1951, and 10510, filed July 31, 1951.


(E)  DESIGNATION OF EASEMENT "136" (30 feet wide)

SHOWN       :  on Map 126, as set forth by Land Court Order No.
               43885, filed February 20, 1976


(F)  DESIGNATION OF EASEMENT "138"

SHOWN       :  on Map 126, as set forth by Land Court Order No.
               43885, filed February 20, 1976


(G)  DESIGNATION OF EASEMENT "156"

SHOWN       :  on Map 156, as set forth by Land Court Order No.
               52561, filed March 1, 1979


(H)  The terms and provisions contained in the following:

INSTRUMENT :  DECLARATION

DATED      :  March 6, 1979
FILED      :  Land Court Document No. 931192


(I)  The terms and provisions contained in the following:

INSTRUMENT :  WARRANTY DEED

DATED      :  February 19, 2004
FILED      :  Land Court Document No. 3072041


(J)  The terms and provisions contained in the following:

INSTRUMENT :  Unrecorded Non-Exclusive Tee Time Allocation
              Agreement

DATED      :  as of March 30, 2012

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261
Page 5

SCHEDULE B CONTINUED


PARTIES     :  HAWAII MVCC LLC, a Hawaii limited liability
               company, and HAWAIIAN GOLF PROPERTIES LLC, a Hawaii
               limited liability company, ("Golf Course Owner"),
               and KO OLINA MAKAHA EAST LLC, a Hawaii limited
               liability company, and KO OLINA MAKAHA EAST II LLC,
               a Hawaii limited liability company, ("Ko Olina")
TERM        :  effective from March 30, 2012 and shall expire on
               the first to occur of (1) thirty (30) years from
               the date of the reopening of the Makaha West Golf
               Course to the public and (2) December 31, 2060

A MEMORANDUM OF NON-EXCLUSIVE TEE TIME ALLOCATION AGREEMENT AND
OPTION TO LEASE is dated March 30, 2012, filed as Land Court
Document No. T-8124406.


(K)  The terms and provisions contained in the following:

INSTRUMENT :  Unrecorded Option to Lease

DATED       :  as of March 30, 2012
PARTIES     :  HAWAII MVCC LLC, a Hawaii limited liability
               company, and HAWAIIAN GOLF PROPERTIES LLC, a Hawaii
               limited liability company, ("Golf Course Owner"),
               and KO OLINA MAKAHA EAST LLC, a Hawaii limited
               liability company, and KO OLINA MAKAHA EAST II LLC,
               a Hawaii limited liability company, ("Ko Olina")
TERM        :  option must be exercised prior to the earliest to
               occur of (1) ten (10) years from the date of the
               reopening of the Makaha West Golf Course to the
               public and (2) December 31, 2025

A MEMORANDUM OF NON-EXCLUSIVE TEE TIME ALLOCATION AGREEMENT AND
OPTION TO LEASE is dated March 30, 2012, filed as Land Court
Document No. T-8124406.


(L)  ADVERSE CLAIM - HRS 501-186 AFFIDAVIT dated May 18, 2013,
     filed as Land Court Document No. T-8542372.


(M)  ADVERSE CLAIM - HRS 501-186 AFFIDAVIT dated May 20, 2013 and
     May 23, 2013, filed as Land Court Document No. T-8544440.


(N)  ADVERSE CLAIM - HRS 501-186 AFFIDAVIT dated June 5, 2013 and
     June 21, 2013, filed as Land Court Document No. T-8719397.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

(O)  The terms and provisions contained in the following:

INSTRUMENT : ENCROACHMENT AGREEMENT

DATED      : February 6, 2014
FILED:     : Land Court Document No. T-8803318
PARTIES    : HGP LLC, a Hawaii limited liability company, and
             MDRE LLC, a Hawaii limited liability company
RE         : concrete and asphalt cart paths, retaining CRM
             walls and hedges

4.  -AS TO ITEM II (LOT 1447):-

(A)  GRANT AND COVENANT

TO         : CITY AND COUNTY OF HONOLULU

DATED      : February 6, 1950
FILED      : Land Court Document No. 116618
GRANTING   : all rights in basal water only

(B)  Free flowage of water through the natural stream beds, as
     set forth by Land Court Orders Nos. 10157, filed March 7,
     1951, and 10510, filed July 31, 1951.

(C)  DESIGNATION OF EASEMENT "99" (10 feet wide)

SHOWN      : on Map 119, as set forth by Land Court Order No.
             42446, filed July 23, 1975

(D)  The terms and provisions contained in the following:

INSTRUMENT : DECLARATION

DATED      : March 6, 1979
FILED      : Land Court Document No. 931192

(E)  DESIGNATION OF EASEMENT "201" (10 feet wide)

© Title Guaranty of Hawaii, LLC.
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE B CONTINUED


SHOWN          :  on Map 186, as set forth by Land Court Order No.
                  68012, filed November 29, 1983


(F)  DESIGNATION OF EASEMENT "202" (10 feet wide)

SHOWN          :  on Map 186, as set forth by Land Court Order No.
                  68012, filed November 29, 1983


(G)  DESIGNATION OF EASEMENT "203"

SHOWN          :  on Map 186, as set forth by Land Court Order No.
                  68012, filed November 29, 1983


(H)  GRANT

TO             :  CITY AND COUNTY OF HONOLULU

DATED          :  July 27, 1988
FILED          :  Land Court Document No. 1647861
GRANTING       :  an easement for underground sewer pipe line or pipe
                  lines over said Easements "201" and "202"


(I)  The terms and provisions contained in the following:

INSTRUMENT :  WARRANTY DEED

DATED          :  February 19, 2004
FILED          :  Land Court Document No. 3072041


(J)  The terms and provisions contained in the following:

INSTRUMENT :  Unrecorded Non-Exclusive Tee Time Allocation
              Agreement

DATED          :  as of March 30, 2012
PARTIES        :  HAWAII MVCC LLC, a Hawaii limited liability
                  company, and HAWAIIAN GOLF PROPERTIES LLC, a Hawaii
                  limited liability company, ("Golf Course Owner"),
                  and KO OLINA MAKAHA EAST LLC, a Hawaii limited
                  liability company, and KO OLINA MAKAHA EAST II LLC,
                  a Hawaii limited liability company, ("Ko Olina")
TERM           :  effective from March 30, 2012 and shall expire on
                  the first to occur of (1) thirty (30) years from

© Title Guaranty of Hawaii, LLC.
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

the date of the reopening of the Makaha West Golf
Course to the public and (2) December 31, 2060

A MEMORANDUM OF NON-EXCLUSIVE TEE TIME ALLOCATION AGREEMENT AND
OPTION TO LEASE is dated March 30, 2012, filed as Land Court
Document No. T-8124406.


(K)  The terms and provisions contained in the following:

INSTRUMENT : Unrecorded Option to Lease

DATED     : as of March 30, 2012
PARTIES   : HAWAII MVCC LLC, a Hawaii limited liability
            company, and HAWAIIAN GOLF PROPERTIES LLC, a Hawaii
            limited liability company, ("Golf Course Owner"),
            and KO OLINA MAKAHA EAST LLC, a Hawaii limited
            liability company, and KO OLINA MAKAHA EAST II LLC,
            a Hawaii limited liability company, ("Ko Olina")
TERM      : option must be exercised prior to the earliest to
            occur of (1) ten (10) years from the date of the
            reopening of the Makaha West Golf Course to the
            public and (2) December 31, 2025

A MEMORANDUM OF NON-EXCLUSIVE TEE TIME ALLOCATION AGREEMENT AND
OPTION TO LEASE is dated March 30, 2012, filed as Land Court
Document No. T-8124406.


(L)  ADVERSE CLAIM - HRS 501-186 AFFIDAVIT dated May 18, 2013,
     filed as Land Court Document No. T-8542372.


(M)  ADVERSE CLAIM - HRS 501-186 AFFIDAVIT dated May 20, 2013 and
     May 23, 2013, filed as Land Court Document No. T-8544440.


(N)  ADVERSE CLAIM - HRS 501-186 AFFIDAVIT dated June 5, 2013 and
     June 21, 2013, filed as Land Court Document No. T-8719397.


(O)  The terms and provisions contained in the following:

INSTRUMENT : UNILATERAL AGREEMENT AND DECLARATION FOR
             CONDITIONAL ZONING

DATED     : May 23, 2014
FILED     : Land Court Document No. T-8908308

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261
Page 75

PARTIES     :  HAWAII MGCW LLC, a Hawaii limited liability company
               ("Declarant")


(P)   DESIGNATION OF EASEMENT "D-1"

PURPOSE     :  drainage and flowage
SHOWN       :  on map prepared by Dan L. M. Akita, Land Surveyor
               with R. M. Towill Corporation, dated November 9,
               2018 and approved by the Department of Planning and
               Permitting on April 26, 2019, 2019/SUB-49.

 -NOTE:-   Said above Easement has not been recognized and
           designated in Application No. 1052.


(Q)   DESIGNATION OF EASEMENT "D-2"

PURPOSE     :  flowage
SHOWN       :  on map prepared by Dan L. M. Akita, Land Surveyor
               with R. M. Towill Corporation, dated November 9,
               2018 and approved by the Department of Planning and
               Permitting on April 26, 2019, 2019/SUB-49.

 -NOTE:-   Said above Easement has not been recognized and
           designated in Application No. 1052.



5.   -AS TO ITEM III (LOT 1429-A):-

(A)  The terms and provisions contained in the following:

INSTRUMENT :  DECLARATION

DATED     :  March 6, 1979
FILED     :  Land Court Document No. 931192


(B)  The terms and provisions contained in the following:

INSTRUMENT :  WARRANTY DEED

DATED     :  February 19, 2004
FILED     :  Land Court Document No. 3072041

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

(C)  The terms and provisions contained in the following:

INSTRUMENT :  Unrecorded Non-Exclusive Tee Time Allocation
              Agreement

DATED     :  as of March 30, 2012
PARTIES   :  HAWAII MVCC LLC, a Hawaii limited liability
             company, and HAWAIIAN GOLF PROPERTIES LLC, a Hawaii
             limited liability company, ("Golf Course Owner"),
             and KO OLINA MAKAHA EAST LLC, a Hawaii limited
             liability company, and KO OLINA MAKAHA EAST II LLC,
             a Hawaii limited liability company, ("Ko Olina")
TERM      :  effective from March 30, 2012 and shall expire on
             the first to occur of (1) thirty (30) years from
             the date of the reopening of the Makaha West Golf
             Course to the public and (2) December 31, 2060

A MEMORANDUM OF NON-EXCLUSIVE TEE TIME ALLOCATION AGREEMENT AND
OPTION TO LEASE is dated March 30, 2012, filed as Land Court
Document No. T-8124406.


(D)  The terms and provisions contained in the following:

INSTRUMENT :  Unrecorded Option to Lease

DATED     :  as of March 30, 2012
PARTIES   :  HAWAII MVCC LLC, a Hawaii limited liability
             company, and HAWAIIAN GOLF PROPERTIES LLC, a Hawaii
             limited liability company, ("Golf Course Owner"),
             and KO OLINA MAKAHA EAST LLC, a Hawaii limited
             liability company, and KO OLINA MAKAHA EAST II LLC,
             a Hawaii limited liability company, ("Ko Olina")
TERM      :  option must be exercised prior to the earliest to
             occur of (1) ten (10) years from the date of the
             reopening of the Makaha West Golf Course to the
             public and (2) December 31, 2025

A MEMORANDUM OF NON-EXCLUSIVE TEE TIME ALLOCATION AGREEMENT AND
OPTION TO LEASE is dated March 30, 2012, filed as Land Court
Document No. T-8124406.


6.   -AS TO ITEM IV (LOT 1613):-

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

(A)  The terms and provisions conditions and reservations,
     contained in the following:

INSTRUMENT :  DECLARATION

DATED     :  March 6, 1979
FILED     :  Land Court Document No. 931192


(B)  The terms and provisions contained in the following:

INSTRUMENT :  WARRANTY DEED

DATED     :  February 19, 2004
FILED     :  Land Court Document No. 3072041


(C)  The terms and provisions contained in the following:

INSTRUMENT :  ENCROACHMENT AGREEMENT

DATED     :  June 8, 2011
FILED     :  Land Court Document No. 4080465
PARTIES   :  HAWAIIAN GOLF PROPERTIES LLC, a Hawaii limited
             liability company, and MAKAHA HOTEL AND RESORT
             INC., a Hawaii corporation, "First Party", and
             MAKAHA HOTEL AND RESORT INC., a Hawaii corporation,
             "Second Party"
RE        :  concrete walkways and asphalt cart paths


CANCELLATION OF ENCROACHMENT AGREEMENT dated February 3, 2014,
filed as Land Court Document No. T-8800261. (Not noted on
Transfer Certificate(s) of Title referred to herein)


(D)  The terms and provisions contained in the following:

INSTRUMENT :  ENCROACHMENT AGREEMENT

DATED     :  February 6, 2014
FILED     :  Land Court Document No. T-8803321
PARTIES   :  HAWAII MGCW LLC, a Hawaii limited liability
             company, and MDRE LLC, a Hawaii limited liability
             company
RE        :  concrete walkways and asphalt cart paths

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

7.    MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND
      FIXTURE FILING

      MORTGAGOR   :  HAWAII MGCW LLC, a Hawaii limited liability company

      MORTGAGEE   :  TIANJIN DINGHUI HONGJUN EQUITY INVESTMENT,
                     PARTNERSHIP (Limited Partnership), a limited
                     partnership organized under the laws of the
                     People's Republic of China

      DATED       :  December 11, 2019
      FILED       :  Land Court Document No. T-11070209
      AMOUNT      :  Four Hundred Million Chinese Yuan

8.    NOTICE OF PENDENCY OF ACTION

      PLAINTIFF   :  TIANJIN DINGHUI HONGJUN EQUITY INVESTMENT
                     PARTNERSHIP, a foreign limited partnership

      DEFENDANT   :  MGCW LLC, a Hawaii limited liability company, et
                     al.

      DATED       :  January 25, 2021
      FILED       :  Circuit Court of the First Circuit, State of
                     Hawaii, Case No. 21-0000082, on January 25, 2021
      FILED       :  Land Court Document No. T-11355337 on February 2,
                     2021
      RE          :  foreclosure of that certain Mortgage filed as Land
                     Court Document No. T-11070209

9.    Pending Bankruptcy No. 21-0096 filed in the United States
      Bankruptcy Court for the District of Hawaii, in the matter of the
      bankruptcy of HAWAII MGCW LLC, Debtor(s).  Voluntary Petition
      under Chapter 11 filed February 1, 2021.

10.   Discrepancies, conflicts in boundary lines, shortage in area,
      encroachments or any other matters which a correct survey or
      archaeological study would disclose.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE B CONTINUED


11.  Any unrecorded leases and matters arising from or affecting the
     same.


**END OF SCHEDULE B**

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

**SCHEDULE C**

-ITEM I:-

All of that certain parcel of land situate at Makaha, Waianae, District of Waianae, City and County of Honolulu, State of Hawaii, described as follows:

LOT 1024, area 167.090 acres, more or less, as shown on Map 87, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1052 (amended) of Waianae Company.

Together with a right of way across Easement "62" across Lot 999, as shown on Map 68 (now known as Lot 1248, as shown on Map 168), and Lot 1000, as shown on Map 69 (now known as Lot 1241, as shown on Map 131), and across Lot 975, as shown on Map 58, and Lot 1005, as shown on Map 75, of said Application, as set forth by Land Court Order No. 29882.

Together also with a right of way for road, utility and irrigation purposes across Lot 632, as shown on Map 15, Lot 649, as shown on Map 17, Lot 1051, as shown on Map 123 (now known as Lot 1429-C, as shown on Map 185), and Lot 1026, as shown on Map 87 (now known as Lot 1430-A, as shown on Map 185), of said Application.

Together also with a right of way across Easement "158", as shown on Map 156, across Lot 1025-B, Easement "159", as shown on Map 156, across Lot 1025-C, and Easement "160", as shown on Map 156, across Lot 1026 (now known as Lot 1430-A), of said Application.

Together also with a right of way across Easement "157", as shown on Map 156, across Lot 1005, of said Application.

Being land(s) described in Transfer Certificate of Title No. 1,073,854 issued to HAWAII MGCW LLC, a Hawaii limited liability company.


-ITEM II:-

All of that certain parcel of land situate at Makaha, Waianae, District of Waianae, City and County of Honolulu, State of Hawaii, described as follows:

LOT 1447, area 87.440 acres, more or less, as shown on Map 186, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1052 (amended) of Waianae Company.

**© Title Guaranty of Hawaii, LLC**
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

SCHEDULE C CONTINUED


Together with a right of way across Easement "62" across Lot 1248, as shown on Map 168, and Lot 1241, as shown on Map 131, Lot 975, as shown on Map 58, and Lot 1005, as shown on Map 75, of said Application, as set forth by Land Court Order No. 29882.

Together also with a right of way for road, utility and irrigation purposes across Lot 632, as shown on Map 15, Lot 649, as shown on Map 17, Lot 1429-C, as shown on Map 185, and Lot 1428, as shown on Map 171, of said Application.

Together also with a right of way across Easement "158", as shown on Map 156, across Lot 1025-B, Easement "159", as shown on Map 156, across Lot 1025-C, and Easement "160", as shown on Map 156, across Lot 1430-A, of said Application.

Together also with a right of way across Easement "157", as shown on Map 156, across Lot 1005, of said Application.

Being land(s) described in Transfer Certificate of Title No. 1,073,854 issued to HAWAII MGCW LLC, a Hawaii limited liability company.


-ITEM III:-

All of that certain parcel of land situate at Makaha, Waianae, District of Waianae, City and County of Honolulu, State of Hawaii, described as follows:

LOT 1429-A, area 33,170 square feet, more or less, as shown on Map 185, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1052 (amended) of Waianae Company.

Together with a right of way for road, utility and irrigation purposes across Lot 632, as shown on Map 15, Lot 649, as shown on Map 17, and Lots 1430-A and 1430-B, as shown on Map 185, of said Application.

Together also with a right of way across Easement "62" across Lot 1248, as shown on Map 168, and Lot 1241, as shown on Map 131, and across Lot 975, as shown on Map 58, and Lot 1005, as shown on Map 75, of said Application, as set forth by Land Court Order No. 29882.

Together also with a right of way across Lots 1429-B and 1429-C, as shown on Map 185, and Easement "158", as shown on Map 156, across Lot 1025-B, Easement "159", as shown on Map 156, across Lot 1025-C, and Easement "160", as shown on Map 156, across Lot 1430-A, of said Application.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE C CONTINUED

Being land(s) described in Transfer Certificate of Title No. 1,073,854 issued to HAWAII MGCW LLC, a Hawaii limited liability company.


-AS TO ITEMS I, II AND III:-

     BEING THE PREMISES ACQUIRED BY WARRANTY DEED

     GRANTOR    :  HGP LLC, a Hawaii limited liability company

     GRANTEE    :  HAWAII MGCW LLC, a Hawaii limited liability company

     DATED      :  January 16, 2014
     FILED      :  Land Court Document No. T-8803320


-ITEM IV:-

All of that certain parcel of land situate at Makaha, Waianae, District of Waianae, City and County of Honolulu, State of Hawaii, described as follows:

LOT 1613, area 2.691 acres, more or less, as shown on Map 210, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1052 (amended) of Waianae Company.

Together with a right of way across Easement "62" across Lot 1248, as shown on Map 168, and Lot 1241, as shown on Map 131, and across Lot 975, as shown on Map 58, and Lot 1005, as shown on Map 75, of said Application, as set forth by Land Court Order No. 29882.

Together also with a right of way for road, utility and irrigation purposes across Lot 632, as shown on Map 15, Lot 649, as shown on Map 17, Lot 1429-C, as shown on Map 185 and across Lot 1430-A, as shown on Map 185, of said Application.

Together also with a right of way across Easement "158", as shown on Map 156, across Lot 1025-B, Easement "159", as shown on Map 156, across Lot 1025-C, and Easement "160", as shown on Map 156, across Lot 1430-A, of said Application.

Being land(s) described in Transfer Certificate of Title No. 1,073,853 issued to HAWAII MGCW LLC, a Hawaii limited liability company.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE C CONTINUED

Said above described parcel of land having been acquired by HAWAII MGCW LLC, a Hawaii limited liability company, as follows:

1.   By WARRANTY DEED of MAKAHA HOTEL AND RESORT INC., a Hawaii corporation, dated February 5, 2014, filed as Land Court Document No. T-8802100; and

2.   By WARRANTY DEED of HGP LLC, a Hawaii limited liability company, dated January 16, 2014, filed as Land Court Document No. T-8803319.

**END OF SCHEDULE C**

© **Title Guaranty of Hawaii, LLC**
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261
Page 85

# GENERAL NOTES

1. There is hereby omitted from any covenants, conditions and reservations contained herein any covenant or restriction based on race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law. Lawful restrictions under state or federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

2. Pending Adversary Proceeding filed in the United States Bankruptcy Court for the District of Hawaii, in the matter of the bankruptcy of PACIFIC LINKS U.S. HOLDINGS, INC., a Delaware corporation, Debtor(s). Petition under Chapter 11, on March 4, 2021, Case No. 21-90009.

# BUYER(S) LIEN INFORMATION

1. The Company finds no liens docketed against KH GANGWONG DEVELOPMENT, INC., the proposed purchaser(s).

2. There is no evidence of KH GANGWONG DEVELOPMENT, INC. having been formed or registered with the applicable state and/or country agency.

   We will require evidence of formation or registration with the applicable state and/or country agency prior to the issuance of a title insurance policy.

© Title Guaranty of Hawaii, LLC.
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

# GUIDELINES FOR THE ISSUANCE OF INSURANCE

A.  Taxes shown in Schedule B are as of the date such information is available from the taxing authority. Evidence of payment of all taxes and assessments subsequent to such date must be provided prior to recordation.

B.  Evidence of authority regarding the execution of all documents pertaining to the transaction is required prior to recordation.  This includes corporate resolutions, copies of partnership agreements, powers of attorney and trust instruments.

C.  If an entity (corporation, partnership, limited liability company, etc.) is not registered in Hawaii, evidence of its formation and existence under the laws where such entity is formed must be presented prior to recordation.

D.  If the transaction involves a construction loan, the following is required:

   (1)  a letter confirming that there is no construction prior to recordation; or

   (2)  if there is such construction, appropriate indemnity agreements, financial statements and other relevant information from the owner, developer, general contractor and major sub-contractors must be submitted to the Company for approval at least one week prior to the anticipated date of recordation.

   Forms are available upon request from the Company.

E.  Chapter 669, Hawaii Revised Statutes, sets forth acceptable tolerances for discrepancies in structures or improvements relative to private property boundaries for various classes of real property.  If your survey map shows a position discrepancy that falls within the tolerances of Chapter 669, call your title officer as affirmative coverage may be available to insured lenders.

F.  The right is reserved to make additional exceptions and/or requirements upon examination of all documents submitted in connection with this transaction.

G.  If a policy of title insurance is issued, it will exclude from coverage all matters set forth in Schedule B of this report and in the printed Exclusions from Coverage contained in an ALTA policy or in the Hawaii Standard Owner's Policy, as applicable.  Different forms may have different exclusions and should be reviewed.  Copies of the policy forms are available upon request from the Company or on our website at www.tghawaii.com.

H.  Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

**© Title Guaranty of Hawaii, LLC**
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

DATE PRINTED:  05/16/2022

## STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

### TAX MAP KEY

DIVISION ZONE SECTION PLAT PARCEL HPR NO.
  (1)    8     4     002  053   0000

CLASS: PRESERVATION          AREA ASSESSED:     7,278,440 SF

ASSESSED VALUES FOR CURRENT YEAR TAXES:  2021

The records of this division show the assessed values and taxes on the property designated by Tax Key shown above are as follows:

| | | |
|---|---|---|
| BUILDING | $ | 1,000 |
| EXEMPTION | $ | 0 |
| NET VALUE | $ | 1,000 |
| LAND | $ | 4,657,500 |
| EXEMPTION | $ | 0 |
| NET VALUE | $ | 4,657,500 |
| TOTAL NET VALUE | $ | 4,658,500 |

Installment (1 - due 8/20;  2 - due 2/20) Tax Info As Of - 02/20/2022

| Tax Year | Installment | Tax Amount | Penalty Amount | Interest Amount | Other Amount | Total Amount | |
|---|---|---|---|---|---|---|---|
| 2021 | 2 | 13,276.72 | 796.60 | 281.47 | | 14,354.79 | DELINQUENT |
| 2021 | 1 | 13,276.73 | 1,327.67 | 1,168.35 | | 15,772.75 | DELINQUENT |
| 2020 | 2 | 14,969.62 | | | | 14,969.62 | DELINQUENT |
| 2020 | 1 | 14,969.63 | 1,496.96 | 988.00 | | 17,454.59 | DELINQUENT |

Total Amount Due:  80,994.68

Penalty and Interest Computed to: 02/20/2022

**Note: Property may have prior year delinquent taxes not shown in this report.  Refer to the appropriate county real property tax office for current status and payment amounts.**

The real property tax information provided is based on information furnished by the respective counties, is deemed reliable but not guaranteed, and no warranties are given express or implied. Billing and tax collection details may have changed. Please refer to the appropriate county real property tax offices for any further information or updates for the subject property.
DATE PRINTED:  05/16/2022

**© Title Guaranty of Hawaii, LLC**
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

TAX MAP KEY

| DIVISION | ZONE | SECTION | PLAT | PARCEL | HPR NO. |
|----------|------|---------|------|--------|---------|
| (1) | 8 | 4 | 002 | 055 | 0000 |

CLASS: PRESERVATION                    AREA ASSESSED:        3,808,886 SF

ASSESSED VALUES FOR CURRENT YEAR TAXES:  2021

The records of this division show the assessed values and taxes on the
property designated by Tax Key shown above are as follows:

|  |  |  |
|--|--|--|
| BUILDING | $ | 0 |
| EXEMPTION | $ | 0 |
| NET VALUE | $ | 0 |
| LAND | $ | 2,854,300 |
| EXEMPTION | $ | 0 |
| NET VALUE | $ | 2,854,300 |
| TOTAL NET VALUE | $ | 2,854,300 |

Installment (1 - due 8/20;  2 - due 2/20) Tax Info As Of - 02/20/2022

| Tax Year | Installment | Tax Amount | Penalty Amount | Interest Amount | Other Amount | Total Amount | |
|----------|-------------|------------|----------------|-----------------|--------------|--------------|--|
| 2021 | 2 | 8,134.75 | 488.09 | 172.46 | | 8,795.30 | DELINQUENT |
| 2021 | 1 | 8,134.76 | 813.48 | 715.86 | | 9,664.10 | DELINQUENT |
| 2020 | 2 | 9,172.72 | | | | 9,172.72 | DELINQUENT |
| 2020 | 1 | 9,172.73 | 917.27 | 605.40 | | 10,695.40 | DELINQUENT |

Total Amount Due:  49,628.31

Penalty and Interest Computed to: 02/20/2022

**Note: Property may have prior year delinquent taxes not shown in this
report.  Refer to the appropriate county real property tax office for
current status and payment amounts.**

The real property tax information provided is based on information furnished by the
respective counties, is deemed reliable but not guaranteed, and no warranties are
given express or implied. Billing and tax collection details may have changed. Please
refer to the appropriate county real property tax offices for any further information
or updates for the subject property.
DATE PRINTED:  05/16/2022

STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

© Title Guaranty of Hawaii, LLC.
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

TAX MAP KEY

```
         DIVISION ZONE SECTION PLAT PARCEL HPR NO.
            (1)     8      4     002  067   0000
```

CLASS: PRESERVATION              AREA ASSESSED:        33,193 SF


ASSESSED VALUES FOR CURRENT YEAR TAXES:  2021


The records of this division show the assessed values and taxes on the
property designated by Tax Key shown above are as follows:

```
              BUILDING           $        37,400
              EXEMPTION          $             0
              NET VALUE          $        37,400
              LAND               $        32,200
              EXEMPTION          $             0
              NET VALUE          $        32,200
              TOTAL NET VALUE    $        69,600
```

Installment (1 - due 8/20;  2 - due 2/20) Tax Info As Of - 02/20/2022

| Tax Year | Installment | Tax Amount | Penalty Amount | Interest Amount | Other Amount | Total Amount | |
|---|---|---|---|---|---|---|---|
| 2021 | 2 | 198.36 | 11.90 | 4.21 | | 214.47 | DELINQUENT |
| 2021 | 1 | 198.36 | 19.84 | 17.46 | | 235.66 | DELINQUENT |
| 2020 | 2 | 218.59 | | | | 218.59 | DELINQUENT |
| 2020 | 1 | 218.60 | 21.86 | 14.43 | | 254.89 | DELINQUENT |

                       Total Amount Due:    1,191.51

Penalty and Interest Computed to: 02/20/2022

**Note: Property may have prior year delinquent taxes not shown in this
report.  Refer to the appropriate county real property tax office for
current status and payment amounts.**




The real property tax information provided is based on information furnished by the
respective counties, is deemed reliable but not guaranteed, and no warranties are
given express or implied. Billing and tax collection details may have changed. Please
refer to the appropriate county real property tax offices for any further information
or updates for the subject property.
DATE PRINTED:  05/16/2022

         STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

                            TAX MAP KEY

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

```
           DIVISION ZONE SECTION PLAT PARCEL HPR NO.
              (1)    8     4     002   074   0000

CLASS: HOTEL AND RESORT          AREA ASSESSED:          117,220 SF


ASSESSED VALUES FOR CURRENT YEAR TAXES:  2021


The records of this division show the assessed values and taxes on the
property designated by Tax Key shown above are as follows:

                 BUILDING              $            0
                 EXEMPTION             $            0
                 NET VALUE             $            0
                 LAND                  $       609,000
                 EXEMPTION             $            0
                 NET VALUE             $       609,000
                 TOTAL NET VALUE       $       609,000

Installment (1 - due 8/20;  2 - due 2/20) Tax Info As Of - 02/20/2022

Tax  Installment Tax    Penalty  Interest  Other     Total
Year         Amount     Amount    Amount   Amount    Amount

2021 2      4,232.55    253.95     89.73             4,576.23 DELINQUENT
2021 1      4,232.55    423.25    372.46             5,028.26 DELINQUENT
2020 2      4,745.46                                 4,745.46 DELINQUENT
2020 1      4,745.46    474.55    313.20             5,533.21 DELINQUENT

                        Total Amount Due:   25,018.89

Penalty and Interest Computed to: 02/20/2022
```

**Note: Property may have prior year delinquent taxes not shown in this
report.  Refer to the appropriate county real property tax office for
current status and payment amounts.**

The real property tax information provided is based on information furnished by the
respective counties, is deemed reliable but not guaranteed, and no warranties are
given express or implied. Billing and tax collection details may have changed. Please
refer to the appropriate county real property tax offices for any further information
or updates for the subject property.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

# EXHIBIT D

**PRELIMINARY REPORT**
(No Liability Hereunder)

This report (and any revisions thereto) is issued solely for the convenience of the titleholder, the titleholder's agent, counsel, purchaser or mortgagee, or the person ordering it for the purpose of facilitating the issuance of a policy of title insurance by Title Guaranty of Hawaii, LLC and no liability will arise under this report.

--------------------------------------------

**SCHEDULE A**

Title Guaranty of Hawaii, LLC (the "Company") hereby reports that, subject to those matters set forth in Schedule "B" hereof, the title to the estate or interest to the land described in Schedule "C" hereof is vested in:

MDRE LLC,
a Hawaii limited liability company,
as Fee Owner

This report is dated as of May 06, 2022 at 8:00 a.m.

**Inquiries concerning escrow should be directed to:**
Escrow Officer - Jeremy Trueblood; Office: (808)521-0208
Email: jtrueblood@tghawaii.com

**Inquiries concerning this report should be directed to:**
Title Officer - Susan Iloreta; Office: (808)533-5836
Email: siloreta@tghawaii.com
Please reference Order No. 7311254448A, Escrow No. 7322240478

© **Title Guaranty of Hawaii, LLC.**
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

**SCHEDULE B**
**EXCEPTIONS**

1.  Real Property Taxes, if any, that may be due and owing for the following:

    ITEM I (LOT 1428) is(are) covered by Tax Key: (1) 8-4-002-051.

    ITEM II (LOT 1025-A) is(are) covered by Tax Key: (1) 8-4-002-075.

2.  Mineral and water rights of any nature.

3.  -AS TO ITEM I (LOT 1428):-

    (A)   GRANT

          TO          :  THE HAWAIIAN ELECTRIC COMPANY, LIMITED, now
                         known as HAWAIIAN ELECTRIC COMPANY, INC., and
                         MUTUAL TELEPHONE COMPANY, now known as
                         HAWAIIAN TELCOM, INC.

          DATED       :  February 19, 1951
          FILED       :  Land Court Document No. 126432
          GRANTING    :  an easement for utility purposes

    (B)   DESIGNATION OF EASEMENT "98" (5 feet wide)

          SHOWN       :  on Map 119, as set forth by Land Court Order
                         No. 42446, filed July 23, 1975

    (C)   The terms and provisions contained in the following:

          INSTRUMENT :  DECLARATION OF MERGER OF CONDOMINIUM PHASES OF
                        MAKAHA RESORT & GOLF CLUB CONDOMINIUMS

©Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261
Page

SCHEDULE B CONTINUED


             DATED     :  February 16, 2007
             FILED     :  Land Court Document No. 3578038


    (D)   Terms and conditions contained in those certain deeds dated
          (a) February 16, 2007, filed as Document No. 3590058, (b)
          February 16, 2007, filed as Land Court Document No.
          3591274, (c) November 1, 2007, filed as Land Court Document
          No. 3678081, and (d) July 30, 2008, filed as Land Court
          Document No. 3781237.


    (E)   The terms and provisions contained in the following:

          INSTRUMENT :  ENCROACHMENT AGREEMENT (FOR THE BENEFIT OF LOT
                        1024)

             DATED     :  February 6, 2014
             FILED     :  Land Court Document No. T-8803318
             PARTIES   :  HGP LLC, a Hawaii limited liability company,
                          "HGP", and MDRE LLC, a Hawaii limited
                          liability company, "MDRE"


    (F)   The terms and provisions contained in the following:

          INSTRUMENT :  ENCROACHMENT AGREEMENT (FOR THE BENEFIT OF LOT
                        1613)

             DATED     :  February 6, 2014
             FILED     :  Land Court Document No. T-8803321
             PARTIES   :  HAWAII MGCW LLC, a Hawaii limited liability
                          company, "MGCW", and MDRE LLC, a Hawaii
                          limited liability company, "MDRE"


4.   -AS TO ITEM II (LOT 1025-A):-

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

(A)    Reservation of all water rights in favor of Waianae
       Development Company, Limited, as reserved in DEED dated
       February 9, 1968, filed as Land Court Document No. 437151.

(B)    The terms and provisions contained in the following:

       INSTRUMENT : LICENCE AGREEMENT

       DATED      : February 19, 2004, effective as of February
                    19, 2004
       FILED      : Land Court Document No. 3072044
       PARTIES    : MRGC LLC, a Hawaii limited liability company,
                    "Licensor", and MAKAHA HOTEL AND RESORT INC.,
                    a Hawaii corporation, "Licensee"

5.    The terms and provisions contained in the following:

      INSTRUMENT : DECLARATION

      DATED      : March 6, 1979
      FILED      : Land Court Document No. 931192

6.    The terms and provisions contained in the following:

      INSTRUMENT : WARRANTY DEED

      DATED      : February 19, 2004
      FILED      : Land Court Document No. 3072041

7.    MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND
      FIXTURE FILING

      MORTGAGOR  : MDRE LLC, a Hawaii limited liability company

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

```
MORTGAGEE  :  TIANJIN DINGHUI HONGJUN EQUITY INVESTMENT,
              PARTNERSHIP (Limited Partnership), a limited
              partnership organized under the laws of the
              People's Republic of China

DATED      :  December 11, 2019
FILED      :  Land Court Document No. T-11070208
AMOUNT     :  Four Hundred Million Chinese Yuan
```

8.   NOTICE OF PENDENCY OF ACTION

```
PLAINTIFF  :  TIANJIN DINGHUI HONGJUN EQUITY INVESTMENT
              PARTNERSHIP, a foreign limited partnership

DEFENDANT  :  MDRE LLC, a Hawaii limited liability company, et
              al.

DATED      :  January 25, 2021
FILED      :  Circuit Court of the First Circuit, State of
              Hawaii, Case No. 21-0000082, on January 25, 2021
FILED      :  Land Court Document No. T-11357290 on February 4,
              2021
RE         :  foreclosure of that certain Mortgage filed as Land
              Court Document No. T-11070208
```

9.   Pending Bankruptcy No. 21-0097 filed in the United States
     Bankruptcy Court for the District of Hawaii, in the matter of the
     bankruptcy of MDRE LLC, Debtor(s).  Voluntary Petition under
     Chapter 11 filed February 1, 2021.

10.  Any unrecorded leases and matters arising from or affecting the
     same.

11.  Discrepancies, conflicts in boundary lines, shortage in area,
     encroachments or any other matters which a correct survey or
     archaeological study would disclose.

©Title Guaranty of Hawaii, LLC.
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261
Page

**END OF SCHEDULE B**

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

# SCHEDULE C

ITEM I:

All of that certain parcel of land situate at Makaha, Waianae,
District of Waianae, City and County of Honolulu, State of Hawaii,
described as follows:

LOT 1428, area 19.431 acres, more or less, as shown on Map 171, filed
in the Office of the Assistant Registrar of the Land Court of the
State of Hawaii with Land Court Application No. 1052 (amended) of
Waianae Company.

Together with a right of way across Easement "62" across Lot 1248, as
shown on Map 168, and Lot 1241, as shown on Map 131, and across Lot
975, as shown on Map 58, and Lot 1005, as shown on Map 75, of said
Application, as set forth by Land Court Order No. 29882, filed April
18, 1969.

Together also with a right of way for road, utility and irrigation
purposes across Lot 632, as shown on Map 15, Lot 649, as shown on Map
17, Lot 1429, as shown on Map 171 (now known as Lot 1429-C, as shown
on Map 185), and Lot 1430, as shown on Map 171 (now known as Lot 1430-
A, as shown on Map 185), of said Application, as set forth by Land
Court Order No. 58652, filed December 30, 1980.

Together also with a right of way across Easement "158", as shown on
Map 156, across Lot 1025-B, Easement "159", as shown on Map 156,
across Lot 1025-C, and Easement "160", as shown on Map 156, across Lot
1430 (now known as Lot 1430-A), of said Application, as set forth by
Land Court Order No. 58652, filed December 30, 1980.

Being the land(s) described in Transfer Certificate of Title No(s).
1,073,686 (as to an undivided 87.6422 interest), 1,073,688 (as to an
undivided 4.39790 interest), and 1,073,717 (as to an undivided 7.9599
interest), issued to MDRE LLC, a Hawaii limited liability company.

Said above described parcel of land having been acquired by MDRE LLC,
a Hawaii limited liability company, as follows:

1.   By COMMISSIONER'S DEED of GUIDO GIACOMETTI, dated February 5,
     2014, filed as Land Court Document No. T-8802093;

© Title Guaranty of Hawaii, LLC.
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE C CONTINUED

2.  By WARRANTY DEED of MAKAHA HOTEL AND RESORT INC., a Hawaii
    corporation, dated February 5, 2014, filed as Land Court Document
    No. T-8802097; and

3.  By LIMITED WARRANTY DEED of HGP LLC, a Hawaii limited liability
    company, formerly known as HAWAIIAN GOLF PROPERTIES LLC, dated
    February 6, 2014, filed as Land Court Document No. T-8802174.


ITEM II:

All of that certain parcel of land situate at Makaha, Waianae,
District of Waianae, City and County of Honolulu, State of Hawaii,
described as follows:

LOT 1025-A, area 4.291 acres, more or less, as shown on Map 148, filed
in the Office of the Assistant Registrar of the Land Court of the
State of Hawaii with Land Court Application No. 1052 (amended) of
Waianae Company.

Together with a right of way across Easement "62" across Lot 1000, as
shown on Map 69 (now known as Lot 1241, as shown on Map 131), and
across Lot 975, as shown on Map 58, and Lot 1005, as shown on Map 75,
of said Application, as set forth by Land Court Order No. 29882.

Together also with a right of way for road, utility and irrigation
purposes across Lot 632, as shown on Map 15, Lot 649, as shown on Map
17, Lot 1051, as shown on Map 123 (now known as Lot 1429-C, as shown
on Map 185), and Lot 1026, as shown on Map 87 (now known as Lot 1430-
A, as shown on Map 185), of said Application.

Together also with a right of way across Easement "158", as shown on
Map 156, across Lot 1025-B, Easement "159", as shown on Map 156,
across Lot 1025-C, and Easement "160", as shown on Map 156, across Lot
1026 (now known as Lot 1430-A), of said Application.




Being land(s) described in Transfer Certificate of Title No. 1,073,687
issued to MDRE LLC, a Hawaii limited liability company.


        BEING THE PREMISES ACQUIRED BY WARRANTY DEED

        GRANTOR    :  MAKAHA HOTEL AND RESORT, INC., a Hawaii corporation

        GRANTEE    :  MDRE LLC, a Hawaii limited liability company

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

SCHEDULE C CONTINUED

DATED      :  February 5, 2014
FILED      :  Land Court Document No. T-8802097


**END OF SCHEDULE C**

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

# GENERAL NOTES

1. There is hereby omitted from any covenants, conditions and reservations contained herein any covenant or restriction based on race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law. Lawful restrictions under state or federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

2. Pending Adversary Proceeding filed in the United States Bankruptcy Court for the District of Hawaii, in the matter of the bankruptcy of PACIFIC LINKS U.S. HOLDINGS, INC., a Delaware corporation, Debtor(s). Petition under Chapter 11, on March 4, 2021, Case No. 21-90009.

# BUYER(S) LIEN INFORMATION

1. The Company finds no liens docketed against KH GANGWONG DEVELOPMENT, INC., the proposed purchaser(s).

2. There is no evidence of KH GANGWONG DEVELOPMENT, INC. having been formed or registered with the applicable state and/or country agency.

   We will require evidence of formation or registration with the applicable state and/or country agency prior to the issuance of a title insurance policy.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

# GUIDELINES FOR THE ISSUANCE OF INSURANCE

A.  Taxes shown in Schedule B are as of the date such information is available from the taxing authority. Evidence of payment of all taxes and assessments subsequent to such date must be provided prior to recordation.

B.  Evidence of authority regarding the execution of all documents pertaining to the transaction is required prior to recordation.  This includes corporate resolutions, copies of partnership agreements, powers of attorney and trust instruments.

C.  If an entity (corporation, partnership, limited liability company, etc.) is not registered in Hawaii, evidence of its formation and existence under the laws where such entity is formed must be presented prior to recordation.

D.  If the transaction involves a construction loan, the following is required:

(1)  a letter confirming that there is no construction prior to recordation; or

(2)  if there is such construction, appropriate indemnity agreements, financial statements and other relevant information from the owner, developer, general contractor and major sub-contractors must be submitted to the Company for approval at least one week prior to the anticipated date of recordation.

Forms are available upon request from the Company.

E.  Chapter 669, Hawaii Revised Statutes, sets forth acceptable tolerances for discrepancies in structures or improvements relative to private property boundaries for various classes of real property.  If your survey map shows a position discrepancy that falls within the tolerances of Chapter 669, call your title officer as affirmative coverage may be available to insured lenders.

F.  The right is reserved to make additional exceptions and/or requirements upon examination of all documents submitted in connection with this transaction.

G.  If a policy of title insurance is issued, it will exclude from coverage all matters set forth in Schedule B of this report and in the printed Exclusions from Coverage contained in an ALTA policy or in the Hawaii Standard Owner's Policy, as applicable.  Different forms may have different exclusions and should be reviewed.  Copies of the policy forms are available upon request from the Company or on our website at www.tghawaii.com.

H.  Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

DATE PRINTED: 05/18/2022

STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

TAX MAP KEY

DIVISION ZONE SECTION PLAT PARCEL HPR NO.
(1)      8      4      002   051   0000

CLASS: HOTEL AND RESORT                AREA ASSESSED:        846,414 SF


ASSESSED VALUES FOR CURRENT YEAR TAXES:  2021


The records of this division show the assessed values and taxes on the
property designated by Tax Key shown above are as follows:

```
              BUILDING           $              0
              EXEMPTION          $              0
              NET VALUE          $              0
              LAND               $      4,382,500
              EXEMPTION          $              0
              NET VALUE          $      4,382,500
              TOTAL NET VALUE    $      4,382,500
```

Installment (1 - due 8/20;  2 - due 2/20) Tax Info As Of - 02/20/2022

| Tax Year | Installment | Tax Amount | Penalty Amount | Interest Amount | Other Amount | Total Amount | |
|---|---|---|---|---|---|---|---|
| 2021 | 2 | 30,458.37 | 2,436.67 | 986.85 | | 33,881.89 | DELINQUENT |
| 2021 | 1 | 30,458.38 | 3,045.84 | 3,015.38 | | 36,519.60 | DELINQUENT |
| 2020 | 2 | 34,150.21 | | | | 34,150.21 | DELINQUENT |
| 2020 | 1 | 34,150.22 | 3,415.02 | 2,253.91 | | 39,819.15 | DELINQUENT |

Total Amount Due:  181,327.02

Penalty and Interest Computed to: 02/20/2022

**Note: Property may have prior year delinquent taxes not shown in this
report.  Refer to the appropriate county real property tax office for
current status and payment amounts.**

The real property tax information provided is based on information furnished by the
respective counties, is deemed reliable but not guaranteed, and no warranties are
given express or implied. Billing and tax collection details may have changed. Please
refer to the appropriate county real property tax offices for any further information
or updates for the subject property.
DATE PRINTED:  05/18/2022

© Title Guaranty of Hawaii-LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

```
              STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

                                 TAX MAP KEY

                  DIVISION ZONE SECTION PLAT PARCEL HPR NO.
                     (1)     8     4    002    075   0000

      CLASS: HOTEL AND RESORT            AREA ASSESSED:       186,916 SF


      ASSESSED VALUES FOR CURRENT YEAR TAXES:  2021


      The records of this division show the assessed values and taxes on the
      property designated by Tax Key shown above are as follows:

                     BUILDING          $            0
                     EXEMPTION         $            0
                     NET VALUE         $            0
                     LAND              $      709,800
                     EXEMPTION         $            0
                     NET VALUE         $      709,800
                     TOTAL NET VALUE   $      709,800

      Installment (1 - due 8/20;  2 - due 2/20) Tax Info As Of - 02/20/2022

      Tax  Installment Tax    Penalty   Interest   Other     Total
      Year          Amount     Amount     Amount  Amount     Amount

      2021 2      4,933.11     394.65     159.83            5,487.59 DELINQUENT
      2021 1      4,933.11     493.31     488.38            5,914.80 DELINQUENT
      2020 2      5,531.50                                  5,531.50 DELINQUENT
      2020 1      5,531.51     553.15     365.08            6,449.74 DELINQUENT

                                  Total Amount Due:   29,369.59

      Penalty and Interest Computed to: 02/20/2022
```

**Note: Property may have prior year delinquent taxes not shown in this report.  Refer to the appropriate county real property tax office for current status and payment amounts.**

```
      The real property tax information provided is based on information furnished by the
      respective counties, is deemed reliable but not guaranteed, and no warranties are
      given express or implied. Billing and tax collection details may have changed. Please
      refer to the appropriate county real property tax offices for any further information
      or updates for the subject property.
```

© Title Guaranty of Hawaii LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

# EXHIBIT E

**PRELIMINARY REPORT**
(No Liability Hereunder)

This report (and any revisions thereto) is issued solely for the
convenience of the titleholder, the titleholder's agent, counsel,
purchaser or mortgagee, or the person ordering it for the purpose of
facilitating the issuance of a policy of title insurance by Title
Guaranty of Hawaii, LLC and no liability will arise under this report.

---------------------------------------------

**SCHEDULE A**

Title Guaranty of Hawaii, LLC (the "Company") hereby reports that,
subject to those matters set forth in Schedule "B" hereof, the title
to the estate or interest to the land described in Schedule "C" hereof
is vested in:

MDRE 2 LLC,
a Hawaii limited liability company,
as Fee Owner

This report is dated as of May 6, 2022 at 8:00 a.m.

**Inquiries concerning escrow should be directed to:**
Escrow Officer - Jeremy Trueblood; Office: (808)521-0208
Email: jtrueblood@tghawaii.com

**Inquiries concerning this report should be directed to:**
Title Officer - Susan Iloreta; Office: (808)533-5836
Email: siloreta@tghawaii.com
Please reference Order No. 7311254448D, Escrow No.

© Title Guaranty of Hawaii-LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

**SCHEDULE B**
**EXCEPTIONS**

1.  Real Property Taxes, if any, that may be due and owing.

    Tax Key: (1) 8-4-002-007      Area Assessed: 2,914,077 sq. ft.

2.  Mineral and water rights of any nature.

3.  Roadway referenced on the tax map.

4.  Right of way in the nature of an easement of way of necessity in favor of owners of Exclusion 3, for the purposes of egress and ingress from and to said Exclusion 3, as approximately shown and delineated on Map 8.

5.  Thirty-foot easements for road purposes to the public highway, in favor of Lots 411, 412-A, 412-B, 1429-C, 1031 and 1431, shown on Map 8, as set forth by Land Court Order No. 7840, filed November 20, 1947.

6.  GRANT

    TO            :  HAWAIIAN ELECTRIC COMPANY, INC. and GTE HAWAIIAN TELEPHONE COMPANY INCORPORATED, now known as HAWAIIAN TELCOM, INC.

    DATED         :  February 19, 1951
    FILED         :  Land Court Document No. 126432
    GRANTING      :  an easement for utility purposes, as shown on the map attached thereto

© Title Guaranty of Hawaii LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

7.  Reservation of all water rights in favor of Waianae Development
    Company, Limited, as reserved in DEED dated February 9, 1968,
    filed as Land Court Document No. 437151.

8.  The terms and provisions contained in the following:

    INSTRUMENT : DECLARATION

    DATED     : March 6, 1979
    FILED     : Land Court Document No. 931192

9.  DESIGNATION OF EASEMENT(S) "300"

    PURPOSE    : waterline
    REFERENCED : on Map 214, as set forth by Land Court Order No.
                 91595, filed November 2, 1988

10. The terms and provisions contained in unrecorded WATER AGREEMENT
    dated March 30, 2012, as mentioned in GRANT OF NONEXCLUSIVE
    EASEMENT AND WATER FACILITIES LICENSE, dated March 30, 2012,
    recorded as Document No. T-8124404.

11. Any claim or boundary dispute which may exist or arise by reason
    of the failure of the GRANT OF NON-EXCLUSIVE EASEMENT AND WATER
    FACILITIES LICENSE, dated March 30, 2014, recorded as Document
    No. T-8124404, referred to in Schedule C to locate with certainty
    the boundaries of the easements described in said instrument.

12. GRANT

    TO        : HAWAII MVCC LLC, a Hawaii limited liability company

    DATED     : March 30, 2012
    FILED     : Land Court Document No. T-8124405

© Title Guaranty of Hawaii-LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

GRANTING : non-exclusive easements for (a) water, sewer,
drainage, flowage and utility purposes and (b)
access to and from the public road

13. Matters shown on DPP File No. 2013/SUB-155 approved by the
Department of Planning and Permitting, City and County of
Honolulu, on November 8, 2013.

14. MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND
FIXTURE FILING

MORTGAGOR : MDRE 2 LLC, a Hawaii limited liability company

MORTGAGEE : TIANJIN DINGHUI HONGJUN EQUITY INVESTMENT
PARTNERSHIP (LIMITED PARTNERSHIP), a P.R.C. limited
partnership

DATED : as of December 11, 2019
FILED : Land Court Document No. T-11049137
AMOUNT : 400,000,000.00 Chinese Yuan

15. NOTICE OF PENDENCY OF ACTION

PLAINTIFF : TIANJIN DINGHUI HONGJUN EQUITY INVESTMENT
PARTNERSHIP, a foreign limited partnership

DEFENDANT : MDRE LLC, a Hawaii limited liability company, MDRE
2 LLC, a Hawaii limited liability company, MDRE 4
LLC, a Hawaii limited liability company, MDRE 5
LLC, a Hawaii limited liability company, HAWAII
MGCW LLC, a Hawaii limited liability company,
HAWAII MVCC LLC, a Hawaii limited liability
company, MRGC LLC, a Hawaii limited liability
company, KEHALANI COMMERCIAL ASSOCIATES LLC, a
Hawaii limited liability company

DATED : January 25, 2021
FILED : Circuit Court of the First Circuit, State of
Hawaii, Case No. 21-0000082, on January 25, 2021

©Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261
Page

SCHEDULE B CONTINUED

FILED       :  Land Court Document No. T-11355346 on February 2,
               2021
RE          :  foreclosure of that certain Mortgage filed as Land
               Court Document No. T-11049137

16. Discrepancies, conflicts in boundary lines, shortage in area,
    encroachments or any other matters which a correct survey or
    archaeological study would disclose.

17. Pending Bankruptcy No. 21-00098 filed in the United States
    Bankruptcy Court for the District of Hawaii, in the matter of the
    bankruptcy of MDRE 2 LLC, Debtor(s).  Voluntary Petition under
    Chapter 11 filed February 1, 2021.

18. Any recorded and unrecorded leases and matters arising from or
    affecting the same.

    -Note:-  This report does not show any tenant leases or
             encumbrances thereon which may exist.  No search was
             made at this time as to those interests.

19. This transaction may be subject to a FinCEN Geographic Targeting
    Order issued pursuant to the Bank Secrecy Act. Information
    necessary to comply with the order must be provided prior to
    closing.  This transaction will not be insured until this
    information is submitted, reviewed and found to be complete.

**END OF SCHEDULE B**

©  Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261
Page 8

# SCHEDULE C

All of that certain parcel of land situate at Makaha, Waianae, District of Waianae, City and County of Honolulu, State of Hawaii, described as follows:

LOT 1430-C, area 66.898 acres, more or less, as shown on Map 185, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1052 (amended);

-Note:-  A Consolidation of Lot 1429-C and 1430-C, as shown on Map 185 of Land Court Application 1052, and a Resubdivision of said Consolidation into LOT 1432 (containing an area of 148.774 Acres) and LOT 1433 (containing an area of 63.519 acres), as shown on survey map prepared by prepared by Michael G. Berueda, Land Surveyor, with Alcon & Associates Inc., dated November 6, 2013, approved by the Department of Planning and Permitting, City and County of Honolulu, 2013/SUB-155, on November 8, 2013. the lands in Schedule C will remain as described until such time that said Lots 1432 and 1433, are recognized and designated as Land Court lots by an order filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii.

Together with a right of way over Lot 632, as shown on Map 15; Lot 649, as shown on Map 17 and Lot 1429-C, as shown on Map 185 of said Application, for road, utility and irrigation purposes;

Together, also, with a right of way across Easement "62" across Lots 1241 and 1248, as shown on Maps 131 and 168 and across Lots 975 and 1005, as shown on Maps 58 and 75 of said Application, as set forth by Land Court Order No. 29882, filed April 18, 1969;

Together also a right of way across Lots 1430-A and 1430-B, as shown on Map 185.  Easement "160" across Lot 1430-A and Easement "158" across Lot 1025-B and Easement "159" across Lot 1025-C as shown on Map 156.

Together also with a non-exclusive easement over and across Lots 1429-C, area 145.395, more or less, as shown on Map 185, Lot 1029, area 44.513 acres, more or less, as shown on Map 107, Lot 1030, area 40.257 acres, more or less, as shown on Map 107, Lot 714, area 1.000 acre, more or less, as shown on Map 18, Lot 715, area 1.443 acres, more or less, Lot 1624, area 2.925 acres, more or less, and Lot 698-A, area 0.446 acres, more or less, as shown on Map 184, all as filed in the said Office of the Assistant Registrar of the Land Court with said Land Court Application No. 1052 (amended), for (a) water, sewer,

U.S. Bankruptcy Court - Hawaii #22-00482 Dkt # 13-1 Filed 06/03/22  Page 112 of 185

SCHEDULE C CONTINUED

drainage, flowage, and utility purposes and (b) access, use,
maintenance and operation of the wells and reservoirs and the
facilities associated therewith, as granted by GRANT OF NON-EXCLUSIVE
EASEMENT AND WATER FACILITIES LICENSE, dated March 30, 2012, filed as
Land Court Document No. T-8124404; and subject to the terms and
conditions contained therein.

Being land(s) described in Transfer Certificate of Title No. 1,098,168
issued to MDRE TWO LLC, a Hawaii limited liability company.

BEING THE PREMISES ACQUIRED BY QUITCLAIM DEED

GRANTOR       :  KO OLINA MAKAHA EAST LLC, a Hawaii limited
                 liability company, and KO OLINA MAKAHA EAST II LLC,
                 a Hawaii limited liability company

GRANTEE       :  MDRE 2 LLC, a Hawaii limited liability company

DATED         :  as of May 26, 2015
FILED         :  Land Court Document No. T-9279011

**END OF SCHEDULE C**

**© Title Guaranty of Hawaii, LLC**
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

# GENERAL NOTES

1. There is hereby omitted from any covenants, conditions and reservations contained herein any covenant or restriction based on race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law. Lawful restrictions under state or federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

2. Pending Adversary Proceeding filed in the United States Bankruptcy Court for the District of Hawaii, in the matter of the bankruptcy of PACIFIC LINKS U.S. HOLDINGS, INC., a Delaware corporation, Debtor(s). Petition under Chapter 11, on March 4, 2021, Case No. 21-90009.

# BUYER(S) LIEN INFORMATION

1. The Company finds no liens docketed against KH GANGWONG DEVELOPMENT, INC. , the proposed purchaser(s).

2. There is no evidence of KH GANGWONG DEVELOPMENT, INC. having been formed or registered with the applicable state and/or country agency.

   We will require evidence of formation or registration with the applicable state and/or country agency prior to the issuance of a title insurance policy.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261
Page 4

# GUIDELINES FOR THE ISSUANCE OF INSURANCE

A.  Taxes shown in Schedule B are as of the date such information is available from the taxing authority. Evidence of payment of all taxes and assessments subsequent to such date must be provided prior to recordation.

B.  Evidence of authority regarding the execution of all documents pertaining to the transaction is required prior to recordation.  This includes corporate resolutions, copies of partnership agreements, powers of attorney and trust instruments.

C.  If an entity (corporation, partnership, limited liability company, etc.) is not registered in Hawaii, evidence of its formation and existence under the laws where such entity is formed must be presented prior to recordation.

D.  If the transaction involves a construction loan, the following is required:

    (1)  a letter confirming that there is no construction prior to recordation; or

    (2)  if there is such construction, appropriate indemnity agreements, financial statements and other relevant information from the owner, developer, general contractor and major sub-contractors must be submitted to the Company for approval at least one week prior to the anticipated date of recordation.

    Forms are available upon request from the Company.

E.  Chapter 669, Hawaii Revised Statutes, sets forth acceptable tolerances for discrepancies in structures or improvements relative to private property boundaries for various classes of real property.  If your survey map shows a position discrepancy that falls within the tolerances of Chapter 669, call your title officer as affirmative coverage may be available to insured lenders.

F.  The right is reserved to make additional exceptions and/or requirements upon examination of all documents submitted in connection with this transaction.

G.  If a policy of title insurance is issued, it will exclude from coverage all matters set forth in Schedule B of this report and in the printed Exclusions from Coverage contained in an ALTA policy or in the Hawaii Standard Owner's Policy, as applicable.  Different forms may have different exclusions and should be reviewed.  Copies of the policy forms are available upon request from the Company or on our website at www.tghawaii.com.

H.  Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

**© Title Guaranty of Hawaii, LLC**
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

DATE PRINTED:  05/17/2022

STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

TAX MAP KEY

DIVISION ZONE SECTION PLAT PARCEL HPR NO.
(1)      8      4      002    007    0000

CLASS: RESIDENTIAL A            AREA ASSESSED:      2,914,077 SF

ASSESSED VALUES FOR CURRENT YEAR TAXES:  2021

The records of this division show the assessed values and taxes on the
property designated by Tax Key shown above are as follows:

| | | |
|---|---|---|
| BUILDING | $ | 0 |
| EXEMPTION | $ | 0 |
| NET VALUE | $ | 0 |
| LAND | $ | 4,648,200 |
| EXEMPTION | $ | 0 |
| NET VALUE | $ | 4,648,200 |
| TOTAL NET VALUE | $ | 4,648,200 |

Installment (1 - due 8/20;  2 - due 2/20) Tax Info As Of - 02/20/2022

| Tax Year | Installment | Tax Amount | Penalty Amount | Interest Amount | Other Amount | Total Amount | |
|---|---|---|---|---|---|---|---|
| 2021 | 2 | 21,403.05 | 1,284.18 | 453.74 | | 23,140.97 | DELINQUENT |
| 2021 | 1 | 21,403.05 | 2,140.30 | 1,883.47 | | 25,426.82 | DELINQUENT |
| 2020 | 2 | 20,760.97 | | | | 20,760.97 | DELINQUENT |
| 2020 | 1 | 20,760.98 | 2,076.10 | 1,370.22 | | 24,207.30 | DELINQUENT |

Total Amount Due:  119,113.58

Penalty and Interest Computed to: 02/20/2022

**Note: Property may have prior year delinquent taxes not shown in this
report.  Refer to the appropriate county real property tax office for
current status and payment amounts.**

The real property tax information provided is based on information furnished by the
respective counties, is deemed reliable but not guaranteed, and no warranties are
given express or implied. Billing and tax collection details may have changed. Please
refer to the appropriate county real property tax offices for any further information
or updates for the subject property.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

# EXHIBIT F

# PRELIMINARY REPORT
(No Liability Hereunder)

This report (and any revisions thereto) is issued solely for the
convenience of the titleholder, the titleholder's agent, counsel,
purchaser or mortgagee, or the person ordering it for the purpose of
facilitating the issuance of a policy of title insurance by Title
Guaranty of Hawaii, LLC and no liability will arise under this report.

-------------------------------------------

# SCHEDULE A

Title Guaranty of Hawaii, LLC (the "Company") hereby reports that,
subject to those matters set forth in Schedule "B" hereof, the title
to the estate or interest to the land described in Schedule "C" hereof
is vested in:

MDRE 4 LLC,
a Hawaii limited liability company,
as Tenant in Severalty,
as to ITEM I,
MDRE 3 LLC,
a Hawaii limited liability company,
as to ITEM II,
as Fee Owner

This report is dated as of May 06, 2022 at 8:00 a.m.

**Inquiries concerning escrow should be directed to:**
Escrow Officer - Jeremy Trueblood; Office: (808)521-0208
Email: jtrueblood@tghawaii.com

**Inquiries concerning this report should be directed to:**
Title Officer - Susan Iloreta; Office: (808)533-5836
Email: siloreta@tghawaii.com
Please reference Order No. 7311254448B, Escrow No.

**© Title Guaranty of Hawaii-LLC**
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

**SCHEDULE B**
**EXCEPTIONS**


1.    Real Property Taxes, if any, that may be due and owing.

      ITEM I, PARCEL FIRST is(are) covered by Tax Key: (1) 8-4-002-077.

      ITEM I, PARCEL SECOND is(are) covered by Tax Key: (1) 8-4-002-054.

      ITEM II is(are) covered by Tax Key: (1) 8-4-002-052.


2.    Mineral and water rights of any nature.


3.    The terms and provisions contained in the following:

      INSTRUMENT : DECLARATION

      DATED      : March 6, 1979
      FILED      : Land Court Document No. 931192


4.    -AS TO ITEM I, PARCEL FIRST:-



      (A)    Reservation of all water rights in favor of Waianae
             Development Company, Limited, as reserved in DEED dated
             February 9, 1968, filed as Land Court Document No. 437151.


      (B)    DESIGNATION OF EASEMENT(S) "158"

             REFERENCED : on Map 156, as set forth by Land Court Order
                          No. 52561, filed March 1, 1979


      (C)    Said Easement "158" is subject to Rights of Way in favor of
             other lots entitled thereto, as set forth in Warranty Deed

SCHEDULE B CONTINUED

dated December 7, 1987, filed as Land Court Document No.
1515571.


(D)   GRANT

      TO          :  WAIANAE DEVELOPMENT COMPANY, LIMITED

      DATED       :  November 18, 1986
      FILED       :  Land Court Document No. 1416834
      GRANTING    :  a right-of-way across Easement "158"


      Said Grant was amended by Land Court Order No. 82160, file
      January 12, 1987; re: said Easement "158" is granted in
      favor of Lots 411, 412-A and 412-B, as shown on maps 8 and
      13 of Land Court Application No. 1052 (amended).




(E)   DESIGNATION OF EASEMENT(S) "302" (10 feet wide)

      PURPOSE    :  waterline
      REFERENCED :  on Map 214, as set forth by Land Court Order
                    No. 91595, filed November 2, 1988




5.   -AS TO ITEM I, PARCEL SECOND:-


(A)   GRANT

      TO          :  HAWAIIAN ELECTRIC COMPANY, INC. and GTE
                     HAWAIIAN TELEPHONE COMPANY INCORPORATED, now
                     known as HAWAIIAN TELCOM, INC.

      DATED       :  February 19, 1951
      FILED       :  Land Court Document No. 126432
      GRANTING    :  an easement for utility purposes

© Title Guaranty of Hawaii LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

(B)     GRANT

        TO          :  HAWAIIAN ELECTRIC COMPANY, INC. and GTE
                       HAWAIIAN TELEPHONE COMPANY INCORPORATED, now
                       known as HAWAIIAN TELCOM, INC.

        DATED       :  April 2, 1965
        FILED       :  Land Court Document No. 360456
        GRANTING    :  a right and easement for utility purposes

(C)     Reservation of all water rights in favor of Waianae
        Development Company, Limited, as reserved in DEED dated
        February 9, 1968, filed as Land Court Document No. 437151.

(D)     DESIGNATION OF EASEMENT(S) "40" (10 feet wide)

        PURPOSE     :  water pipeline
        REFERENCED  :  on Map 18, as set forth by Land Court Order
                       No. 10510, filed July 31, 1951

(E)     DESIGNATION OF EASEMENT(S) "42" (25 feet wide)

        PURPOSE     :  telephone and electrical power line
        REFERENCED  :  on Map 18, as set forth by Land Court Order
                       No. 10510, filed July 31, 1951

(F)     DESIGNATION OF EASEMENT(S) "98" (5 feet wide)

        REFERENCED  :  on Map 119, as set forth by Land Court Order
                       No. 42446, filed July 23, 1975

(G)     DESIGNATION OF EASEMENT(S) "159"

        REFERENCED  :  on Map 156, as set forth by Land Court Order
                       No. 52561, filed March 1, 1979

(H)     Said Easement "159" is subject to Rights of Way in favor of
        other lots entitled thereto, as set forth in Warranty Deed

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

dated December 7, 1987, filed as Land Court Document No. 1515571.

(I)  GRANT

    TO         : WAIANAE DEVELOPMENT COMPANY, LIMITED

    DATED     : November 18, 1986
    FILED     : Land Court Document No. 1416834
    GRANTING  : a right-of-way across Easement "159"

    Said Grant was amended by Land Court Order No. 82160, filed January 12, 1987; re" said Easement "159" is granted in favor of Lots 411, 412-A and 412-B, as shown on Maps 8 and 13 of Land Court Application 1052 (amended).

(J)  DESIGNATION OF EASEMENT(S) "301" (10 feet wide)

    PURPOSE   : waterline
    REFERENCED : on Map 214, as set forth by Land Court Order
               No. 91595, filed November 2, 1988

(K)  DESIGNATION OF EASEMENT(S) "303" (10 feet wide)

    PURPOSE   : waterline
    REFERENCED : on Map 214, as set forth by Land Court Order
               No. 91595, filed November 2, 1988

(L)  DESIGNATION OF EASEMENT(S) "308" (10 feet wide)

    REFERENCED : on Map 215, as set forth by Land Court Order
               No. 91596, filed November 2, 1988

(M)  GRANT

    TO         : CITY AND COUNTY OF HONOLULU

    DATED     : March 5, 1990
    FILED     : Land Court Document No. 1735838

© Title Guaranty of Hawaii-LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

SCHEDULE B CONTINUED


GRANTING    :  an easement for sewerline purposes over said
               Easement "308"


(N)    The terms and provisions contained in the following:

INSTRUMENT :  UNILATERAL AGREEMENT AND DECLARATION FOR
              CONDITIONAL ZONING

DATED      :  March 11, 1991
FILED      :  Land Court Document No. 1805762
PARTIES    :  ANA HOTELS HAWAII, INC.


(O)    The terms and provisions contained in the following:

INSTRUMENT :  LICENSE AGREEMENT

DATED      :  February 19, 2004
FILED      :  Land Court Document No. 3072044
PARTIES    :  MRGC LLC, a Hawaii limited liability company,
              "Licensor" and MAKAHA HOTEL AND RESORT INC., a
              Hawaii corporation, "Licensee"


6.   PURCHASE MONEY FIRST MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF
     LEASES AND RENTS, FIXTURE FILING AND FINANCING STATEMENT


     MORTGAGOR   :  MDRE 3 LLC and MDRE 4 LLC, both Hawaii limited
                    liability companies

     MORTGAGEE   :  MRGC LLC and KEHALANI COMMERCIAL ASSOCIATES LLC,
                    both Hawaii limited liability companies

     DATED       :  as of July 16, 2015
     FILED       :  Land Court Document No. T-9327045
     AMOUNT      :  $8,780,000.00

SCHEDULE B CONTINUED

7.  FINANCING STATEMENT

    DEBTOR      :  MDRE 3 LLC and MDRE 4 LLC

    SECURED
    PARTY       :  MRGC LLC

    RECORDED    :  Document No. A-56750183
    RECORDED ON:  July 16, 2015

    CONTINUATION recorded as Document No. A-73530515 on February 18, 2020.

8.  FINANCING STATEMENT

    DEBTOR      :  MDRE 3 LLC and MDRE 4 LLC

    SECURED
    PARTY       :  KEHALANI COMMERCIAL ASSOCIATES LLC

    RECORDED    :  Document No. A-56750184
    RECORDED ON:  July 16, 2015

    CONTINUATION recorded as Document No. A-73530516 on February 18, 2020.

9.  -AS TO ITEM I, PARCEL FIRST:-

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING

MORTGAGOR   :  MDRE 4 LLC, a Hawaii limited liability company

MORTGAGEE   :  TIANJIN DINGHUI HONGJUN EQUITY INVESTMENT
               PARTNERSHIP (Limited Partnership)

DATED       :  December 11, 2019
FILED       :  Land Court Document No. T-11046279
AMOUNT      :  Four Hundred Million Chinese Yuan


10. NOTICE OF PENDENCY OF ACTION (AMENDED)

PLAINTIFF   :  MRGC LLC and KEHALANI COMMERCIAL ASSOCIATES LLC

DEFENDANT   :  MDRE 3 LLC, MDRE 4 LLC, et al.

DATED       :  May 21, 2020
FILED       :  Circuit Court of the First Circuit, State of
               Hawaii, Case No. 1CCV-20-0000447, on May 21, 2020
FILED       :  Land Court Document No. T-11103109 on May 26, 2020
RE          :  foreclosure of Purchase Money First Mortgage,
               Security Agreement, Assignment of Leases and Rents,
               Fixture Filing and Financing Statement recorded as
               Document No. T-9327045


11. Pending Bankruptcy No. 21-00100 filed in the United States
Bankruptcy Court for the District of Hawaii, in the matter of the
bankruptcy of MDRE 4 LLC, Debtor(s).  Voluntary Petition under
Chapter 11 filed February 1, 2021.


12. Pending Bankruptcy No. 21-00099 filed in the United States
Bankruptcy Court for the District of Hawaii, in the matter of the
bankruptcy of MDRE 3 LLC, Debtor(s).  Voluntary Petition under
Chapter 11 filed February 1, 2022.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

13. Discrepancies, conflicts in boundary lines, shortage in area, encroachments or any other matters which a correct survey or archaeological study would disclose.


14. Any unrecorded leases and matters arising from or affecting the same.


**END OF SCHEDULE B**

**© Title Guaranty of Hawaii, LLC**
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

# SCHEDULE C

-ITEM I:-

-PARCEL FIRST:-

All of that certain parcel of land situate at Makaha, Waianae, District of Waianae, City and County of Honolulu, State of Hawaii, described as follows:

LOT 1025-B, area 2.934 acres, more or less, as shown on Map 148, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1052 (amended) of Waianae Company;

Together with a right of way across Easement "62" across Lot 1248, as shown on Map 168, and Lot 1241, as shown on Map 131, and across Lot 975, as shown on Map 58, and Lot 1005, as shown on Map 75, of said Application, as set forth by Land Court Order No. 29882.

Together also with a right of way for road, utility and irrigation purposes across Lot 632, as shown on Map 15, Lot 649, as shown on Map 17, Lot 1429-C, as shown on Map 185, across Lot 1430-A, as shown on Map 185, of said Application No. 1052 (amended).

Being land(s) described in Transfer Certificate of Title No. 1,100,715 issued to MDRE 4 LLC, a Hawaii limited liability company.


      BEING THE PREMISES ACQUIRED BY WARRANTY DEED

      GRANTOR    :  MRGC LLC, a Hawaii limited liability company

      GRANTEE    :  MDRE 4 LLC, a Hawaii limited liability company

      DATED      :  July 16, 2015
      FILED      :  Land Court Document No. T-9327043

©Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

SCHEDULE C CONTINUED


-PARCEL SECOND:-

All of that certain parcel of land situate at Makaha, Waianae,
District of Waianae, City and County of Honolulu, State of Hawaii,
described as follows:

LOT 1025-C, area 32.775 acres, more or less, as shown on Map 148,
filed in the Office of the Assistant Registrar of the Land Court of
the State of Hawaii with Land Court Application No. 1052 (amended) of
Waianae Company;

Together with a right of way across Easement "62" across Lot 1248, as
shown on Map 168, and Lot 1241, as shown on Map 131, and across Lot
975, as shown on Map 58, and Lot 1005, as shown on Map 75, of said
Application, as set forth by Land Court Order No. 29882.

Together also with a right of way for road, utility and irrigation
purposes across Lot 632, as shown on Map 15, Lot 649, as shown on Map
17, Lot 1429-C, as shown on Map 185, across Lot 1430-A, as shown on
Map 185, of said Application No. 1052 (amended).

Being land(s) described in Transfer Certificate of Title No. 1,100,716
issued to MDRE 4 LLC, a Hawaii limited liability company.



     BEING THE PREMISES ACQUIRED BY WARRANTY DEED

     GRANTOR    :  MRGC LLC, a Hawaii limited liability company

     GRANTEE    :  MDRE 4 LLC, a Hawaii limited liability company

     DATED      :  July 16, 2015
     FILED      :  Land Court Document No. T-9327044

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

-ITEM II-

All of that certain parcel of land situate at Makaha, Waianae,
District of  Waianae, City and County of Honolulu, State of Hawaii,
described as follows:

LOT 1612, area 8.475 acres, more or less, as shown on Map 210, filed
in the Office of the Assistant Registrar of the Land Court of the
State of Hawaii with Land Court Application No. 1052 (amended) of
Waianae Company.

Together with a right of way across Easement "62", across Lot 1248, as
shown on Map 168, Lot 1241, as shown on Map 131, and across Lot 975,
as shown on Map 58, and Lot 1005, as shown on Map 75, of said
Application, as set forth by Land Court Order No. 29882.

Together also with a right of way for road, utility and irrigation
purposes across Lot 632, as shown on Map 15, Lot 649, as shown on Map
17, Lot 1429-C, as shown on Map 185, and Lot 1430-A, as shown on Map
185, of said Application.

Together also with a right of way across Easement "158", as shown on
Map 156, across Lot 1025-B, Easement "159", as shown on Map 156,
across Lot 1025-C, and Easement "160", as shown on Map 156, across Lot
1430-A, of said Application.

Being land(s) described in the following Transfer Certificates of
Title No. 1,100,714 issued to MDRE 3 LLC, a Hawaii limited liability
company.


Said above described parcel of land having been acquired by MDRE 3,
LLC, a Hawaii limited liability company, by the following Deeds:

1.   WARRANTY DEED of MRGC LLC, a Hawaii limited liability company, as
     to an undivided one half (1/2) interest, dated July 16, 2015,
     filed as Land Court Document No. T-9327041; and

2.   WARRANTY DEED of KEHALANI COMMERCIAL ASSOCIATES LLC, a Hawaii
     limited liability company, as to an undivided one half (1/2)
     interest, dated July 16, 2015, filed as Land Court Document No.
     T-9327042.


**END OF SCHEDULE C**

**© Title Guaranty of Hawaii, LLC**
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

# GENERAL NOTES

1. There is hereby omitted from any covenants, conditions and reservations contained herein any covenant or restriction based on race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law. Lawful restrictions under state or federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

2. Pending Adversary Proceeding filed in the United States Bankruptcy Court for the District of Hawaii, in the matter of the bankruptcy of PACIFIC LINKS U.S. HOLDINGS, INC., a Delaware corporation, Debtor(s). Petition under Chapter 11, on March 4, 2021, Case No. 21-90009.

# BUYER(S) LIEN INFORMATION

1. The Company finds no liens docketed against KH GANGWONG DEVELOPMENT, INC., the proposed purchaser(s).

2. There is no evidence of KH GANGWONG DEVELOPMENT, INC. having been formed or registered with the applicable state and/or country agency.

   We will require evidence of formation or registration with the applicable state and/or country agency prior to the issuance of a title insurance policy.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

# GUIDELINES FOR THE ISSUANCE OF INSURANCE

A. Taxes shown in Schedule B are as of the date such information is available from the taxing authority. Evidence of payment of all taxes and assessments subsequent to such date must be provided prior to recordation.

B. Evidence of authority regarding the execution of all documents pertaining to the transaction is required prior to recordation. This includes corporate resolutions, copies of partnership agreements, powers of attorney and trust instruments.

C. If an entity (corporation, partnership, limited liability company, etc.) is not registered in Hawaii, evidence of its formation and existence under the laws where such entity is formed must be presented prior to recordation.

D. If the transaction involves a construction loan, the following is required:

(1) a letter confirming that there is no construction prior to recordation; or

(2) if there is such construction, appropriate indemnity agreements, financial statements and other relevant information from the owner, developer, general contractor and major sub-contractors must be submitted to the Company for approval at least one week prior to the anticipated date of recordation.

Forms are available upon request from the Company.

E. Chapter 669, Hawaii Revised Statutes, sets forth acceptable tolerances for discrepancies in structures or improvements relative to private property boundaries for various classes of real property. If your survey map shows a position discrepancy that falls within the tolerances of Chapter 669, call your title officer as affirmative coverage may be available to insured lenders.

F. The right is reserved to make additional exceptions and/or requirements upon examination of all documents submitted in connection with this transaction.

G. If a policy of title insurance is issued, it will exclude from coverage all matters set forth in Schedule B of this report and in the printed Exclusions from Coverage contained in an ALTA policy or in the Hawaii Standard Owner's Policy, as applicable. Different forms may have different exclusions and should be reviewed. Copies of the policy forms are available upon request from the Company or on our website at www.tghawaii.com.

H. Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

DATE PRINTED:  05/20/2022

STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

TAX MAP KEY

DIVISION ZONE SECTION PLAT PARCEL HPR NO.
  (1)       8      4      002   077   0000

CLASS: HOTEL AND RESORT          AREA ASSESSED:        127,805 SF


ASSESSED VALUES FOR CURRENT YEAR TAXES:  2021


The records of this division show the assessed values and taxes on the
property designated by Tax Key shown above are as follows:

```
              BUILDING          $            0
              EXEMPTION         $            0
              NET VALUE         $            0
              LAND              $      973,700
              EXEMPTION         $            0
              NET VALUE         $      973,700
              TOTAL NET VALUE   $      973,700
```

Installment (1 - due 8/20;  2 - due 2/20) Tax Info As Of - 02/20/2022

| Tax Year | Installment | Tax Amount | Penalty Amount | Interest Amount | Other Amount | Total Amount | |
|---|---|---|---|---|---|---|---|
| 2021 | 2 | 6,767.21 | 541.37 | 219.26 | | 7,527.84 | DELINQUENT |
| 2021 | 1 | 6,767.22 | 676.72 | 669.95 | | 8,113.89 | DELINQUENT |
| 2020 | 2 | 7,587.31 | | | | 7,587.31 | DELINQUENT |
| 2020 | 1 | 7,587.32 | 758.74 | 500.76 | | 8,846.82 | DELINQUENT |

Total Amount Due:   40,286.34

Penalty and Interest Computed to: 02/20/2022

**Note: Property may have prior year delinquent taxes not shown in this
report.  Refer to the appropriate county real property tax office for
current status and payment amounts.**

The real property tax information provided is based on information furnished by the
respective counties, is deemed reliable but not guaranteed, and no warranties are
given express or implied. Billing and tax collection details may have changed. Please
refer to the appropriate county real property tax offices for any further information
or updates for the subject property.
DATE PRINTED:  05/20/2022

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

TAX MAP KEY

DIVISION ZONE SECTION PLAT PARCEL HPR NO.
(1)      8      4      002    054    0000

CLASS: HOTEL AND RESORT          AREA ASSESSED:          1,427,679 SF

ASSESSED VALUES FOR CURRENT YEAR TAXES:  2021

The records of this division show the assessed values and taxes on the
property designated by Tax Key shown above are as follows:

| | | |
|---|---|---|
| BUILDING | $ | 0 |
| EXEMPTION | $ | 0 |
| NET VALUE | $ | 0 |
| LAND | $ | 4,285,200 |
| EXEMPTION | $ | 0 |
| NET VALUE | $ | 4,285,200 |
| TOTAL NET VALUE | $ | 4,285,200 |

Installment (1 - due 8/20;  2 - due 2/20) Tax Info As Of - 02/20/2022

| Tax Year | Installment | Tax Amount | Penalty Amount | Interest Amount | Other Amount | Total Amount | |
|---|---|---|---|---|---|---|---|
| 2019 | 1 | 29,331.09 | | | | 29,331.09 | PAID |
| 0 | | | | | | | PAID |
| 0 | | | | | | | PAID |
| 0 | | | | | | | PAID |

The real property tax information provided is based on information furnished by the
respective counties, is deemed reliable but not guaranteed, and no warranties are
given express or implied. Billing and tax collection details may have changed. Please
refer to the appropriate county real property tax offices for any further information
or updates for the subject property.
DATE PRINTED:  05/20/2022

STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

TAX MAP KEY

DIVISION ZONE SECTION PLAT PARCEL HPR NO.
(1)      8      4      002    052    0000

CLASS: HOTEL AND RESORT          AREA ASSESSED:          369,171 SF

© Title Guaranty of Hawaii LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

```
ASSESSED VALUES FOR CURRENT YEAR TAXES:  2021


The records of this division show the assessed values and taxes on the
property designated by Tax Key shown above are as follows:

                BUILDING              $              0
                EXEMPTION             $              0
                NET VALUE             $              0
                LAND                  $      2,345,100
                EXEMPTION             $              0
                NET VALUE             $      2,345,100
                TOTAL NET VALUE       $      2,345,100

Installment (1 - due 8/20;  2 - due 2/20) Tax Info As Of - 02/20/2022

Tax  Installment Tax    Penalty   Interest  Other       Total
Year            Amount   Amount     Amount  Amount      Amount

2021 2      16,298.44 1,303.88     528.07             18,130.39 DELINQUENT
2021 1      16,298.45 1,629.85   1,613.55             19,541.85 DELINQUENT
2020 2      18,273.63                                 18,273.63 DELINQUENT
2020 1      18,273.64 1,827.36   1,206.06             21,307.06 DELINQUENT

                              Total Amount Due:   97,027.78

Penalty and Interest Computed to: 02/20/2022
```

**Note: Property may have prior year delinquent taxes not shown in this report.  Refer to the appropriate county real property tax office for current status and payment amounts.**

```
The real property tax information provided is based on information furnished by the
respective counties, is deemed reliable but not guaranteed, and no warranties are
given express or implied. Billing and tax collection details may have changed. Please
refer to the appropriate county real property tax offices for any further information
or updates for the subject property.
```

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

# EXHIBIT G

# PRELIMINARY REPORT
## (No Liability Hereunder)

This report (and any revisions thereto) is issued solely for the convenience of the titleholder, the titleholder's agent, counsel, purchaser or mortgagee, or the person ordering it for the purpose of facilitating the issuance of a policy of title insurance by Title Guaranty of Hawaii, LLC and no liability will arise under this report.

--------------------------------------------

## SCHEDULE A

Title Guaranty of Hawaii, LLC (the "Company") hereby reports that, subject to those matters set forth in Schedule "B" hereof, the title to the estate or interest to the land described in Schedule "C" hereof is vested in:

MDRE 5 LLC,
a Hawaii limited liability company,
as Fee Owner

This report is dated as of May 06, 2022 at 8:00 a.m.

**Inquiries concerning escrow should be directed to:**
Escrow Officer - Jeremy Trueblood; Office: (808)521-0208
Email: jtrueblood@tghawaii.com

**Inquiries concerning this report should be directed to:**
Title Officer - Susan Iloreta; Office: (808)533-5836
Email: siloreta@tghawaii.com
Please reference Order No. 7311254448F, Escrow No.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

## SCHEDULE B
## EXCEPTIONS

1.  Real Property Taxes, if any, that may be due and owing.

    ITEM I (LOT 1430-A) is(are) covered by Tax Key: (1) 8-4-002-070.

    ITEM II (LOT 649) is(are) covered by Tax Key: (1) 8-4-020-015.

    ITEM III (LOT 632) is(are) covered by Tax Key: (1) 8-4-019-032.

    ITEM IV (LOT 695) is(are) covered by Tax Key: (1) 8-4-021-068.

    ITEM V (LOT 1005) is(are) covered by Tax Key: (1) 8-4-002-012.

    -Note:-  Attention is invited to the fact that the premises
            covered herein may be subject to possible rollback or
            retroactive property taxes due to possible loss of
            exemption status.

2.  Mineral and water rights of any nature.

3.  -AS TO ITEM I (LOT 1430-A):-

    (A)   Right of way in the nature of an easement in favor of the
          owners of Exclusion 3, for the egress and ingress across
          the road running across said Exclusion 3 as approximately
          shown on Map 8.

    (B)   30 foot easements for road purposes to the public highway
          in favor of Lots 411, 412-A, 412-B, 1430-A, 1430-C 1031 and
          1431, as set forth by Land Court Order No. 7840, filed
          November 21, 1947.

    (C)   GRANT

©Title Guaranty of Hawaii LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

SCHEDULE B CONTINUED


```
           TO         :  THE HAWAIIAN ELECTRIC COMPANY, LIMITED, and
                         MUTUAL TELEPHONE COMPANY, now known as
                         HAWAIIAN TELCOM, INC.

           DATED      :  February 19, 1951
           FILED      :  Land Court Document No. 126432
           GRANTING   :  a right and easement for utility purposes


(D)    GRANT

           TO         :  THE HAWAIIAN ELECTRIC COMPANY, LIMITED and
                         HAWAIIAN TELEPHONE COMPANY, now known as
                         HAWAIIAN TELCOM, INC.

           DATED      :  January 17, 1957
           FILED      :  Land Court Document No. 204747
           GRANTING   :  a right and easement for utility purposes


(E)    DESIGNATION OF EASEMENT(S) "160"

           REFERENCED :  on Map 156, as set forth by Land Court Order
                         No. 52561, filed March 1, 1979


(F)    The terms and provisions contained in the following:

           INSTRUMENT :  DECLARATION

           DATED      :  March 6, 1979
           FILED      :  Land Court Document No. 931192



(G)    Right of way in favor of Lots 1429-A, 1429-C and 1430-C, as
       set forth by Land Court Order No. 68011, filed November 29,
       1983.




(H)    GRANT

           TO         :  WAIANAE DEVELOPMENT COMPANY, LIMITED

           DATED      :  November 12, 1986
```

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

                    FILED      :  Land Court Document No. 1416834
                    GRANTING   :  easements for road and utility purposes, over
                                  and across those certain parcels of land being
                                  more particularly described therein

               Said above GRANT was amended by Land Court Order No. 82160
               filed January 12, 1987.

4.    -AS TO ITEM II (LOT 649):-

          GRANT

          TO         :  THE HAWAIIAN ELECTRIC COMPANY, LIMITED and MUTUAL
                        TELEPHONE COMPANY, now known as HAWAIIAN TELCOM,
                        INC.

          DATED      :  February 19, 1951
          FILED      :  Land Court Document No. 126432
          CONSENT    :  Given by MAKAHA VALLEY FARMS, LIMITED, a Hawaiian
                        corporation, by instrument dated March 13, 1951,
                        filed as Land Court Document No. 126433.
          GRANTING   :  a right and easement to build, construct,
                        reconstruct, rebuild, repair, maintain and operate
                        a pole and wire line etc.

5.    -AS TO ITEM III (LOT 632):-

          DESIGNATION OF EASEMENT "30"

          PURPOSE    :  ditch
          SHOWN      :  on Map 15, as set forth by Land Court Order No.
                        9991, filed December 18, 1950

6.    -AS TO ITEMS II (LOT 649) AND III (LOT 632):-

©Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

(A)    GRANT

      TO           :  CAPITAL INVESTMENT COMPANY, LIMITED

      DATED      :  April 17, 1964
      FILED      :  Land Court Document No. 329533
      GRANTING   :  an easement over and across Lot 632 (roadway),
                     as shown on Map 15, Lot 649 (roadway), as
                     shown on Map 17, Lot 921, as shown on Map 19,
                     etc., for road, utility and irrigation
                     purposes

(B)    GRANT

      TO           :  CITY AND COUNTY OF HONOLULU and THE BOARD OF
                     WATER SUPPLY

      DATED      :  March 7, 1966
      FILED      :  Land Court Document No. 396826
      GRANTING   :  an easement to construct, install, maintain,
                     operate, repair and remove an underground
                     water pipeline etc.

(C)    GRANT

      TO           :  ANA HOTELS HAWAII, INC.

      DATED      :  March 30, 1979
      FILED      :  Land Court Document No. 931193
      GRANTING   :  an easement across Lots 632 and 649

7.    -AS TO ITEM IV (LOT 695):-

© Title Guaranty of Hawaii LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

GRANT

TO            :  CITY AND COUNTY OF HONOLULU and THE BOARD OF WATER
                 SUPPLY

DATED         :  March 7, 1966
FILED         :  Land Court Document No. 396826
GRANTING      :  an easement to construct, install, maintain,
                 operate, repair and remove an underground water
                 pipeline etc.


8.   -AS TO ITEM V (LOT 1005):-


     (A)   Free flowage of water through the natural stream beds, as
           shown on Map 17, as set forth by Land Court Order No.
           10157, filed March 7, 1951.


     (B)   Free flowage of water through the natural stream beds, as
           shown on Map 18, as set forth by Land Court Order No.
           10510, filed July 31, 1951.


     (C)   Right of way in favor of Lots 411, 412-A, 412-B, 976, 1004,
           1006, 1007, 1008 and Exclusion 3 to a public highway
           (Farrington Highway), as shown on Map 58, as set forth by
           Land Court Order No. 29882, filed April 18, 1969.


     (D)   The terms and provisions contained in the following:

           INSTRUMENT :  DECLARATION

           DATED      :  March 6, 1979
           FILED      :  Land Court Document No. 931192

© Title Guaranty of Hawaii LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

SCHEDULE B CONTINUED

(E)   DESIGNATION OF EASEMENT(S) "157"

      REFERENCED : on Map 156, as set forth by Land Court Order
                   No. 52561 filed March 1, 1979

(F)   GRANT

      TO         : WAIANAE DEVELOPMENT COMPANY, LIMITED

      DATED      : November 12, 1986
      FILED      : Land Court Document No. 1416834
      GRANTING   : easements for road and utility purposes, over
                   and across those certain parcels of land being
                   more particularly described therein

      Said above GRANT was amended by Land Court Order No. 82160,
      filed January 12, 1987.

(G)   GRANT

      TO         : CITY AND COUNTY OF HONOLULU and THE BOARD OF
                   WATER SUPPLY

      DATED      : January 20, 1988
      FILED      : Land Court Document No. 1537909
      GRANTING   : an easement for underground water pipelines

9.  MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND
    FIXTURE FILING

      MORTGAGOR  : MDRE FIVE LLC, a Hawaii limited liability company

      MORTGAGEE  : TIANJIN DINGHUI HONGJUN EQUITY INVESTMENT,
                   PARTNERSHIP (Limited Partnership), a limited
                   partnership organized under the laws of the
                   People's Republic of China

      DATED      : December 11, 2019

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

```
         FILED    :  Land Court Document No. T-11048283
         AMOUNT   :  Four Hundred Million Chinese Yuan
```

10.  NOTICE OF PENDENCY OF ACTION

```
         PLAINTIFF  :  TIANJIN DINGHUI HONGJUN EQUITY INVESTMENT
                       PARTNERSHIP, a foreign limited partnership

         DEFENDANT  :  MDRE 5 LLC, a Hawaii limited liability company, et
                       al.

         DATED    :  January 25, 2021
         FILED    :  Circuit Court of the First Circuit, State of
                     Hawaii, Case No. 21-0000082, on January 25, 2021
         FILED    :  Land Court Document No. T-11355338 on February 2,
                     2021
         RE       :  foreclosure of that certain Mortgage filed as Land
                     Court Document No. T-11048283
```

11.  Pending Bankruptcy No. 21-00101 filed in the United States
     Bankruptcy Court for the District of Hawaii, in the matter of the
     bankruptcy of MDRE 5 LLC, Debtor(s).  Voluntary Petition under
     Chapter 11 filed February 1, 2021.

12.  Rights of others who may have easement or access rights in the
     land described in Schedule C.

13.  Any unrecorded leases and matters arising from or affecting the
     same.

14.  Discrepancies, conflicts in boundary lines, shortage in area,
     encroachments or any other matters which a correct survey or
     archaeological study would disclose.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

15. This transaction may be subject to a FinCEN Geographic Targeting Order issued pursuant to the Bank Secrecy Act. Information necessary to comply with the order must be provided prior to closing.  This transaction will not be insured until this information is submitted, reviewed and found to be complete.

**END OF SCHEDULE B**

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

**SCHEDULE C**

-ITEM I:-

All of that certain parcel of land situate at Makaha, Waianae,
District of Waianae, City and County of Honolulu, State of Hawaii,
described as follows:

LOT 1430-A, area 2.904 acres, more or less, as shown on Map 185, filed
in the Office of the Assistant Registrar of the Land Court of the
State of Hawaii with Land Court Application No. 1052 (amended) of
Waianae Company

Together with Together with a right of way appurtenant to Lot 1430-A
across Lot 632, as shown on Map 15, Lot 649, as shown on Map 17, and
Lot 1429-C, as shown on Map 185, Easement 158 across Lot 1025-B and
Easement 159 across Lot 1025-C, as shown on Map 156 of Application.


-ITEM II:-

All of that certain parcel of land situate at Waianae, District of
Waianae, City and County of Honolulu, State of Hawaii, described as
follows:

LOT 649, area 2.778 acres, more or less, as shown on Map 17, filed in
the Office of the Assistant Registrar of the Land Court of the State
of Hawaii with Land Court Application No. 1052 (amended) of Waianae
Company


-ITEM III:-

All of that certain parcel of land situate at Waianae, District of
Waianae, City and County of Honolulu, State of Hawaii, described as
follows:

LOT 632, area 2.406 acres, more or less, as shown on Map 15, filed in
the Office of the Assistant Registrar of the Land Court of the State
of Hawaii with Land Court Application No. 1052 (amended) of Waianae
Company


-ITEM IV:-

All of that certain parcel of land situate at Waianae, District of
Waianae, City and County of Honolulu, State of Hawaii, described as
follows:

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

SCHEDULE C CONTINUED

LOT 695, area 303 square feet, more or less, as shown on Map 18, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1052 (amended) of Waianae Company

-ITEM V:-

All of that certain parcel of land situate at Waianae, District of Waianae, City and County of Honolulu, State of Hawaii, described as follows:

LOT 1005, area 6.910 acres, more or less, as shown on Map 75, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1052 (amended) of Waianae Company

Being land(s) described in Transfer Certificate of Title No. 1,102,363 issued to MDRE 5 LLC, a Hawaii limited liability company.

BEING THE PREMISES ACQUIRED BY WARRANTY DEED

GRANTOR     :   MAKAHA VALLEY, INCORPORATED, a Hawaii corporation

GRANTEE     :   MDRE 5 LLC, a Hawaii limited liability company

DATED       :   August 17, 2015
FILED       :   Land Court Document No. T-9359006

**END OF SCHEDULE C**

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

## GENERAL   NOTES

1. There is hereby omitted from any covenants, conditions and reservations contained herein any covenant or restriction based on race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law.  Lawful restrictions under state or federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

2. Pending Adversary Proceeding filed in the United States Bankruptcy Court for the District of Hawaii, in the matter of the bankruptcy of PACIFIC LINKS U.S. HOLDINGS, INC., a Delaware corporation, Debtor(s).   Petition under Chapter 11, on March 4, 2021, Case No. 21-90009.

## BUYER(S)   LIEN   INFORMATION

1. The Company finds no liens docketed against KH GANGWONG DEVELOPMENT, INC., the proposed purchaser(s).

2. There is no evidence of KH GANGWONG DEVELOPMENT, INC. having been formed or registered with the applicable state and/or country agency.

   We will require evidence of formation or registration with the applicable state and/or country agency prior to the issuance of a title insurance policy.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

# GUIDELINES FOR THE ISSUANCE OF INSURANCE

A.  Taxes shown in Schedule B are as of the date such information is available from the taxing authority. Evidence of payment of all taxes and assessments subsequent to such date must be provided prior to recordation.

B.  Evidence of authority regarding the execution of all documents pertaining to the transaction is required prior to recordation.  This includes corporate resolutions, copies of partnership agreements, powers of attorney and trust instruments.

C.  If an entity (corporation, partnership, limited liability company, etc.) is not registered in Hawaii, evidence of its formation and existence under the laws where such entity is formed must be presented prior to recordation.

D.  If the transaction involves a construction loan, the following is required:

    (1)  a letter confirming that there is no construction prior to recordation; or

    (2)  if there is such construction, appropriate indemnity agreements, financial statements and other relevant information from the owner, developer, general contractor and major sub-contractors must be submitted to the Company for approval at least one week prior to the anticipated date of recordation.

    Forms are available upon request from the Company.

E.  Chapter 669, Hawaii Revised Statutes, sets forth acceptable tolerances for discrepancies in structures or improvements relative to private property boundaries for various classes of real property.  If your survey map shows a position discrepancy that falls within the tolerances of Chapter 669, call your title officer as affirmative coverage may be available to insured lenders.

F.  The right is reserved to make additional exceptions and/or requirements upon examination of all documents submitted in connection with this transaction.

G.  If a policy of title insurance is issued, it will exclude from coverage all matters set forth in Schedule B of this report and in the printed Exclusions from Coverage contained in an ALTA policy or in the Hawaii Standard Owner's Policy, as applicable.  Different forms may have different exclusions and should be reviewed.  Copies of the policy forms are available upon request from the Company or on our website at www.tghawaii.com.

H.  Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

DATE PRINTED:  05/18/2022

STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

TAX MAP KEY

DIVISION ZONE SECTION PLAT PARCEL HPR NO.
(1)      8      4      002   070    0000

CLASS: RESIDENTIAL              AREA ASSESSED:        126,498 SF

ASSESSED VALUES FOR CURRENT YEAR TAXES:  2021

The records of this division show the assessed values and taxes on the
property designated by Tax Key shown above are as follows:

| | | |
|---|---|---|
| BUILDING | $ | 0 |
| EXEMPTION | $ | 0 |
| NET VALUE | $ | 0 |
| LAND | $ | 100 |
| EXEMPTION | $ | 100 |
| NET VALUE | $ | 0 |
| TOTAL NET VALUE | $ | 0 |

Installment (1 - due 8/20;  2 - due 2/20) Tax Info As Of -

| Tax Year | Installment Tax Amount | Penalty Amount | Interest Amount | Other Amount | Total Amount | |
|---|---|---|---|---|---|---|
| 0 | | | | | | PAID |
| 0 | | | | | | PAID |
| 0 | | | | | | PAID |
| 0 | | | | | | PAID |

The real property tax information provided is based on information furnished by the
respective counties, is deemed reliable but not guaranteed, and no warranties are
given express or implied. Billing and tax collection details may have changed. Please
refer to the appropriate county real property tax offices for any further information
or updates for the subject property.

DATE PRINTED:  05/18/2022

STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

TAX MAP KEY

DIVISION ZONE SECTION PLAT PARCEL HPR NO.
(1)      8      4      020   015    0000

© Title Guaranty of Hawaii-LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

```
CLASS: RESIDENTIAL              AREA ASSESSED:        121,010 SF


ASSESSED VALUES FOR CURRENT YEAR TAXES:  2021


The records of this division show the assessed values and taxes on the
property designated by Tax Key shown above are as follows:

                    BUILDING          $           0
                    EXEMPTION         $           0
                    NET VALUE         $           0
                    LAND              $         100
                    EXEMPTION         $         100
                    NET VALUE         $           0
                    TOTAL NET VALUE   $           0

Installment (1 - due 8/20;  2 - due 2/20) Tax Info As Of -

Tax  Installment Tax    Penalty  Interest  Other     Total
Year           Amount    Amount    Amount  Amount    Amount

0                                                            PAID
0                                                            PAID
0                                                            PAID
0                                                            PAID
```

The real property tax information provided is based on information furnished by the
respective counties, is deemed reliable but not guaranteed, and no warranties are
given express or implied. Billing and tax collection details may have changed. Please
refer to the appropriate county real property tax offices for any further information
or updates for the subject property.
DATE PRINTED:  05/18/2022

STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

TAX MAP KEY

DIVISION ZONE SECTION PLAT PARCEL HPR NO.
                    ()

CLASS:              AREA ASSESSED:


ASSESSED VALUES FOR CURRENT YEAR TAXES:


The records of this division show the assessed values and taxes on the
property designated by Tax Key shown above are as follows:

© Title Guaranty of Hawaii-LLC
235 QUEEN ST., HONOLULU, HAWAII  96813, PH: (808) 533-6261

```
                    BUILDING              $
                    EXEMPTION             $
                    NET VALUE             $
                    LAND                  $
                    EXEMPTION             $
                    NET VALUE             $
                    TOTAL NET VALUE       $
```

Installment (1 - due 8/20;  2 - due 2/20) Tax Info As Of -

```
Tax   Installment Tax    Penalty  Interest   Other     Total
Year             Amount   Amount    Amount   Amount    Amount
```

The real property tax information provided is based on information furnished by the
respective counties, is deemed reliable but not guaranteed, and no warranties are
given express or implied. Billing and tax collection details may have changed. Please
refer to the appropriate county real property tax offices for any further information
or updates for the subject property.
DATE PRINTED:  05/18/2022

        STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

                            TAX MAP KEY

            DIVISION ZONE SECTION PLAT PARCEL HPR NO.
               (1)    8     4     021   068  0000

CLASS: RESIDENTIAL              AREA ASSESSED:       303 SF

ASSESSED VALUES FOR CURRENT YEAR TAXES:  2021

The records of this division show the assessed values and taxes on the
property designated by Tax Key shown above are as follows:

```
                    BUILDING          $              0
                    EXEMPTION         $              0
                    NET VALUE         $              0
                    LAND              $            100
                    EXEMPTION         $            100
                    NET VALUE         $              0
                    TOTAL NET VALUE   $              0
```

Installment (1 - due 8/20;  2 - due 2/20) Tax Info As Of -

**© Title Guaranty of Hawaii, LLC**
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

| Tax Year | Installment Tax Amount | Penalty Amount | Interest Amount | Other Amount | Total Amount |
|---|---|---|---|---|---|
| 0 | | | | | PAID |
| 0 | | | | | PAID |
| 0 | | | | | PAID |
| 0 | | | | | PAID |

The real property tax information provided is based on information furnished by the respective counties, is deemed reliable but not guaranteed, and no warranties are given express or implied. Billing and tax collection details may have changed. Please refer to the appropriate county real property tax offices for any further information or updates for the subject property.
DATE PRINTED: 05/18/2022

STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

TAX MAP KEY

| DIVISION | ZONE | SECTION | PLAT | PARCEL | HPR NO. |
|---|---|---|---|---|---|
| (1) | 8 | 4 | 002 | 012 | 0000 |

CLASS: AGRICULTURE              AREA ASSESSED:      301,000 SF

ASSESSED VALUES FOR CURRENT YEAR TAXES:  2021

The records of this division show the assessed values and taxes on the property designated by Tax Key shown above are as follows:

| | | |
|---|---|---|
| BUILDING | $ | 0 |
| EXEMPTION | $ | 0 |
| NET VALUE | $ | 0 |
| LAND | $ | 100 |
| EXEMPTION | $ | 100 |
| NET VALUE | $ | 0 |
| TOTAL NET VALUE | $ | 0 |

Installment (1 - due 8/20;  2 - due 2/20) Tax Info As Of -

| Tax Year | Installment Tax Amount | Penalty Amount | Interest Amount | Other Amount | Total Amount |
|---|---|---|---|---|---|
| 0 | | | | | PAID |
| 0 | | | | | PAID |
| 0 | | | | | PAID |
| 0 | | | | | PAID |

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261

The real property tax information provided is based on information furnished by the respective counties, is deemed reliable but not guaranteed, and no warranties are given express or implied. Billing and tax collection details may have changed. Please refer to the appropriate county real property tax offices for any further information or updates for the subject property.

© Title Guaranty of Hawaii, LLC
235 QUEEN ST., HONOLULU, HAWAII 96813, PH: (808) 533-6261
Page 185

# EXHIBIT H



# LiUNA!

**PETER A. GANABAN**
*Business Manager*
*Secretary-Treasurer*

**ALFONSO OLIVER**
*President*

**JOBY NORTH II**
*Vice President*

**TONI FIGUEROA**
*Recording Secretary*

**JAMES DRUMGOLD JR.**
*Executive Board*

**ORLANDO PAESTE**
*Executive Board*

**JOSEPH YAW**
*Executive Board*

**ESTHER AILA**
*Auditor*

**RUSSELL NAPIHAA**
*Auditor*

**MARK TRAVALINO**
*Auditor*

**MARTIN ARANAYDO**
*Sergeant-At-Arms*

September 28, 2020

ATTENTION PAYROLL DEPARTMENTS **(Non-Construction)**

RE:    LABORERS' UNION DUES INCREASE

Dear Payroll Department:

Please be advised of the following dues increases/changes effective **January 1, 2021**:

1) the Union's monthly dues will remain at **$40.00 per month**.

2) the Union's supplemental dues will remain at **$10.00 per month**.

If you have any questions regarding this change, please call the Union office at 841-5877 or 1-800-372-4077.

Sincerely,

Peter A. Ganaban
Business Manager/Secretary Treasurer

LiUNA Local 368
1617 Palama Street
Honolulu, HI 96817
Phone: (808) 841-5877
Fax: (808) 847-7829
www.local368.org

*Feel the Power*

# A G R E E M E N T
(Grounds Maintenance)


By and Between


HAWAII MVCC, LLC


and


LABORERS' INTERNATIONAL UNION
OF NORTH AMERICA, LOCAL 368


March 1, 2018 – February 28, 2021

# C O N T E N T S

<u>Section Number and Title</u>                                                                 <u>Page</u>

| | | |
|---|---|---|
| 1 | UNION RECOGNITION AND UNION SECURITY | 1 |
| 2 | COVERAGE | 1 |
| 3 | AUTHORIZED DEDUCTIONS | 2 |
| 4 | REFERRAL, HIRING, AND EMPLOYMENT | 2 |
| 5 | CLASSIFICATION AND WAGES | 3 |
| 6 | TEMPORARY TRANSFER | 3 |
| 7 | HOURS AND OVERTIME | 4 |
| 8 | HOLIDAYS | 5 |
| 9 | ACCESS TO PREMISES | 5 |
| 10 | SHOP STEWARD | 6 |
| 11 | GRIEVANCE PROCEDURE | 6 |
| 12 | ARBITRATION | 7 |
| 13 | WAGE PAYMENT | 8 |
| 14 | SENIORITY | 8 |
| 15 | NO STRIKE OR LOCKOUT | 9 |
| 16 | FUNERAL LEAVE | 10 |
| 17 | HEALTH AND WELFARE FUND | 10 |
| 18 | PENSION | 10 |
| 19 | TRUST FUND DOCUMENTS AND EMPLOYER PAYMENTS | 11 |
| 20 | VACATIONS | 12 |
| 21 | SICK LEAVE AND INDUSTRIAL ACCIDENT | 13 |
| 22 | JURY DUTY | 13 |
| 23 | DISCIPLINE OR DISCHARGE | 14 |
| 24 | MEAL PERIOD | 14 |
| 25 | SUCCESSORS AND ASSIGNS | 14 |
| 26 | GENERAL SAVINGS CLAUSE | 14 |
| 27 | MODIFICATION OF AGREEMENT | 15 |
| 28 | DOCUMENT CONTAINS ENTIRE AGREEMENT | 15 |
| 29 | DURATION OF AGREEMENT | 15 |

EXHIBIT "A"  –  Classification and Hourly Wage Schedule
EXHIBIT "B"  –  Confirmation of Hiring Slip
EXHIBIT "C"  –  Assignment of Wages to Cover Union Initiation Fee (or Re-Admission Fee),
                        Dues, Supplemental Dues and Assessments

LETTER OF UNDERSTANDING

# A G R E E M E N T

This Agreement by and between, HAWAII MVCC, LLC (hereinafter referred to as the "Employer" or "Company") and the LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 368, (hereinafter referred to as the "Union").

## WITNESSETH:

## Section 1. UNION RECOGNITION AND UNION SECURITY

1.1     This Agreement is signed by the Union on behalf of all employees in the collective bargaining unit, and all such employees required to abide by the Agreement negotiated in their behalf.

1.2     New employees shall be advised, when hired, of the provisions of this Agreement covering Union recognition and security.

1.3     All employees covered by this Agreement shall as a condition of employment, become a member of the Union not later than the thirty-first (31st) day following the date of his employment, and he shall thereafter remain a member in good standing.

1.4     For the purpose of this Section, a "member in good standing" shall be defined as one who has completed payment of the regular Union initiation fee, or re-admission fee (or who is paying said fee in accordance with the administrative procedures of the Union assessments), and who tenders the regular Union dues which are uniformly required as a condition of retaining membership in the Union.

1.5     Each employee covered by this Agreement who was a member of the Union on the date of execution of this Agreement shall remain a member thereof for the duration of the Agreement.

1.6     New employees shall, on or before the thirty-one (31) days from the beginning of employment, become and remain a member of the Union for the duration of this Agreement.

1.7     Upon written notice from the Union of failure on the part of any individual to complete membership in the Union, the Employer shall within five (5) working days of such notice discharge such employee.

1.8     In accordance with established policy, both parties agree to abide by and implement all existing Federal or/State statutes, rules and regulations pertaining to equal employment opportunity.

## Section 2. COVERAGE

2.1     The employees covered by this Agreement are all regular full-time golf course and grounds maintenance employees of the Employer, excluding clerical employees, confidential employees, professional employees, casual employees, temporary employees, supervisors, guards, watchmen, and all other employees.

2.2     The Agreement shall cover all work performed by employees of the bargaining unit in the classifications contained in Exhibit "A" in connection with the Employer's golf course including the mowing, trimming, tree trimming, raking, seeding, weeding, matting, rolling, watering, cleaning tree

basins, spraying, fertilizing, topdressing greens, watering greens, irrigation of trees, fairways, greens and other grassed areas, landscape work in connection with the golf course parking areas and grounds maintenance work, and operation and maintenance of tractors, spraying machines, mowers, trucks, and other equipment used in connection with the golf course and parking areas and grounds maintenance work.

## Section 3.  AUTHORIZED DEDUCTIONS

3.1     If an employee signs a proper authorization form (sample copy of which is attached hereto as Exhibit "C"), the Employer shall deduct from the wages of said employee all Union dues, Union initiation fees, and Union assessments which are due from said employee.  Except as provided in the 3rd and 4th paragraphs below, the aforesaid deductions will be made on a once-a-month basis only.

3.2     In requesting deductions for "assessments," the Union shall restrict such request to assessments assessed on all members of the Union employed by the Employer covered hereby or signatory hereto on a uniform basis as an incident of membership in the Union.

3.3     All monies deducted pursuant to this Section shall be transmitted by the Employer to the Union by way of check drawn to the order of the Union once-a-month/one month –in-advance basis and shall be transmitted by the Employer to the Union so that they are received by the Union by the 15th day of the month immediately following the month in which the deduction was made (e.g. dues which are due on June 1 shall be deducted during the month of May and shall be transmitted by the Employer to the Union so that they are received by the Union by June 15).

The Employer acknowledges that dues deductions are employee wages and that failure to transmit said dues once deducted is unlawful retention of employee monies.

3.4     Upon issue of such check and the transmission of same to the Union, all responsibility on the part of the Employer shall cease with respect to any amount so deducted so long as such check is honored on being presented for payment.  The Union hereby undertakes to indemnify and hold the Employer harmless from any claims that may be made upon said Employer for or on account of any such deductions from the wages of any employee.

3.5     The Union supplemental hourly dues (if applicable) will be deducted from the employee's wages.  The Union will present written notification and hourly amount to be deducted for all hours worked or paid.

## Section 4.  REFERRAL, HIRING, AND EMPLOYMENT

4.1     Notification of Quits and Other Terminations.    The Employer shall notify the Union promptly of the names of those employees who have quit, been laid off, and/or terminated.

4.2     Referral and Hiring Procedure

(a)     Union as Sole and Exclusive Source of Referral.  Except as provided below, the Union shall be the sole and exclusive source of referral of applicants for employment.

(b)     Notice to Union Referral Office.  When the Employer requires additional persons for work covered by this Agreement, he shall notify the Union Referral Office of the qualifications of

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 159 of 185

the person or persons required. Whenever possible, this notice shall be given forty-eight (48) hours in advance of the time the Employer desires said person(s) to report for work.

(c)  Former Employees.  When making requests to the Union Referral Office the Employer may name persons who were formerly employed by him at any time within the previous five (5)-year period before the date of the request, and if said persons are duly registered with the Union Referral Office and are available for employment, the Union shall refer them to the Employer.

(d)  No Clearance Slip:  No Hire

(1)  Any individual who does not possess a valid, Union Clearance Slip shall not be hired, and the Union office shall be promptly notified of the instance.

(2)  Any person who obtains employment by means of a forged Clearance Slip, or by any other fraudulent or surreptitious means shall be subject to immediate termination of employment.

(e)  Notice to Union of Rejections.  It is understood that the Employer has the right to hire or to reject any applicant for employment as referred by the Union's Referral Office.  So that the records of the Union's Referral Office may be complete, the Employer shall immediately notify the Union of any rejection.

(f)  If Union Referral Office Does Not Fill Employer's Request Within Twenty-Four Hours

(1)  If the Union's Referral Office does not fill the Employer's requirements within twenty-four (24) hours after the Employer's request is made, said Employer may then secure employees directly from any other source of labor he desires.  The Employer shall complete and sign a Confirmation of Hiring Slip, which shall be in a form as per Exhibit "B" attached hereto, and the employee shall obtain a Clearance Slip from the Union.

4.3  In making promotions or transfers to fill permanent job vacancies, the Employer shall consider the employee's suitability, competence, and qualifications to perform the work of any job to be filled.

Section 5.  CLASSIFICATION AND WAGES

Attached hereto and made a part hereof is the wage schedule, marked Exhibit "A" which sets forth the minimum hourly wage rate which shall apply for the term of this Agreement.

Section 6.  TEMPORARY TRANSFER

6.1  When an employee is assigned to work temporarily, or in an emergency, at a higher rated job for more than two (2) hours, he shall receive a minimum of four (4) hours pay at the higher rate, and when an employee works more than four (4) hours in the higher rated job, he shall be paid at the higher rate for the entire day.

-3-

6.2    When any employee is required to work temporarily on a job of a lower classification covered by this Agreement, he shall receive the pay of his regular wage classification unless such change is made permanent.

6.3    A transfer made for the convenience of an employee shall not be deemed a temporary transfer, irrespective of the duration of the transfer.

## Section 7.  HOURS AND OVERTIME

7.1    The provisions of this Section are intended only to provide a basis for determining the number of hours for which an employee shall be entitled to be paid at overtime rates and shall not be construed as a guarantee of any specified number of hours of work.

7.2    The normal workweek for regular full-time employees shall be five (5) consecutive days within a seven (7) day period.  Each employee shall be given two (2) scheduled days of rest.  The work-days and the days of rest will be assigned to employees are as follows:

| Workdays | Days of Rest |
|---|---|
| Monday through Friday | Saturday, Sunday |
| Tuesday through Saturday | Sunday, Monday |
| Wednesday through Sunday | Monday, Tuesday |

7.3    Upon mutual agreement between the employee and the Employer, employees may be given irregular schedules to fit particular conditions.

7.4    The normal starting time shall be between the hours of 6:00 a.m. and 8:30 a.m., except that on special occasions such as tournaments, the starting time may be before or after these hours.

7.5    An employee shall receive the overtime rate of one and one-half (1-1/2) times his straight time rate for all work performed in excess of eight (8) straight time hours in any one (1) day or forty (40) straight time hours in any one (1) week as stated above.

7.6    The first eight (8) hours worked on the sixth (6th) workday of the scheduled workweek shall be paid at the overtime rate of one and one-half (1-1/2) times the straight time rate.  All hours worked in excess of eight (8) hours on the sixth (6th) workday shall be paid at two (2) times the employee's straight time rate. All hours worked on the seventh (7th) workday of the scheduled workweek shall be paid at two (2) times the employee's straight time rate.

Any unexcused absence during the scheduled work week will disqualify an employee for any premium rate.

7.7    Whenever two (2) or more overtime or premium rates may appear to be applicable to the same hour or hours worked by employees, there shall be no pyramiding or adding together of such overtime rates and only the higher of such rates shall apply.

7.8    Reporting Time.  An employee reporting to work at his regularly scheduled starting time shall be guaranteed a minimum of two (2) hours work or two (2) hours pay unless such employee had been notified at least two (2) hours previously that work was not to be provided as regularly scheduled or

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 161 of 185

unless the employee quits, is given an unexcused absence, or is suspended or discharged prior to the completion of said two (2) hour period.

7.9 Employees may be required to work overtime at the request of, or on the order of the Employer. Employees shall not work overtime without prior authorization of the Grounds Superintendent or other superior management official. Employees who work overtime without authorization may be subject to possible discipline in accordance with Section 23.

7.10 It is understood that the employees shall be required to attend all paid training programs as long as ample notice is given. The Employer shall notify the Union of such required paid training programs from time to time and shall ensure that the employees involved are properly compensated.

## Section 8. HOLIDAYS

8.1 Any employee covered by this Agreement shall receive eight (8) hours pay at the regular straight time rate for the following full-day Holidays, and four (4) hours pay at the regular straight time rate for the following half-day Holidays even though he performs no work on those days, provided he shall have worked his last regularly scheduled workday immediately preceding the Holiday and the next workday immediately following the Holiday:

| | |
|---|---|
| Employee's Birthday | Labor Day |
| New Year's Day | Thanksgiving Day |
| Presidents' Day | One-Half Day Christmas Eve |
| Memorial Day | Christmas Day |
| Independence Day | One-Half Day New Year's Eve |
| | Floating Holiday |

8.2 In each calendar year, the floating holiday shall be scheduled by mutual agreement between the employee and the Employer. The floating holiday is paid at the straight time hourly rate and must be taken during the calendar year.

8.3 If an employee is required to work on a full-day Holiday or during the designated Holiday period on a half-day Holiday, he shall receive, in addition to eight (8) hours or four (4) hours pay for the Holiday, one and one-half (1-1/2) times his straight time rate of pay for all work performed for the first eight (8) hours commencing at the start of a designated half-day Holiday period, provided he shall have worked his last scheduled workday preceding the Holiday, and the next scheduled workday immediately following the Holiday unless absence on these days is due to an excused absence.

## Section 9. ACCESS TO PREMISES

9.1 Duly authorized representatives of the Union shall have access to the Employer's premises during regular working hours for purposes of investigating grievances that have arisen and ascertaining whether or not this Agreement is being observed. Such Union representative shall, before each entry, notify and obtain permission from the management office representative who shall then permit the Union representative to enter the Employer's premises. Such Union representative shall observe all safety rules and regulations. It is also understood that such visits shall be exercised reasonably and shall not interfere with conduct of the Employer's operations or cause employees to neglect their work.

U.S. Bankruptcy Court - Hawaii  #21-00094  Dkt # 521  Filed  06/03/22  Page 162 of 185

9.2    Union Bulletin Boards.  The Employer agrees to provide space for a suitable number of bulletin boards for posting of official Union notices, which shall be signed by a responsible agent of the Union.

## Section 10.  SHOP STEWARD

10.1    The Shop Steward shall have seniority over all other employees in their respective classification with respect to layoff, rehire and work, opportunities but specifically excluding choice of shifts, days off and vacations.  It is understood between the parties that the purpose of this section is to provide the Union with a more complete opportunity to service the contract and to insure that a representative will be present at all times to handle employee grievances.  The Union shall advise the Employer of the name of the Shop Steward and any subsequent change in such appointment.  The Union will not continue as a Shop Steward any individual who is shown to be irresponsible or incompetent.

10.2    The Shop Steward shall be afforded the opportunity to switch days off to attend Union functions.

10.3    The Shop Steward may contact the Grounds Superintendent during working hours to call his attention to situations which may require his attention.

10.4    The Employer shall not discharge or discriminate against the Shop Steward or any other employee for presenting a grievance of giving evidence with respect to an alleged violation of the Agreement.  When the Shop Steward or any other employee alleges a violation of this Agreement, the complaint will be processed as provided under Section 11 (Grievance Procedure).

10.5    The Employer recognizes that it is desirable that the Shop Steward remain on the job as long as there is work.  In the event that the Shop Steward is laid off for lack of work, the Employer shall notify the Union at least forty-eight (48) hours prior to such layoff; provided, however, the Union has given written notice to the Employer of the name of the Shop Steward.

## Section 11.  GRIEVANCE PROCEDURE

11.1    Whenever there is any dispute or disagreement between the Employer and any employee covered by this Agreement or the Union over any matter or issue, or when any employee covered by the terms of this Agreement, or the Union, believes that the Employer has violated the express terms of this Agreement, and that by reason of such violation, his or its rights arising out of such grievance have been adversely affected, the employee or the Union, as the case may be, shall be required to follow the procedure hereinafter set forth in presenting the grievance.

11.2    The Employer will not be required to consider, and the Union or employee(s) involved shall be deemed to have waived their right to, any contractual remedy as to any grievance involving any incident which has not been presented to the Employer within ten (10) days following the date of the alleged occurrence of the incident.  The Employer will not be required to consider, and the Union or employee(s) involved shall be deemed to have waived their right to, any contractual remedy as to any grievance involving an alleged continuing situation or alleged series of repeated identical incidents which have not been presented to the Employer within ten (10) days following the date on which the situation or incident first occurred.  Grievances over the amount of compensation shall be deemed to have occurred at the time payment is made.

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 163 of 185

11.3    Procedural Steps

(a)    Step 1.    The grievance shall be presented either orally or in writing by the complainant to the Grounds Superintendent who will give an answer either orally or in writing within two (2) days following the presentation of the grievance. If no answer is given within two (2) days, the grievance shall be deemed denied and the complainant must timely proceed to the next step.

(b)    Step 2.    If the grievance is not disposed of in the first step, the complainant shall present the grievance in writing to the Employer's designated representative, or any other person so designated by the Employer, who will give an answer in writing within two (2) days following the presentation of the grievance. If the grievance is not presented in Step 2 within five (5) days from the date of the Employer's answer in Step 1, the Employer shall not be required to further consider the grievance, and it shall be deemed resolved.

(c)    Step 3.    If the grievance is not disposed of in the second step, it may be arbitrated as hereinafter set forth. The complainant shall, within fifteen (15) days after receipt of the Employer's appointed representative's written answer in Step 2, serve written notice upon the Employer of the desire to arbitrate the grievance, together with a written statement of the issues to be arbitrated. If such written notice is not served upon the Employer within the fifteen (15) day period, the Employer shall not be required to further consider the grievance.

11.4    General Provisions

(a)    Failure of the Employer to answer a grievance within the time limits prescribed at any step of the grievance procedure shall require reference of the case to the succeeding step of the procedure following the expiration of time limits.

(b)    Any of the time limits under this Section may be extended by mutual agreement. Exclude Saturdays in computing the time limits established for each of the grievance steps in addition to Sundays and Holidays.

## Section 12.  ARBITRATION

12.1    Within fifteen (15) days after receipt of the complainant's written notice upon the Employer of the desire to arbitrate a grievance as provided in Section 11 (Grievance Procedure), the parties shall meet for the purpose of selecting an arbitrator. If the parties fail to agree upon an arbitrator within five (5) days after the first meeting of the parties, then the parties shall select one (1) arbitrator from the following panel: Louis Chang, John McConnell, Thomas Cestare, Walter Ikeda, and Patrick Yim. Within seven (7) calendar days the parties shall by a flip of a coin decide the first choice to alternately strike names from the list until one name remains. The Union shall give written notice to him requesting arbitration of the grievance together with a statement of the issues to be arbitrated. Thereupon, the Arbitrator shall set the time and place for the arbitration hearing. The date of the hearing fixed by the Arbitrator shall be within forty-five (45) calendar days for receipt of such notice.

12.2    All fees and expenses of the arbitrator shall be borne equally by the Employer and the Union (or complainant where the grievance was carried to arbitration without the Union's participation). Each party shall bear the expense of the presentation of its own case.

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed 06/03/22   Page 164 of 185

12.3    All decisions of the arbitrator shall be limited expressly to the terms and provisions of this Agreement and in no event may the terms and provisions of this Agreement be altered, amended, or modified by the arbitrator. All decisions of the arbitrator shall be in writing and a copy thereof shall be submitted to each of the parties hereto.

12.4    Except in cases of discipline and discharge, the complainant, in every hearing before the arbitrator, shall have the burden of proving his case by the weight of the evidence. In general, judicial rules of the procedure shall be followed in every hearing, but the arbitrator need not follow the technical rules of evidence prevailing in a court of law or equity.

12.5    The parties may, by mutual agreement, request the arbitrator to conduct an informal hearing. An informal hearing shall mean a hearing without a reporter being present to transcribe the testimony of witnesses and argument by representatives of the parties, but in all other respects the foregoing provisions of this Section shall be applicable. In the case of an informal hearing, the decision of the arbitrator shall be limited to a written statement of his conclusions.

12.6    All decisions of the arbitrator under this Section, including the decisions following informal hearings, shall be final and binding upon the parties.

12.7    In any case of discharge or suspension where the Arbitrator finds that such discharge or suspension was improper, such discharge or suspension may be set aside, reduced, or otherwise changed. The Arbitrator, at his discretion, may award back-pay to compensate the employee, wholly or partially, for any wages and fringe benefits (i.e. payments to the various Trust and other Funds as provided in this Agreement) lost because of the penalty. If a back-pay award is made, wages received from any other source, or any sums received as unemployment compensation while the penalty is in effect shall be deducted by the Arbitrator in determining the amount of the award.

## Section 13.  WAGE PAYMENT

All wages will be paid bi-weekly on Friday. However, if the payday falls on a holiday, the employee will be paid on Thursday of that week. When the Employer discharges an employee, the Employer shall pay all wages due at the time of discharge, or if the discharge occurs at a time and under conditions which prevent the Employer from making immediate payment, the wages must be paid to the employee no later than the working day following the discharge. The Employer will make terminal payment to an employee who quits or resigns no later than the next regular payday, either throughregular pay channels or by mail, if requested by the employee, except, however, that if an employee who quits or resigns notifies the Employer at least one (1) payroll period in advance that he intends to leave the island prior to the next regular payday and does not have a forwarding address, the Employer shall pay all wages due at the time resignation takes effect. When the Employer lays off an employee, the Employer shall pay all wages due at the time of layoff.

## Section 14.  SENIORITY

14.1    Seniority shall be based upon continuous service with the Employer in the operations covered by this Agreement from the last date of hire.

14.2    New employees shall not obtain seniority until the completion of a probationary period of thirty (30) days after which their seniority shall date from date of hire. Probationary employees may be summarily discharged.

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 165 of 185

14.3   Continuous service shall be broken and employment automatically terminated by discharge, resignation, six months of continuous unemployment, or twelve (12) continuous months of illness.

14.4   Any former employee whose continuous service was broken for any of the above reasons shall be considered a new employee if re-employed.

14.5   In making layoffs and recalls after layoffs, the employee with the least continuous service will be laid off first and the laid off employee with the most continuous service will be recalled first. It is recognized that in making layoffs or recalls after layoffs, the employee or laid off employee must be competent to perform the job to which he may be entitled under this seniority principle.

14.6   In promoting employees to vacancies in jobs covered by this Agreement, the qualifications of the applicants shall be determined by all relevant factors such as merit, experience, knowledge, attendance, ability to do the work, and physical and mental fitness. If the Employer determines there is no material difference between qualifications of applicants, seniority will control. If the Employer determines there is a material difference, the best qualified applicant will be selected.

14.7   Employees who are promoted to positions within the bargaining unit shall be subject to a sixty (60) work day trial period, the employee shall receive notice of promotion to the position and the Union shall be notified of the promotion within fourteen (14) calendar days. The parties hereto may agree to an extension of the trial period.

## Section 15.  NO STRIKE OR LOCKOUT

15.1   The parties hereto agree that during the term of this Agreement there shall be no lockout by the Employer, nor any strike of any kind for any reason, stoppage of work, or slowdown on the part of the Union or its representative or on the part of any employee covered by the terms of this Agreement, except as provided below.

15.2   Nothing in this Agreement shall be construed as giving the Employer the right to require such Employer's employees to cross a lawful, primary picket line which is not in violation of the law.

15.3   If the Employer fails to make timely transmittal of amounts deducted for Union dues, initiation fees, re-admission fees, and assessments, as provided under Section 3.  (Authorized Deductions), and so long as any of these conditions continue, it shall not be a violation of this Agreement for the Union to withdraw its members from the performance of work for said Employer. In each case, the Union shall give written notice to the Employer involved of its intent to withdraw his employee's, and/or to take other economic action against him, and the Employer shall be given five (5) working days from receipt of said notice in which to make necessary full payment. If such payment is not made within said five (5) day period, the Union shall then be free to withdraw his employees and/or to take other economic action against him and continue said withdrawal and/or other economic action until full payment is made.

15.4   It is mutually understood and agreed that neither the Employer, nor the Union, shall be liable for damages caused by the acts or conduct of any individual or group of individuals who are acting or conducting themselves in violation of the terms of this Agreement, provided that such action or conduct has not been specifically authorized, participated in, fomented, or condoned by the Employer, or the Union as the case may be. Such individuals acting or conducting themselves in violation of the terms of this Agreement shall be subject to discipline, up to and including discharge.

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 166 of 185

## Section 16. FUNERAL LEAVE

16.1    Leave as a result of the death of a member of an employee's family shall be granted up to the limits set forth below:

(a)   In the State of Hawaii; three (3) days.

(b)   Outside the State of Hawaii, if employee provides evidence of leaving the State; three (3) days.

16.2    Such employee shall be compensated at his straight time rate of pay from his regularly scheduled work up to the aforementioned limits, provided the employee attends the funeral service.

16.3    For the purpose of this Section, the employee's family shall mean the employee's spouse, his parent, his child, his brother or sister, and "hanai" of the same relationship.

## Section 17. HEALTH AND WELFARE FUND

17.1    The Employer shall participate in the Hawaii Laborers' Health & Welfare Fund (hereinafter referred to as the "Health and Welfare Fund") under the terms and conditions set forth in the "Agreement and Declaration of Trust Establishing Hawaii Laborers' Health & Welfare Trust," as executed December 28, 1977 and as it may be amended in the future.

17.2    During the term of this Agreement, the Employer agrees to contribute to the Health & Welfare Fund for each employee covered by this Agreement the following amounts:

| | |
|---|---|
| Effective March 1, 2018 | $   904 per month |
| Effective March 1, 2019 | $1,072 per month |
| Effective March 1, 2020 | $1,160 per month |

17.3    Cost Incurred Due to Non-payment of Health and Welfare Contributions

(a)    Should the Employer become delinquent in his Health and Welfare contributions and it results in an employee incurring costs he would not have otherwise incurred, the Employer shall make the employee whole by reimbursing the employee for all such costs.  These costs shall include, but not limited to, the cost of COBRA or self-pay coverage, any medical bills that would have been covered under the employee's medical coverage, and any interest or penalties related to such medical bills.

(b)    The employee may be required to submit a copy of the bills incurred to the Employer.  The employee may black out any personal or medical information on such bills prior to submitting for reimbursement.

(c)    Alleged violations of this subsection will be processed under Section 11. Grievance Procedure.

## Section 18. PENSION

18.1    The Employer shall remain signatory to and contribute to the Laborers' International National (Industrial) Pension Fund.

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 167 of 185

18.2    Effective March 1, 2011, the Employer and the Union agreed to adopt the Preferred Schedule of the Funding Rehabilitation Plan, dated July 26, 2010, attached hereto as Addendum A and B of the Agreement.

In accordance with the Preferred Schedule, the Employer shall contribute to the Laborers' International National (Industrial) Pension Fund during the term of this Agreement so long as the Trust Fund maintains its tax-exempt status under laws and regulations promulgated by the United States Department of Labor, Internal Revenue Service, or other governmental agency, per compensable hour in the following amounts:

| Effective Date | Amount |
|---|---|
| March 1, 2018 | $1.13 per hour |
| March 1, 2019 | $1.25 per hour |
| March 1, 2020 | $1.38 per hour |

18.3    The Employer shall execute the appropriate subscriber agreement provided by the Trust and abide with all provisions of the Trust not superseded by this Agreement.

## Section 19.  TRUST FUND DOCUMENTS AND EMPLOYER PAYMENTS

19.1    <u>Trust Fund Documents</u>.  Each of the Agreements and Declaration of Trust as referred to in this Agreement are, by reference, incorporated herein and the Employer covered hereby or signatory hereto agrees that he shall be bound by all the terms and conditions of said documents.  The Employer further agrees to the appointment of the Trustees of said funds as designated by the Contractor Associations and hereby designates said Contractor Trustees to serve as his representatives and to act as his agent in all matters concerning the funds.

Employer Payments

19.2    <u>Transmittal of Contributions</u>.  Employer contributions to the various funds as specified and provided for in this Agreement, shall be paid or postmarked by the twentieth (20th) day of the month immediately following the month for which the contributions are due.

19.3    A consolidated transmittal form as approved by the Trustees of the various funds and provided by the Administrative Office showing the monthly total of compensable hours worked by each employee covered by this Agreement shall accompany such payment.

19.4    <u>Information and Audit</u>.  The Employer shall provide the appropriate Trustees with all information necessary to carry out the purposes of the various funds and shall permit an audit of his payroll records by an authorized representative of the Administrative Office to ascertain whether all contributions due have been paid.

19.5    <u>Delinquent Contributions</u>.  When the Employer's contributions to any of the trust funds provided for under this Agreement are not paid, or postmarked and mailed, by the twenty-fifth (25th) day of the month immediately following the month for which the contributions are due, such contribution is delinquent.  For each such delinquent contribution, the Employer shall pay damages to each respective fund in the amount of twelve percent (12%) per annum of such delinquent contributions due to each respective fund or twenty dollars ($20.00), whichever is greater, for each and every month that such contribution is delinquent.  Such amount shall be due and payable to each respective fund as liquidated

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 168 of 185

damages and not as a penalty, upon the day immediately following the date such contribution becomes delinquent, and shall be in addition to the total amount of the delinquent contribution.

19.6    Bond or Cash-in-Escrow by Delinquent Employer.    If the delinquent contribution and damages due to any respective fund are not paid within thirty (30) calendar days after the due date, the delinquent Employer, to secure the payment of future contributions, may be required to post with the Trustees of each respective fund within five (5) working days thereafter and for a period of up to one (1) year from the date of delinquency a surety bond or cash-in-escrow in an amount equal to the last three (3) months' contributions or five thousand dollars ($5,000.00), whichever is greater.

19.7    Enforcement.    If it is necessary to take legal action to enforce payment of contributions and damages from the delinquent Employer, the Employer shall pay all court and collection costs plus a reasonable attorney's fee.

19.8    Application/Non-Application of Section 11 (Grievance Procedure).    Any questions relating to the payment of trust fund contributions and/or liquidated damages as may arise pursuant to a Union action under Section 15 (No Strike or Lockout) of this Agreement, and any questions relating to whether a particular person or group of persons are employees as defined under Section 2 (Coverage) of this Agreement, for whom contributions are due shall be subject to the provisions of Section 11 (Grievance Procedure).    All other matters involving the payment, collection, and enforcement of Employer contributions and/or liquidated damages to the various trust funds in this Agreement shall be handled by and in the manner as prescribed by the Trustees of the various funds in accordance with the Trust Documents establishing said funds and shall not be subject to the provisions of Section 11 (Grievance Procedure).

## Section 20. VACATIONS

20.1    Any employee covered by the terms of this Agreement shall on his anniversary date of employment be eligible for a vacation and vacation pay (computed at his regular straight time rate) in accordance with the following schedule:

| Years of Continuous Service | Hours of Vacation Pay | Vacation |
|---|---|---|
| 1 year, but less than 2 | 40 | 1 week |
| 2 years but less than 10 | 80 | 2 weeks |
| 10 years or more | 120 | 3 weeks |

20.2    An employee's expressed preference shall be given due consideration in the selection of the period during which he shall take his vacation, but the selection of his vacation period shall be subject to the Employer's determination.

20.3    With the approval of his immediate supervisor, an employee may split his vacation.

20.4    An employee who becomes ill or is injured during the vacation period will not be entitled to any additional days of vacation to make up for the period of disability.  However, the employee may apply for unused sick leave benefits for an injury or illness during his vacation period that results in an inpatient hospitalization from the first day of disability.  The Employer may require from the employee certification of such hospitalization.

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 169 of 185

20.5   An employee may accumulate, after the first year of employment, one (1) week of vacation per calendar year up to a maximum of three (3) weeks, including the employee's current year's eligibility.

20.6   When a holiday falls during a vacation, the employee will receive holiday pay for the holiday and the vacation will be extended an additional day.

## Section 21.  SICK LEAVE AND INDUSTRIAL ACCIDENT

21.1   <u>Industrial Accident</u>.   Whenever an accident covered by an existing Workers' Compensation Act, as hereinafter amended, causes absence from work on a scheduled workday, the injured employee shall be entitled to all compensation due to such employee under the Act.

21.2   <u>Sick Leave</u>.  After one (1) year of continuous service, and for each year thereafter, any employee covered by the terms of this Agreement, who because of illness or injury not compensable under the State Workers' Compensation Law, is prevented from working, shall be entitled to Sick Leave with pay computed on such employee's regular straight time rate of pay; provided the employee, upon each occasion of absence from work, shall notify his supervisor, or the management before noon of the first day of absence. Such pay shall start on the second day of each absence.

21.3   In the event the worker is hospitalized, he shall be entitled to sick leave benefits from the first day.

21.4   In order to receive sick leave benefits, the employee is required to present a signed certificate from a licensed physician, or such other evidence as may be acceptable to the Employer, that his absence from work was caused by such illness or injury.

21.5   Employees shall be entitled to one (1) day of sick leave eligibility for each completed month of service up to a maximum of five-hundred and sixty (560) hours (including current sick leave earnings).

21.6   Notwithstanding the provisions of the first paragraph of this Section, employees shall be entitled to supplement Workers' Compensation or Temporary Disability Compensation with available sick leave benefits provided for in this Section to the extent that they may receive a full days' pay during their disability.  No sick leave benefits will be granted if disability is caused by use of intoxicants, stimulants, drugs or narcotics, unlawful acts, or willful intent of the employee to injure himself or another.

21.7   The Employer shall notify the Union in writing when employees are granted maternity leave.

## Section 22.  JURY DUTY

22.1   Employees who are scheduled to begin work on or after 3:00 p.m. and who, on a scheduled workday, serve on a jury for five (5) or more hours outside their scheduled work shift, shall not be required to report to work for their scheduled shift.  The employee shall notify the Employer if he does not plan to report for work.

22.2   Employees required by the Employer to appear for special duty on their own time for the purpose of providing testimony or other information on all cases relating to their employment relationship

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 521   Filed  06/03/22   Page 170 of 185

shall be compensated for a minimum of three (3) hours at the overtime rate. The Employer may deduct such fees that the employee receives for his appearance from the compensation paid.

## Section 23.  DISCIPLINE OR DISCHARGE

23.1    Any employee covered by the terms of this Agreement shall be subject to discipline or discharge for just cause, such as insubordination, pilferage, drunkenness, incompetence, failure to perform work within his capability, violation of the terms of this Agreement, or failure to observe the safety rules and regulations and the Employer's house rules, which shall be conspicuously posted. Copies of the house rules and safety rules shall be furnished to the Union. The house rules shall not be in conflict with this Agreement.

23.2    Employees who have not completed their probationary period may be summarily discharged.

23.3    Any discharged employee, other than probationary employees, shall, upon request, be furnished the reason for his discharge in writing.

23.4    If the Employer takes action under this Section which the employees or the Union believes improper or unjustified, they shall have the right to process such grievance through the grievance procedure as provided under Section 11 (Grievance Procedure).

23.5    Warning notices, written customer complaints, and reports of outside agencies or the Employer's own security force concerning conduct of an employee shall become null and void eighteen (18) months after the day of issuance and may not thereafter be used as a basis for or in support of any subsequent discharge, disciplinary action or arbitration.

23.6    Employees shall not be disciplined solely because they are disabled due to a work related injury or they report, in a timely fashion, work-related accidents.

## Section 24.  MEAL PERIOD

Employees covered by the terms of this Agreement shall be afforded an unpaid one-half (1/2) hour meal break.

## Section 25.  SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon both parties, their successors, and assigns. In the event of the sale or transfer of the business of the Employer, or any part thereof, the purchaser or transferee shall be bound by this Agreement, to the extent required by law.

## Section 26.  GENERAL SAVINGS CLAUSE

26.1    It is not the intent of either party hereto to violate any laws, rulings or regulations of any government authority or agency having jurisdiction of the subject matter of this Agreement. The parties hereto agree that in the event any provisions of this Agreement are finally held or determined to be illegal or void as being in contravention of any such laws, rulings, or regulations, the remainder of the Agreement shall remain in full force and effect, unless the parts so found to be void are wholly

inseparable from the remaining portion of this Agreement. The parties agree that if and when any provisions of this Agreement are finally held or determined to be illegal or void they will then promptly enter into negotiations concerning the substance thereof.

26.2    Should the parties fail to reach agreement, either party may require that the matter be submitted to arbitration, under Section 12 (Arbitration) of this Agreement, if the matter be a lawful and mandatory subject of bargaining.

## Section 27.  MODIFICATION OF AGREEMENT

No provision or term of this Agreement may be amended, modified, changed, altered, or waived except by written document executed by the parties hereto.

## Section 28.  DOCUMENT CONTAINS ENTIRE AGREEMENT

This document contains the entire Agreement of the parties and neither party has made any representations to the other which are not contained herein.

## Section 29.  DURATION OF AGREEMENT

29.1    This Agreement shall remain in full force and effect from March 1, 2018 to and including February 28, 2021.

29.2    This Agreement shall be deemed renewed from year to year thereafter unless either party serves written notice upon the other of its desire to terminate or modify its provisions. Written notice must be served at least sixty (60) calendar days prior to the last day of its original or any yearly extended term, but not more than seventy-five (75) calendar days prior to the last day of its original or any yearly extended term. Desired modification, if any, shall be specified in the written notice.

29.3    If the aforesaid written notice of termination is served by either party, then this Agreement terminates upon the expiration of its original term or its yearly extended term.

29.4    The parties recognize that the success of the Employer and the welfare of the employees are predicated on the golf course's maintenance of its competitive position in the market place. During the term of this Agreement, should economic conditions result in economic hardship to the golf course, the parties agree that this Agreement may be reopened by the golf course solely to negotiate wages and economic benefits. Should the parties reach impasse in negotiations, the parties agree that the issue of the wage and benefit package shall be submitted to an arbitrator to determine the amount by which wages and/or benefits should be reduced. The parties agree that the Union will not strike, nor will the golf course lock out employees as a result of these negotiations or the arbitration. In determining the appropriate wage and benefit levels, the arbitrator shall consider the following factors: rounds of golf played; revenues of the golf course; capital expenditures by the golf course (including but not limited to expenditures for maintenance and upkeep of the golf course); operating expenses; interest rates; tax rates (including real property tax rates); lease rents; insurance rates; and inflation rates.

IN WITNESS WHEREOF, the parties hereto, through their duly authorized representatives, have executed this Agreement on the _18th_ day of _____May_____, 2018.

HAWAII MVCC, LLC

_____

LABORERS' INTERNATIONAL UNION OF
NORTH AMERICA, LOCAL 368

_____

_____

EXHIBIT "A"

## CLASSIFICATION AND HOURLY WAGE SCHEDULE

| Classification | Effective 3/1/18 | Effective 3/1/19 | Effective 3/1/20 |
|---|---|---|---|
| Grounds Foreman | $13.00 | $13.05 | $13.10 |
| Working Foreperson | 17.60 | 17.65 | 17.70 |
| Equipment Mechanic | 18.75 | 18.80 | 18.85 |
| Irrigation Technician | 15.75 | 15.80 | 15.85 |
| Heavy Equipment Operator | 12.47 | 12.52 | 12.57 |
| Light Power Equipment Operator | 12.40 | 12.45 | 12.50 |
| Irrigator | 12.21 | 12.26 | 12.31 |
| Grounds Maintenance Person I | 11.84 | 11.89 | 11.94 |
| Grounds Maintenance Person II | 10.84 | 10.89 | 10.94 |
| Spray Technician | 16.25 | 16.30 | 16.35 |

New Employees.  New employees shall be paid an in-hire rate of twenty-five cents ($0.25) less than the scheduled wage rate for the first thirty (30) workdays and ten cents ($0.10) less than the scheduled wage rate for the next thirty (30) workdays.

Additional Classification.  The parties agree that if the occasion arises for additional classifications, such classifications and the applicable wage rate shall be negotiated.

Any dispute on additional classifications other than those standard in the golf course industry shall be subject to the grievance procedure and/or arbitration.  This provision shall not be in conflict with Section 26 (Modification of Agreement).

Chemical Spray Truck.  Anyone operating the chemical spray truck or any equipment used for spraying chemicals shall be paid a premium rate of twenty-five cents ($0.25) per hour in addition to his regular straight time rate while operating such equipment.

No employee receiving a higher rate of pay shall suffer a reduction in rate of pay by reason of the execution of this Agreement.

Hedge Trimmer.  Anyone operating hedge trimming equipment with a 30" or longer reach for one or more hours shall be paid a premium rate of ten cents ($0.10) per hour in addition to his regular straight time rate while operating such equipment.

Tree Trimmer.  Anyone who climbs a ladder and whose feet are 12' or more above the ground to perform tree trimming duties shall be paid a premium rate of eighty-five cents ($0.85) per hour in addition to his regular straight time rate while performing such work.

EXHIBIT "B"

CONFIRMATION OF HIRING SLIP

TO: _____
(Union)

_____
(Address)

This is to confirm that _____
(Name of Employee)

was hired/rehired by me on _____ as a _____
(Date Hired)                              (Classification)

at a wage rate of _____ per hour.  He is to report for work at _____

_____
(Job Location or Project)

on _____ at _____
(Date)                          (Starting Time)

_____
(Employer)

_____
(Signature of Employer's Representative)

_____
(Date)

_____
(Phone Number)

ABOVE INFORMATION CONFIRMED:

_____
(Signature of Authorized Union Representative)

_____
(Date)

## ASSIGNMENT OF WAGES TO COVER UNION INITIATION FEE (OR RE-ADMISSION FEE), DUES, SUPPLEMENTAL DUES AND ASSESSMENTS

To: _____ and any subsequent employer signatory to the applicable collective bargaining agreement by whom the undersigned employee is employed during the effective period of this agreement.

I, the undersigned hereby assign to the LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 368, and do hereby authorize you to deduct from my wages:

(a) the Union initiation fee for (or re-admission fee) in the amount as certified to you in writing by the Union;

(b) monthly Union dues, including any delinquent Union dues, in the amount as uniformly required of all members of the Union as certified to you in writing by the Union;

(c) the supplemental dues, including any delinquent supplemental dues, as certified to you in writing by the Union and;

(d) Union assessments, including any delinquent Union assessments, if and when authorized in accordance with the Union's Constitution and By-Laws and applicable State and Federal laws, in the amount as certified to you in writing by the Union;

and I authorize the payment to the Union of the amount(s) so deducted.

This assignment shall be irrevocable until one year from the date below, or until the termination date of the applicable collective bargaining agreement (within the meaning of the Labor-Management Relations Act, 1947), whichever occurs sooner, and shall be automatically renewed, and shall be irrevocable for successive periods of one year each or for the period of each succeeding applicable collective bargaining agreement, whichever shall be shorter, unless at least ten (10) days and not more than twenty (20) days before the expiration of each period of one year or of each applicable collective bargaining agreement, whichever occurs sooner, I give written notice to the Employer of my desire to revoke this assignment, or unless the same shall be automatically cancelled when my employment ends or when I cease to be employed in a capacity represented by the bargaining unit.

There shall be no obligation on the part of the Employer to make any deduction beyond the original term of the collective bargaining agreement existing at the date of this assignment, unless the agreement is extended or a new agreement has been negotiated containing an authorization for Union deductions as provided in the agreement existing at the date of this assignment.

Employee's Signature _____ Date _____

PRINT: Name of Employee _____

*************************************************************************************************************

Receipt of the foregoing assignment and authorization is acknowledged by:

Employer: _____

By: _____ Date _____

_May 18_, 2018

Laborers' International Union of
  North America, Local 368
1617 Palama Street
Honolulu, Hawaii 96817

Gentlepersons:

In conjunction with the collective bargaining agreement being executed simultaneously with this letter, it is understood and agreed:

1.     With respect to Section 20. Vacations, an employee who was employed by the Employer on or before February 29, 2008, shall on his anniversary date of employment be eligible for a vacation and vacation pay (computed at his regular straight time rate) in accordance with the following schedule:

| Years of Continuous Service | Hours of Vacation Pay | Vacation |
|---|---|---|
| 1 year, but less than 8 | 80 | 2 weeks |
| 8 years but less than 15 | 120 | 3 weeks |
| 15 years or more | 160 | 4 weeks |

In all other respects, vacation shall be in accordance with the terms and conditions of Section 20. of the collective bargaining agreement.

2.     It is not the Employer's intent to reduce full-time bargaining unit employee's employment status for the purpose of dissipating the bargaining unit.

Please indicate your understanding and acceptance of the foregoing by signing below.

Very truly yours,

HAWAII MVCC, LLC

By _____

LABORERS' INTERNATIONAL UNION OF
NORTH AMERICA, LOCAL 368

By _____

Rehabilitation Plan:  Addendum A

LABORERS' NATIONAL (INDUSTRIAL) PENSION FUND
FUNDING REHABILITATION PLAN
(Adopted July 26, 2010)

PREFERRED SCHEDULE

This document constitutes the Preferred Schedule under the Funding Rehabilitation Plan adopted by the Board of Trustees of the Laborers' National (Industrial) Pension Fund on July 26, 2010.  This Schedule is part of the Rules & Regulations of the Pension Fund and supersedes any provision of the Rules & Regulations that is inconsistent with it.  Further, this schedule is a part of the collective bargaining agreement and/or participation agreement of any group for which the bargaining parties adopt this schedule in accordance with the Rehabilitation Plan, and supersedes any inconsistent provision of such agreement.

This Preferred Schedule may be adopted by the collective bargaining parties by simply adding it to their current agreement or including it in their next agreement, either as an addendum or in the agreement's main body.  The Schedule will be effective as follows:  (a) if added to the current agreement, the Schedule will be effective as of the date agreed by the bargaining parties; or (b) if included in a new agreement the Schedule will be effective as of the date on which the agreement is effective.

The elements of this Preferred Schedule are:

1.  <u>Contribution Rate Increases</u>:   The current contribution rate shall be increased by 10% compounded annually for 10 years, rounded up to the next penny.  Accordingly, as of the effective date of the Schedule, the contribution rate shall be increased by 10%, and the subsequent annual 10% increases in the contribution rate shall be effective on the anniversaries of the initial effective date.

2.  <u>Benefits</u>:  The Pension Fund's current plan of benefits for the group will remain unchanged with the following exceptions:

   (a)   Benefit accruals for periods after adoption of the Preferred Schedule will be based on the contribution rate in effect immediately before the Preferred Schedules goes into effect for the group, not on the increased rates required by this Schedule.

   (b)   Effective April 30, 2010 and until the Rehabilitation Plan succeeds, the Pension Fund is not permitted by the PPA to pay any lump sum benefits or pay any other benefit in excess of the monthly amount that would be payable to the pensioner under a single life annuity.  This means that the Fund's Partial Lump Sum option, Social Security Level Income option, and Widow/Widower Lump Sum option are suspended.  Exceptions are made for a lump sum cash-out of a participant or beneficiary whose entire benefit entitlement has an actuarial value of $5,000 or less, and for the Fund's $5,000 death benefit.

   These restrictions will not be applicable to a participant:

      (1)   who is receiving benefits as of April 30, 2010; or,

      (2)   whose pension application was received by the Pension Fund on or before April 30, 2010, who met the age and service requirements for pension eligibility on or before

April 30, 2010, and whose pension is effective no later than July 1, 2010 (October 1, 2010 in the case of a Disability Pension, to take account of the 5-month waiting period). No pension can be effective until the participant separates form covered employment and disqualifying employment.

(c)    The Board of Trustees has discretionary authority to amend the Rules & Regulations of the Pension Fund, including the Rehabilitation Plan, within the bounds of applicable law.

3.    The Rehabilitation Plan as a whole is deemed to be a part of this Schedule.

## Addendum B

### LABORERS' NATIONAL (INDUSTRIAL) PENSION FUND
### FUNDING REHABILITATION PLAN

### AGREEMENT ADOPTING PREFERRED SCHEDULE
### ADDENDUM TO COLLECTIVE BARGAINING AGREEMENT

Whereas the undersigned Union and Employer are parties to a collective bargaining agreement that provides for contributions to the Laborers' National (Industrial) Pension Fund; and

Whereas, the Pension Fund's Board of Trustees has adopted a Funding Rehabilitation Plan ("Plan"), dated July 26, 2010, to improve the Fund's funding status over a period of years as required by the Pension Protection Act of 2006 ("PPA"); and

Whereas, a copy of the Plan has been provided to the Union and the Employer; and

Whereas, the Plan, in accordance with the PPA, requires that the signatories to every collective bargaining agreement providing for contributions to the Pension Fund adopt one of the Schedules included in the Plan; and

Whereas, the Union and the Employer have agreed have agreed to adopt the Plan's Preferred Schedule and wish to document that agreement;

It is hereby agreed by the undersigned Union and Employer as follows:

1. This Addendum shall be considered as part of the collective bargaining agreement. The provisions of this Addendum supersede any inconsistent provision of the collective bargaining agreement.

2. The current contribution rate to the Pension Fund of **$0.50 per hour** shall be increased by 10% to the rate of **$0.55 per hour** effective March 11, 2011. On each anniversary of that effective date for the term of the collective bargaining agreement, the contribution rate then in effect shall be increased by another 10% (rounded to the next highest penny).

3. With regards to benefits under the Pension Fund, the Plan's Preferred Schedule provides that the Pension Fund's current plan of benefits for the group will remain unchanged with the following exceptions:

    (a) Benefit accruals for periods after adoption of the Preferred Schedule will be based on the contribution rate in effect immediately before the Preferred Schedule goes into effect for the group, not on the increased rates required by this Schedule.

    (b) Effective April 30, 2010 and until the Rehabilitation Plan succeeds, the Pension Fund is not permitted by the PPA to pay any lump sum benefits or pay any other benefit in excess of the monthly amount that would be payable to the pensioner under a single life annuity. This means that the Fund must suspend its Partial Lump Sum option, Social Security Level Income option, and Widow/Widower Lump Sum option. Exceptions are made for a lump sum cash-out of a participant or beneficiary whose entire benefit entitlement has an actuarial value of $5,000 or less and for the Fund's $5,000 death benefit.

(c) The Board of Trustees continues to have discretionary authority to amend the Rules & Regulations of the Pension Fund, including the Rehabilitation Plan, within the bounds of applicable law.

4. The Plan as a whole is deemed to be a part of the Preferred Schedule.

5. This Addendum shall be effective as of March 11, 2011, which date is the same date on which the contribution rate increase under paragraph 2 is first effective.

To acknowledge their agreement to this Addendum, the Union and the Employer have cause their authorized representatives to place their signatures below:

FOR THE UNION:

Signature: *Peter A. Ganaban*

Name: PETER A. GANABAN

Position: BUSINESS MANAGER          Date:

FOR THE EMPLOYER:

Signature: *Shawn S. Gobin*

Name: Shawn S. Gobin

Position: Executive Director of Operations          Date: June 17, 2015

## EXTENSION OF AGREEMENT

It is hereby understood by and between **HAWAII MVCC, LLC** and the **LABORERS'
INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 368**, that the collective bargaining
agreement effective March 1, 2018 to and including February 28, 2021, that was extended to
February 28, 2022, shall be further extended to and including February 28, 2023.

IN WITNESS WHEREOF, the parties hereto have caused this Extension of Agreement to
be executed this _18th_ day of _February_, 2022.

LABORERS' INTERNATIONAL UNION OF
NORTH AMERICA, LOCAL 368

HAWAII MVCC, LLC

Peter A. Ganaban
Business Manager/Secretary-Treasurer

Tim Ayau
General Manager

Alfonso Oliver
President

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>PACIFIC LINKS U.S. HOLDINGS,<br>INC, a Delaware Corporation,<br><br>       Debtor and<br>       Debtor-in-possession | **Case No. 21-00094**<br>(Chapter 11)<br>(Jointly Administered)<br><br><br>DECLARATION OF WEI ZHOU |
| This document relates to:<br>ALL CASES. | |

## <u>DECLARATION OF WEI ZHOU</u>

I, WEI ZHOU, hereby declare that, I am over the age of 18 years old, and I competent to make this declaration and I make this declaration upon my personal knowledge, except as otherwise stated. If called and sworn as a witness, I could and would testify competently thereto.

1.     I am the President of PACIFIC LINKS U.S. HOLDINGS, INC., and the sole manager of Hawaii MVCC, LLC, Hawaii MGCW, LLC, MDRE LLC, MDRE 2 LLC, MDRE 3 LLC, MDRE 4 LLC, and MDRE 5 LLC (collectively, the "Debtors"). I am a custodian of records for the Debtors' businesses, and am familiar with the Debtors' books and records.

2.　　I have reviewed the *Motion for Order Authorizing (A) Sale Of Substantially All Of Debtor's Assets Free And Clear Of Liens And Encumbrances; (B) Assumption And Assignment Of The Collective Bargaining Agreement; And (C) Related Relief* (the "Motion").  Terms used herein and not otherwise defined shall have the meanings given them in the Motion.

3.　　All of the facts set forth in the Motion are true and correct to the best of my knowledge, information and belief.

4.　　Effective as of May 2, 2022, the Debtors entered into a Purchase and Sale Agreement ("PSA") with KH Gangwon Development, Inc. for the purchase and sale of the Makaha Property for $20.7 million, free and clear of liens and encumbrances, **subject to Court approval overbids by qualified bidders**.  A true and correct copy of the amended PSA between the parties is attached to the Motion as Exhibit "A".

5.　　True and correct copies of the Preliminary Title Reports for the Makaha Property are attached to the Motion as Exhibit "B" – "G".

6.　　A true and correct copy of the CBA is attached to the Motion as Exhibit "H".

7.　　I understand that KH has expended substantial resources in conducting due diligence.   To the best of my knowledge, KH has negotiated in good faith in its dealings with the Debtors.

13

8.	The prompt sale of the Makaha Property and the payoff of Towne in accordance with the terms of the Plan is in the best interest of the Debtors' estates and respective creditors as the sale will bring the Debtors one step closer to the ultimate goal of these proceedings, the payment of legitimate creditors.

9.	I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: North York, Ontario, Canada, June 3, 2022

_____
WEI ZHOU