

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re | Bk. No. 21-00094 |
| | (Chapter 11) |
| PACIFIC LINKS U.S. HOLDINGS, INC., a Delaware Corporation, | (Jointly Administered) |
| | |
| Debtor and | |
| Debtor-in-Possession. | |
| | HEARING |
| This document relates to: | |
| | Date: July 1, 2022 |
| ALL CASES | Time: 2:00 p.m. |
| | Judge: Hon. Robert J. Faris |
| | |
| | [Relates to dkt. ## 521, 522, 530, 541] |

ORDER APPROVING MOTION FOR ORDER MOTION FOR ORDER
AUTHORIZING (A) SALE OF SUBSTANTIALLY ALL OF DEBTORS'
ASSETS FREE AND CLEAR OF LIENS AND ENCUMBRANCES; (B)
ASSUMPTION AND ASSIGNMENT OF COLLECTIVE BARGAINING
AGREEMENT; AND (C) RELATED RELIEF; EXHIBIT "A"

The *Motion For Order Authorizing (a) Sale of Substantially All Debtor's*

*Assets Free and Clear of Liens and Encumbrances; (b) Assumption and*

*Assignment of Collective Bargaining Agreement; and (c) Related Relief* (the "Sale

83153

Motion"),[1] filed by Pacific Links U.S. Holdings, Inc., Hawaii MVCC LLC, Hawaii MGCW LLC, MDRE LLC, MDRE 2 LLC, MDRE 3 LLC, MDRE 4 LLC, and MDRE 5 LLC, debtors and debtors-in-possession (collectively, the "Debtors") on June 3, 2022, came on for remote hearing on July 1, 2019 at 2:00 p.m. (the "Hearing") before the Honorable Robert J. Faris, United States Bankruptcy Judge for the United States Bankruptcy Court for the District of Hawaii (the "Court").

Chuck C. Choi, Esq. and Allison A. Ito, Esq. appeared on behalf of the Debtors. Susan Tius, Esq. and Stephen K.C. Mau, Esq. appeared for MRGC LLC and Kehalani Commercial Associates LLC (together, "Towne"). Ted N. Pettit, Esq. appeared for Tianjin Dinghui Hongjun Equity Investment Partnership ("TDH"). Neil J. Verbrugge, Esq. appeared for the Office of the United States Trustee. Ross Uehara-Tilton, Esq., appeared for Rudolph J. Anderson. Warren Kim, Esq. appeared for KH Gangwon Development Inc. ("Buyer").

The Court having reviewed the Motion, the *Declarations* of Wei Zhou and Gyusik Bang ("Bang Declaration") in Support thereof, the *Conditional Consent to Sale Pursuant to [Sale Motion]* filed by Towne, and having heard the statements of counsel regarding the relief requested in the Sale Motion at the Hearing, the Court finding that (a) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (c) notice of

---

[1] Capitalized terms not herein defined shall have the meaning set forth in the Sale Motion.

2

the hearing on the Motion was sufficient under the circumstances; and the Court being fully advised in the premises and having determined that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein;

NOW, THEREFORE, THE COURT FINDS, DETERMINES AND CONCLUDES AS FOLLOWS:

1.  On June 21, 2022, the Court entered its *Order Approving Bid Procedures for Sale of Substantially All of the Debtor's Assets and Related Relief* as dkt # 540 ("Bid Procedures Order"). The Bid Procedures Order authorized the Debtor to conduct an auction of the Debtors' 644-acres of entitled fee simple land, including an operating golf course and related assets which are defined in the Purchase and Sale Agreement ("Agreement") between the Debtors as Seller and Buyer as the "Property."

2.  The Bid Procedures Order required all competing offers to be submitted by June 29, 2022 at 5:00 p.m. (HST).

3.  The Debtors did not receive any competing offers to acquire the Property by June 29, 2022 at 5:00 p.m. (HST).

4.  Buyer's offer to acquire the Property constitutes the highest and best bona-fide offer for the Property under the circumstances.

5.  On June 3, 2022, the Debtors filed its Sale Motion and the Bang

Declaration.

6.    Proper, timely, adequate and sufficient notice of the Sale Motion has been provided by the Debtors in accordance with Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure and LBR 6004-1.

7.    Buyer is a purchaser acting in good faith and is entitled to the protections offered to such a good faith purchaser, as that term is utilized in Section 363(m) of the Bankruptcy Code.

8.    The negotiations for the sale of the Property were undertaken in good faith, without collusion and at arms' length by and between the Debtors and the Buyer.

9.    The Debtors have advanced sound business reasons for selling the Property and assuming and assigning the Collective Bargaining Agreement.  It is a reasonable exercise of the Debtors' business judgment and it is in the best interests of the estate for the Debtors to sell the Property and for the Debtors to execute, deliver and perform its obligations under the Sale Documents, and to assume and assign the Collective Bargaining Agreement.

10.    The total consideration to be realized by the estate pursuant to the sale is fair and reasonable, and the sale of the Property is in the best interest of the Debtors' estates.

11.    Accordingly, based upon the foregoing findings, and for the reasons

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 545   Filed  07/06/22   Page 4 of 40

stated on the record, it is

ORDERED, ADJUDGED and DECREED effectively immediately that:

A.     The Agreement substantially in the form attached hereto as **Exhibit A** and any related sale documents (collectively, the "Sale Documents") are hereby approved.  The Debtors and Buyer are authorized and directed to undertake the transactions authorized by the Sale Documents and this Order, and the Debtors are hereby authorized and directed to consummate the sale of the Property pursuant to the Agreement.

B.     No objections to the sale of the Property and other relief sought in the Sale Motion were filed.  The terms of the Conditional Consent of Towne are incorporated in this Order.

C.     Except as provided in the Sale Documents, pursuant to Section 363(b) and (f) of the Bankruptcy Code, the Property is hereby sold and will be transferred to Buyer free and clear of any and all liens, liabilities, encumbrances, interests or adverse claims of whatever kind whether or not allowable (as such terms are defined in the Bankruptcy Code), security interests, title retentions, charges, and any other interest in such Property of an entity other than the Debtor's estate (collectively, "Encumbrances").  For the avoidance of doubt, the sale of the Property is free and clear of any Encumbrances and other interests asserted by (a) MRGC LLC and Kehalani Commercial Associates LLC; (b) TDH; and (c) any

taxes of any government entity, including but not limited to the United States of America and the State of Hawaii, Department of Taxation.

D. The provisions of this Order authorizing the Sale of the Property free and clear of Encumbrances shall (i) be self-executing and shall constitute a satisfaction and release of all liens, claims, interests, charges and encumbrances on the Property, including but not limited to any claims against any tradenames, service marks and trademarks constituting a portion of the Property. Neither the Debtors nor the Buyer is required to execute or file releases, termination statements, assignments, consignments, or other instruments in order to effectuate, consummate and implement the foregoing provisions; provided, however, that this decretal paragraph shall not excuse such parties from performing any and all of their respective obligations under this Order. Notwithstanding the foregoing, the Debtors are directed to execute all documents required by, or related to, the Property, including but not limited to, assignment and transfer documents to effectuate the transfer to Buyer of the Property and all licenses, permits, approvals, and rights relating to the Property. Buyer is further authorized to execute and file such additional statements, instruments, releases or other documents as are necessary or commercially reasonable to discharge liens recorded on public records.

E.     Escrow Agent is authorized to close the sale of the Property and disburse the proceeds of sale on the terms set forth in the Sale Documents, including: (i) any ordinary and customary closing costs of sale including, closing costs required to be paid by Debtors in accordance with the Sale Documents, including but not limited to one-half (1/2) of the escrow fees, all recording fees, the conveyance tax, the premiums for a standard owner's policy in the amount of the Purchase Price and any extended Owner's ALTA title insurance policy including endorsements required by Buyer, the cost of all surveys including any ALTA survey ordered by Buyer, and such other costs and expenses which are to be paid by Debtors under the Sale Documents, and Debtors' share of prorations, including but not limited to utility charges and real property taxes and assessments (collectively, the "Closing Costs"); (ii) payment in the amount of $6,210,000.00 to Towne in full satisfaction of its Encumbrances on portions of the Property; (iii) payment of realtor's commission to CBRE Inc. in the amount of $767,500.00 (the "Commission"), provided that CBRE Inc. shall have first obtained a Court order approving the Commission; and (iv) the balance of the sale proceeds to  the Debtors as seller, provided that the asserted Encumbrances of TDH shall attach to such balance with the same force, effect, validity and priority that such lien, encumbrance or other property interest had in the Property prior to the sale.

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 545   Filed  07/06/22   Page 7 of 40

F.     The rights and defenses of the Debtors and any other party in interest with respect to any assertion that any Encumbrances, including but not limited to TDH, will attach to the proceeds of this sale are hereby preserved.

G.     Pursuant to 11 U.S.C. § 365(d), Hawaii MVCC LLC ("MVCC") is authorized to assume and assign to Buyer MVCC's interest in the Collective Bargaining Agreement between MVCC and Laborers' International Union of North America Local, 368 dated May 18, 2018 (as amended, the "CBA"), attached as **Exhibit H** to the Sale Motion.  The assignment of the CBA will be a legal, valid and effective assignment of the CBA, authorized pursuant to the Bankruptcy Code, and will vest such assignee will all right, title, and interest of Hawaii MVCC LLC to the CBA, free and clear of all liens, claims (as defined in the Bankruptcy Code), interests, and encumbrances, whether known or unknown, inchoate, unliquidated, or liquidated, contingent or otherwise, provided, however, that nothing in this Order shall be construed to affect the rights of the counterparties to the CBA, or to modify in any way the terms, conditions and effect of the CBA.

H.     This Order (a) is and shall be effective as a determination that, on the closing of the sale on the closing date ("Closing Date"), all liens, Encumbrances, claims, and adverse interests against the Property prior to the Closing Date have been unconditionally released, discharged and terminated, and that the conveyance of the Property, free and clear of any and all liens, Encumbrances, claims, and

8

adverse interests, has been effected and vested in the Buyer, (b) is and shall be

binding upon and govern the acts of all entities (including without limitation, all

filing agents, filing officers, title agents, title companies, recorders of mortgages,

recorders of deeds, registrars of deeds, registrars of patents, trademarks or other

intellectual property, administrative agencies, governmental departments,

secretaries of state, federal and local officials, and all other persons and entities

who may be required by operation of law, the duties of their office, or contract, to

accept, file, register or otherwise record or release any documents or instruments,

or who may be required to report or insure any title or state of title in or to the

Property, and (c) and estops and bars all persons, including governmental units,

from asserting any such liens, Encumbrances, claims and adverse interests against

Buyer and the Property.

      I.     Except as otherwise expressly provided in the Sale Documents, Buyer

is not assuming nor shall it be liable or responsible, as successor or otherwise, for

any of the liabilities, debts or obligations of the Seller.

      J.     The Sale Documents and related documents may be modified,

amended or supplemented by the parties thereto without further order of the Court,

provided that any such modification, amendment or supplement is not material.

      K.     This Order shall be binding upon and inure to the benefit of the

Debtors, Buyer, and their respective assignees.

9

L.      Buyer shall be and hereby is granted the protection of Section 363(m) of the Bankruptcy Code with respect to the sale of the Property approved and authorized herein in the event this Order or any authorization contained herein is reversed or modified on appeal.

M.      The stay provisions of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure is hereby waived and this Order shall be effective and enforceable immediately upon its entry by the Bankruptcy Court.

N.      This Court shall retain jurisdiction over the parties for the purpose of enforcing the terms and provisions of this Order and the Sale Documents, including but not limited  (a) to interpret, enforce and implement the terms and provisions of this Order, and of each of the agreements executed in connection therewith, (b) to compel delivery of the Property to the Buyer in accordance with the terms of the Sale Documents, and (c) to resolve any disputes, controversies or claims arising out of or relating to the sale.

O.      If at any time an order dismissing this bankruptcy case is entered, the terms of this Order shall continue in full and force and effect and this Court shall retain jurisdiction notwithstanding such dismissal, for the purpose of enforcing the terms of this Order.

N.      Pursuant to Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure and Rule 54(b) of the Federal Rules of Civil Procedure, the

Court determines that there is no just reason for delay and expressly directs that this

Order shall be entered as a final judgment.

**END OF ORDER**

**Approved as to form:**

/s/ Warren Kim
_____
WARREN KIM, ESQ.
Counsel for KH Gangwon Development, Inc.

/s/ Susan Tius
_____
SUSAN TIUS, ESQ.
STEPHEN K.C. MAU, ESQ.
Counsel for MRGC LLC and
Kehalani Commercial Associates LLC

Signature Waived
_____
NEIL J. VERBRUGGE, ESQ.
Counsel for Office of U.S. Trustee

Signature Waived
_____
ROSS UEHARA-TILTON, ESQ.
Counsel for Rudolph J. Anderson

/s/ Ted N. Pettit
_____
TED N. PETTIT, ESQ.
Counsel for Tianjin Dinghui Hongjun Equity Investment Partnership

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 545   Filed  07/06/22   Page 11 of 40

**SUBMITTED BY:**

CHOI & ITO
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com
aito@hibklaw.com

Attorneys for Debtors
and Debtors-in-Possession

# EXHIBIT A

PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT ("Agreement") is made and entered into as of May 2, 2022 ("Effective Date"), by and among HAWAII MVCC LLC ("MVCC"), HAWAII MGCW LLC ("MGCW"), MDRE LLC, MDRE 2 LLC, MDRE 3 LLC, MDRE 4 LLC, and MDRE 5 LLC (collectively, "Seller"), which are debtors and debtors-in-possession in jointly administered Chapter 11 cases pending in the United States Bankruptcy Court for the District of Hawaii (the "Bankruptcy Court") as case no. 21-00094 (the "Bankruptcy Case") and KH Gangwon Development, Inc. ("Buyer").

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and adequacy of which are hereby acknowledged, Seller and Buyer agree as follows:

1.    Property.  Seller hereby agrees to sell and convey to Buyer, and Buyer hereby agrees to purchase from Seller, subject to the terms and conditions set forth herein, the following:

1.1.    Land.  Seller's fee simple interest in the land described in Exhibit A attached hereto ("Land").

1.2.    Improvements.  Any and all improvements located on the Land ("Improvements"), which together with the Land are collectively referred to as the "Real Property".

1.3.    Tangible Property.  All tangible personal property (not part of the Improvements) owned by Seller located on the Real Property and used in connection with the ownership, use or operation of the golf course business on the Real Property, including without limitation, (i) all fixtures, furniture, furnishings, apparatus and fittings, equipment, machinery, motor vehicles, golf carts, appliances, signage, works of art, building supplies, tools, plans, and studies and reports, with such deletions and additions as may occur in the ordinary course of business, (ii) all computer hardware and software and telecommunications and information technology systems, and (iii) all goods of an expendable nature, including without limitation linens, tableware, china and glassware, and other supplies, and food and beverages which are usable and held for use in connection with the golf course business operated on the Real Property, with such deletions and additions as may occur in the ordinary course of business ("Tangible Property").

1.4.    Intangible Property.  All intangible property owned by Seller and used in connection with the ownership, use or operation of the Real Property and Tangible Property, including, without limitation: (i) all warranties and guaranties with respect to the Real Property and Tangible Property, to the extent assignable and for which consents to assignment have been obtained by Closing if so required; (ii) all engineering reports and studies, surveys, development and construction specifications, designs, schematics, drawings, renderings, and plans with respect to the Real Property and Tangible Property; (iii) all tradenames, service marks, and trademarks used in connection with the Real Property and the use and operation of the Real Property ("Trademarks"); (iv) all unexpired licenses, permits, certificates, and approvals issued by any governmental authority or any other applicable party, with respect to the construction, development, ownership, operation, leasing, maintenance, or use of the Real Property and Tangible Property or any portion thereof held by and issued to Seller; and (v) all books and records, accounting and financial files, human resource files, operating data, property tax bills, and correspondence **_excluding_** attorney client communications (collectively, together with the Assumed Contracts (as defined below), if any, "Intangible Property").  Intangible Property and Tangible Property are collectively referred to herein as the "Personal Property".

NOTWITHSTANDING THE FORGOING, all of the following shall be excluded from the Property (except as otherwise expressly set forth herein regarding Assumed Contracts): all contracts

Ex. A - 1

84781

and licenses and amendments thereto (collectively, "Contracts"), which Seller shall terminate as of Closing except for contracts and licenses, if any, which are designated in writing by Buyer in its sole discretion for assignment and assumption and which contracts and licenses are assignable and for which consents to assignment have been obtained by Closing if so required ("Assumed Contracts").

The Real Property and Personal Property are collectively referred to herein as the "Property".

2.    Purchase Price. The total purchase price of the Property is TWENTY MILLION SEVEN HUNDRED THOUSAND DOLLARS ($20,700,000.00) ("Purchase Price") and shall be payable by Buyer to Seller on or before the Closing Date, plus Buyer's share of prorations and Closing costs, as follows:

2.1.    Deposit. A deposit ("Deposit") of One Million Five Hundred Thousand and no/100ths U.S. DOLLARS ($1,500,000.00) by cashier's check, wire transfer or other immediately available funds shall be delivered to Escrow Agent, as hereinafter defined, within seven (7) Business Days, as hereinafter defined, after the Effective Date. If Buyer fails to deliver such Deposit within seven (7) Business Days after the Effective Date, at the option of Seller, this Agreement shall terminate. The Deposit shall be deposited by Escrow Agent into an interest-bearing account with interest to be credited to Buyer unless Seller is entitled to such interest as a part of liquidated damages as provided herein

2.2.    Treatment of Deposit. The Deposit, together with interest accrued thereon shall become non-refundable, except as otherwise provided in this Agreement. If Closing fails to occur due to a default by Buyer, the Deposit shall be treated as liquidated damages in accordance with, and subject to, Sections 10.3.2. and 17.1. of this Agreement. If Closing fails to occur due to a default by Seller, the Deposit shall be treated as liquidated damages in accordance with, and subject to, Sections 10.3.1. and 17.2. of this Agreement. The Deposit shall be credited and applied against the Purchase Price at the Closing.

2.3.    Balance of Purchase Price. The balance of the Purchase Price in the sum of NINETEEN MILLION TWO HUNDRED THOUSAND DOLLARS ($19,200,000.00), plus Buyer's share of prorations and Closing costs, by cashier's check, wire transfer or other immediately available funds, shall be paid by Buyer to Escrow Agent by 9:00 a.m. (Hawaii Standard Time) two (2) Business Days prior to the Scheduled Closing Date or as otherwise required by Escrow Agent to comply with the good funds requirement.

2.4.    Allocation of Purchase Price. Buyer and Seller, having exercised reasonable discretion in good faith, allocate the Purchase Price as follows:

| Property Category | Debtor Name | Tax Map Key No. (if applicable) | Purchase Price Allocation |
|---|---|---|---|
| *Resort (approximately 70.60 acres)* | | | |
| | MDRE LLC | (1) 8-4-002-051 | $          .00 |
| | MDRE LLC | (1) 8-4-002-075 | $          .00 |
| | MDRE 3 LLC | (1) 8-4-002-052 | $          .00 |
| | MDRE 4 LLC | (1) 8-4-002-054 | $          .00 |
| | MDRE 4 LLC | (1) 8-4-002-077 | $          .00 |
| | Hawaii MGCW | (1) 8-4-002-074 | $          .00 |

Ex. A - 2

| Property Category | Debtor Name | Tax Map Key No. (if applicable) | Purchase Price Allocation |
|---|---|---|---|
| | LLC | | |
| | | **SUBOTAL** | $ **.00** |
| *Residential (approximately 66.90 acres)* | | | |
| | MDRE 2 LLC | (1) 8-4-002-007 | $ .00 |
| | | **SUBOTAL** | $ **.00** |
| *Makaha East Golf Course (currently open)* | | | |
| | Hawaii MVCC LLC | (1) 8-4-002-005 | $ .00 |
| | Hawaii MVCC LLC | (1) 8-4-002-056 | $ .00 |
| | Hawaii MVCC LLC | (1) 8-4-002-057 | $ .00 |
| | Hawaii MVCC LLC | (1) 8-4-002-076 | $ .00 |
| | Hawaii MVCC LLC | (1) 8-4-023-014 | $ .00 |
| | Hawaii MVCC LLC | (1) 8-4-023-015 | $ .00 |
| | Hawaii MVCC LLC | (1) 8-4-024-001 | $ .00 |
| | | **SUBOTAL** | $ **.00** |
| *Makaha West Golf Course (currently closed)* | | | |
| | Hawaii MGCW LLC | (1) 8-4-002-053 | $ .00 |
| | Hawaii MGCW LLC | (1) 8-4-002-055 | $ .00 |
| | Hawaii MGCW LLC | (1) 8-4-002-067 | $ .00 |
| | | **SUBOTAL** | $ **.00** |
| *Infrastructure/Private Roads* | | | |
| | MDRE 5 LLC | (1) 8-4-002-070 | $ .00 |
| | MDRE 5 LLC | (1) 8-4-020-015 | $ .00 |
| | MDRE 5 LLC | (1) 8-4-19:32 | $ .00 |
| | MDRE 5 LLC | (1) 8-4-021-068 | $ .00 |
| | MDRE 5 LLC | (1) 8-4-002-012 | |
| | | **SUBTOTAL** | $500.00 |
| *TANGIBLE PROPERTY* | | | $ .00 |

Ex. A - 3

| Property Category | Debtor Name | Tax Map Key No. (if applicable) | Purchase Price Allocation |
|---|---|---|---|
| *INTANGIBLE PROPERTY* | | | $ .00 |
| | GRAND TOTAL: | | $20,700,000.00 |

3.   Conveyance of Property.

   3.1.   Real Property.  Seller shall convey the Real Property to Buyer by a duly executed Limited Warranty Deed.  Such conveyance shall be free and clear of all liens and encumbrances made by, through or under the Seller except for Permitted Exceptions, as hereinafter defined. The Limited Warranty Deed shall be in the form mutually agreed upon by the parties two (2) Business Days before the expiration of the Due Diligence Period ("Deed").

   3.2.   Personal Property.  Seller shall convey the Personal Property, excluding Assumed Contracts, if any, to Buyer by a duly executed Bill of Sale in the form mutually agreed upon by the parties two weeks before the Closing Date ("Bill of Sale").

   3.3.   Assumed Contracts.  Seller shall convey all Assumed Contracts, if any, and Buyer shall assume all Assumed Contracts, if any, as of the Closing Date by a duly executed Assignment and Assumption of Assumed Contracts in the form mutually agreed upon by the parties two weeks before the Closing Date ("Assignment and Assumption of Assumed Contracts").

4.   Buyer's Due Diligence.

   4.1.   Commencement.  The due diligence period shall commence upon the Effective Date and shall end on April 30, 2022 ("Due Diligence Period").

   4.2.   Due Diligence.

      4.2.1.   Due Diligence Investigation.  Buyer shall investigate, inspect and study the Property to determine if all aspects of the Property are acceptable to Buyer, in Buyer's sole and absolute discretion, including but not limited to, all improvements thereon and including, without limitation, status of title, survey results, zoning classification of the Property, availability and adequacy of all utilities, availability of all approvals and permits from the local municipality and all necessary country, state and federal agencies as required for Buyer's intended use of the Property, rezoning of the Property and receipt of special land use approval, if needed, for the Buyer's intended use of the Property, the economic suitability and feasibility of the Property for the Buyer's intended use, availability of financing acceptable to Buyer, availability of sufficient parking to serve Buyer's intended use, review and acceptance of environmental and geo-technical inspections, review and acceptance of the physical condition of the Property, including subsurface conditions, availability of adequate access to the Property by public or private roadway or acceptable easements, review of all service contracts, and statements of income and expenses pertaining to the Property and review and approval of such other matters as Buyer shall deem necessary for its intended use of the Property.  Buyer acknowledges receipt of the due diligence documents from the online Makaha Valley Deal room located at www.cbredealflow.com.

      4.2.2.   Access to the Property and Investigations.  Until the date of termination of this Agreement, Seller shall, subject to the terms of this Section 4.2.2., provide Buyer and Buyer's officers, employees, contractors, consultants and agents (collectively, "Buyer Parties") access to the Property for the purpose of physical investigation and inspection of the Property during normal business

Ex. A - 4

hours ("Permitted Inspections"); provided, however, Buyer and Buyer Parties must obtain Seller's prior written consent (which consent shall not be unreasonably withheld, delayed or conditioned) for any physically intrusive inspection or testing (e.g., core sampling) ("Invasive Testing"). Buyer and Buyer Parties may conduct Permitted Inspections upon not less than two (2) Business Days' prior written request to Seller (which request may be made by e-mail).

      4.2.2.1. Leased Spaces. In no event shall Buyer or Buyer Parties enter into or cause to be entered into any leased spaces of the Real Property or conduct or permit to be conducted any activities therein outside the ordinary course of Business without Seller's prior written consent (which consent shall not be unreasonably withheld, delayed or conditioned).

      4.2.2.2. Other Requirements. All Permitted Inspections, Invasive Testing, and any other inspections performed at the Real Property by Buyer and/or Buyer Parties must comply with all applicable federal, state, and local laws, rules, ordinances, regulations, and requirements ("Laws"). All Permitted Inspections, Invasive Testing, and any other inspections undertaken by Buyer or Buyer Parties shall be at Buyer's sole cost and expense.

      4.2.3. Indemnity. Buyer agrees to defend, indemnify and hold Seller and Seller's members, managers, officers, employees and agents (collectively, "Seller Parties") harmless from and against any and all losses, claims, liens, suits, damages and expenses, including but not limited to reasonable attorneys' fees ("Losses"), incurred in connection with or arising out of Buyer's and Buyer Parties' entry, inspections or tests of the Real Property; provided, however, in no event shall Buyer's indemnification and defense obligations hereunder be applicable to any Losses to the extent the same are (i) caused by the negligence or willful misconduct of any of the Seller Parties or (ii) due to the mere discovery of any pre-existing condition.

      4.3. Right of Termination. If Buyer determines, in its sole discretion, not to purchase the Property, Buyer may terminate this Agreement by written notice to Seller at any time prior to 5:00 p.m. Hawaii Standard Time on the last day of the Due Diligence Period. If Buyer fails to provide timely written notice of its intent to terminate this Agreement pursuant to the terms of this Section 4.3., Buyer will be deemed to have elected to terminate this Agreement. If Buyer timely terminates this Agreement in accordance with this Section 4.3. or is deemed to have terminated this Agreement as provided herein, the following provisions shall apply upon such termination (collectively, "Termination Provisions"): (i) each party shall promptly execute and deliver to Escrow Agent such documents as Escrow Agent may reasonably require to evidence such termination; (ii) Escrow Agent shall return all documents to the respective party who delivered such documents to Escrow Agent; (iii) Escrow Agent shall immediately return the Deposit to Buyer; (iv) the cancellation charges required to be paid to Escrow Agent shall be borne by Seller, and all other charges shall be borne by the party incurring same; and (v) the respective obligations of Buyer and Seller under this Agreement shall terminate except with respect to covenants and indemnifications which shall expressly survive termination.

      4.4. Condition of Property. Buyer understands that it will be accepting the Property "**AS IS**" "**WHERE IS**" without express or implied representation or warranty by Seller. Buyer therefore knows it must rely upon its own inspection, and its own professional advisors in its examination of the Property and all improvements thereon. Buyer recognizes that Seller would not permit the transfer of the Property except on an "**AS IS**" "**WHERE IS**" basis, and acknowledges that Seller has made no representations or warranties of any kind, express or implied, in connection with the Property. Buyer understands that Seller makes no warranties, express or implied, with respect to the completeness, accuracy or substance of any materials provided by Seller to Buyer with regard to the Property, and Buyer acknowledges that as a part of its investigation of the Property it assumes the risk of verifying any and all information in

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 545   Filed 07/06/22   Page 18 of 40

materials provided by Seller to Buyer regarding the Property. No person on behalf of Seller is authorized to make any representation, warranty, guaranty or promise except as set forth herein and no agreement, statement, representation or promise made by any person which is not contained herein shall be valid or binding on Seller. The only representations or warranties applicable to this sale are set forth herein.

5.    Title.

   5.1.    Title Policy. The Closing shall be subject to the condition precedent that TITLE GUARANTY OF HAWAII LLC ("Title Company") is irrevocably committed to issue to Buyer an Owner's ALTA policy of title insurance with extended coverage insuring the Real Property in an amount not less than the Purchase Price, together with such endorsements as required by Buyer and subject only to the Permitted Exceptions ("Title Policy"). Seller shall cooperate with the reasonable requests of Buyer and the Title Company in order for Title Company to commit to issue the Title Policy to Buyer by providing owner's declarations, including but not limited to affidavits in connection with the issuance of a mechanic's lien endorsement and matters relating to parties in possession, and providing documents in its actual possession.

   5.2.    Title Report; Title Objections; Subsequent Title Objections; Permitted Exceptions.

      5.2.1.    Title Report. Seller has delivered, and Buyer acknowledges delivery to Buyer of, the preliminary reports nos. 202052796, 202052799, 202052805, 202052806, 202052809, and 202052812 issued by Title Company dated as of December 10, 2020 (collectively, "Title Report").

      5.2.2.    Title Objections. If any exceptions appear in the Title Report that are unacceptable to Buyer, Buyer shall on or before the last day of the Due Diligence Period notify Seller in writing of such objections to title ("Title Objections"). Except for any Title Objections which are raised in accordance with this Section 5.2.2., Buyer shall be deemed to have accepted title as set forth in the Title Report. Within five (5) Business Days after Seller's receipt of the Title Objections, Seller shall notify Buyer in writing regarding whether Seller will (i) cause the removal or discharge of each of the Title Objections on or prior to Closing, (ii) arrange for the Title Company to insure over such Title Objections to the reasonable satisfaction of Buyer at Closing, or (iii) not take any action to remove, discharge or insure over such Title Objections. In the event Seller is unable or unwilling to cure all of the Title Objections to the satisfaction of Buyer, Buyer may either (a) waive such Title Objections and proceed to Closing or (b) terminate this Agreement by delivering notice thereof in writing to Seller no later than five (5) Business Days after Buyer's receipt of Seller's written notice to Buyer of Seller's decision not to cure all of the Title Objections or prior to the Scheduled Closing Date, whichever is later, in which event the Termination Provisions shall apply.

      5.2.3.    Subsequent Title Objections. Buyer shall have the right to object in writing to any exceptions to title that are not disclosed in the Title Report (collectively, "Subsequent Exceptions") within five (5) Business Days after Buyer first receives written notice thereof from Seller or the Title Company or Buyer's discovery thereof (or any time before Closing if such written notice is received after the sixth (6th) Business Day before the Scheduled Closing Date) ("Subsequent Title Objection Deadline"). Unless Buyer notifies Seller in writing that Buyer objects to the Subsequent Exceptions on or before the Subsequent Title Objection Deadline, the Subsequent Exceptions shall be deemed to constitute Permitted Exceptions. Subsequent Exceptions to which Buyer objects on or before the Subsequent Title Objection Deadline shall be herein collectively referred to as "Subsequent Title Objections". Seller shall notify Buyer in writing within five (5) Business Days after receipt of Buyer's written notice of Subsequent Title Objections (or any time before the Scheduled Closing Date if such written notice is received after the sixth (6th) Business Day before the Scheduled Closing Date) whether

U.S. Bankruptcy Court - Hawaii   #21-00094   Dkt # 545   Filed  07/06/22   Page 19 of 40

Seller will (i) cause the removal or discharge of each of the Subsequent Title Objections on or prior to Closing, (ii) arrange for the Title Company to insure over the Subsequent Title Objections to the reasonable satisfaction of Buyer at Closing, or (iii) not take any action to remove, discharge or insure over the Subsequent Title Objections. In the event Seller is unable or unwilling to cure all of the Subsequent Title Objections to the reasonable satisfaction of Buyer, Buyer may either (a) waive such Subsequent Title Objections and proceed to Closing or (b) terminate this Agreement by delivering notice thereof in writing to Seller no later than five (5) Business Days after Buyer's receipt of Seller's written notice to Buyer of Seller's decision not to cure all of the Subsequent Title Objections or prior to the Scheduled Closing Date, whichever is later, in which event the Termination Provisions shall apply.

   5.2.4. <u>Permitted Exceptions</u>.  The term "<u>Permitted Exceptions</u>" as used in this Agreement includes: (i) the lien of real property taxes and/or assessments not yet due and owing as of the Closing Date; (ii) those exceptions to title that were disclosed in the Title Report and which were expressly or deemed approved by Buyer pursuant to Section 5.2.2. of this Agreement; (iii) those exceptions to title, if any, that were disclosed in any title reports issued subsequent to the Title Report and which either (a) were not included in a Subsequent Title Objection or (b) were included in a Subsequent Title Objection but Seller elected not to take any action to remove, discharge or insure over such objections and Buyer did not elect to terminate this Agreement as provided above; and (iv) matters disclosed by any ALTA survey obtained in accordance with Section 5.3. of this Agreement and which either (a) were not included in a Survey Disapproval Notice as provided in Section 5.3. of this Agreement or (b) were included in a Survey Disapproval Notice but Seller was unable or unwilling to cure all matters disapproved by Buyer in its Survey Disapproval Notice and Buyer did not elect to terminate this Agreement as provided in Section 5.3. of this Agreement.  Notwithstanding the provisions of the immediately preceding sentence, Permitted Exceptions shall not include (i) liens securing a monetary obligation of Seller (such as a mortgage, assignment of leases and rents or a UCC financing statement naming Seller as a borrower, mortgagor, and/or debtor, liens and claims as to unpaid general excise tax, income tax or other taxes (including unpaid real property taxes and assessments that are due and owing)), (ii) statutory liens (such as mechanic's and materialmen's liens) securing an obligation incurred by Seller while Seller has owned the Property, (iii) judgment liens against Seller (collectively, sub-sections (i) through and including (iii) are referred to herein as "<u>Monetary Exceptions</u>"), (iv) Tenant Leases, and (v) Contracts (except for Assumed Contracts, if any).  Seller shall cause the discharge of all Monetary Exceptions and terminate all Tenant Leases and Contracts (except Assumed Contracts, if any) at its sole cost and expense at Closing.

   5.3. <u>Survey</u>.  Buyer may order and obtain an ALTA survey for the Property. The cost of the ALTA survey shall be paid by Seller. Buyer shall have the right to object to any matter revealed in the ALTA survey, by written notice given to Seller within five (5) Business Days after Buyer has received the ALTA survey or the last day of the Due Diligence Period, whichever is later ("<u>Survey Disapproval Notice</u>"). Buyer's failure to give Seller a Survey Disapproval Notice in accordance with the immediately preceding sentence shall be deemed to be an approval by Buyer of the ALTA survey and all matters which are revealed in the ALTA survey. If Buyer gives a Survey Disapproval Notice in accordance with this Section 5.3., Seller shall have five (5) Business Days following the receipt of the Survey Disapproval Notice to advise Buyer in writing that Seller intends to cure all matters disapproved by Buyer in its Survey Disapproval Notice or is unable or unwilling to cure all matters disapproved by Buyer in its Survey Disapproval Notice ("<u>Survey Cure Notice</u>"). In the event Seller fails to give Buyer the Survey Cure Notice or is unable or unwilling to cure all matters disapproved by Buyer in its Survey Disapproval Notice to the reasonable satisfaction of Buyer, Buyer may either (a) waive such matters disapproved by Buyer in its Survey Disapproval Notice and proceed to Closing or (b) terminate this Agreement by delivering notice thereof in writing to Seller no later than five (5) Business Days after Buyer's receipt of Seller's Survey Cure Notice indicating Seller's decision not to cure all such matters disapproved by Buyer in its Survey Disapproval Notice or prior to the Scheduled Closing Date, whichever is later, in which event the Termination Provisions shall apply.

Ex. A - 7

6.      Seller's Representations.

Seller, by Seller's execution of this Agreement, makes the following representations to Buyer, which representations shall be true and correct as of the Effective Date and as of the Closing Date, and shall survive the Closing:

6.1.      Organization and Standing. Each of the Seller is a limited liability company, duly organized, validly existing, and in good standing under the laws of the State of Hawaii and registered to do business in the State of Hawaii and in good standing under the laws of the State of Hawaii.

6.2.      Authority. Subject to entry of the Sale Order, as hereinafter defined, Seller has the requisite power and authority to enter into this Agreement to perform its obligations hereunder and to consummate the transactions contemplated hereby. The execution and delivery of this Agreement and the conveyance documents by Seller and the consummation by Seller of the transactions contemplated hereby have been duly authorized by its managers and members, and no other actions on the part of Seller, its members and managers are necessary to authorize the execution, delivery and performance of this Agreement, the conveyance documents and the transactions contemplated hereby. Subject to entry of the Sale Order, this Agreement and each other agreement required to be executed and delivered by Seller in connection herewith constitutes the valid and binding obligation of Seller enforceable against Seller in accordance with its terms.

6.3.      Consents. Except for the entry of the Sale Order in accordance with Section 8.6. of this Agreement approving this Agreement and the sale of the Property, no consent of, approval from, or notice to, any of natural person, corporation, partnership, limited liability company, limited liability partnership, joint venture, trust or trustee, estate, association, joint stock company, business trust, government or government entity and any other form of business or legal entity in its own or any representative capacity ("Person") is required with respect to the execution and delivery by Seller of this Agreement and of any document to be executed and delivered pursuant hereto by Seller and the performance by Seller of its obligations under this Agreement or any document to be executed and delivered pursuant hereto. The execution, delivery and performance of this Agreement and any documents to be delivered pursuant hereto by Seller and the consummation of the transactions contemplated hereby by Seller do not and will not (i) violate any provision of any organizational or governing document of Seller, (ii) violate any applicable law to which Seller is subject, (iii) result in the creation or imposition of any lien or encumbrance on the Property or any portion thereof, or (iv) result in a violation or breach, or constitute a default under, any agreements to which Seller is a party or by which it is otherwise bound.

6.4.      Real Property. Seller is the owner of the Property. Seller has not granted and has no knowledge of any outstanding rights to purchase the Property, including rights of first refusal, rights of first offer, purchase options or similar purchase rights with respect to the Property or any portion of the Property. Seller has not received any written notice from any governmental entities that all or any portion of the Real Property is in violation of any applicable local, state or federal law or regulation to which Seller or the Real Property are subject, which violation has not been cured or remedied prior to the date hereof. To the best of Seller's knowledge, the Real Property and Seller's operations thereon are not in violation of any applicable building code, fire code or any applicable zoning or land use or other local, state or federal law or regulation to which Seller or the Real Property are subject, which violation has not been cured or remedied prior to the date hereof. To the best of Seller's knowledge, the Property and Seller's operations on the Real Property are not subject to any federal, state, or local investigation of violations of the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12101 et seq., ("ADA"), any judicial or administrative proceeding alleging the material violation of or liability under ADA, any

Ex. A - 8

outstanding written order or agreement with any governmental entity or private party relating to claims under ADA, or any claims under ADA. To the best of Seller's knowledge, there are no Hazardous Materials, as hereinafter defined, in, on or about the Property except those Hazardous Materials required or customarily used in full compliance with applicable Hazardous Materials Laws, as hereinafter defined, in the ordinary course of operating a golf course, and to the best of Seller's knowledge, the Real Property and Seller's operations on the Real Property are not subject to any federal, state, or local investigation of Hazardous Materials claims, any judicial or administrative proceeding alleging the material violation of or liability under any of the Hazardous Materials Laws, or any outstanding written order or agreement with any governmental entity or private party relating to any of the Hazardous Materials Laws or Hazardous Materials claims. The term "Hazardous Materials" means and includes any and all radioactive materials, radon and asbestos, organic compounds known as polychlorinated biphenyls, chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, hazardous wastes, toxic substances, toxic pollutants, petroleum substances or petroleum products, pesticides, and any and all other substances or materials defined as, or included in the definition, of hazardous substances, hazardous wastes, hazardous materials, toxic substances or toxic pollutants under, or for the purposes of, any Hazardous Materials Law. The term "Hazardous Materials Laws" means and includes all federal, state or local laws, statutes, ordinances, rules, regulations and other requirements of any governmental authority or agency, now or hereafter in effect, relating to environmental conditions, industrial hygiene or hazardous substances, including without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. and the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq. To the best of Seller's knowledge, the Property and Seller's operations on the Real Property are not subject to any federal, state, or local investigation of claims with respect to mold or indoor air quality, any judicial or administrative proceeding alleging the material violation of or liability under any law with respect to mold or indoor air quality, any outstanding written order or agreement with any governmental entity or private party relating to any claim with respect to mold or indoor air quality, or any investigation or claim with respect to mold or indoor air quality. Seller has not received any notice of and is not aware of any pending or, to the best of Seller's knowledge, threatened condemnation, eminent domain or similar proceedings affecting the Property, or any portion thereof. To the best of Seller's knowledge, that there are no material defects in the design or construction of the improvements located on the Real Property. The Real Property is served by water, electricity, sewer, gas, telephone and cable. The Real Property abuts or has legal access to a public street or highway.

6.5.    Personal Property. Seller owns all the Personal Property free and clear of any encumbrances except as disclosed by the Title Report. None of the Personal Property is leased pursuant to a lease.

6.6.    Reserved.

6.7.    Contracts. Seller has delivered true, correct and complete copies of all Contracts to Buyer. To the best of Seller's knowledge, there are no outstanding material defaults, disputes, claims, defenses, rights of set off or events which with the giving of notice or the passage of time or both could become a default under the Contracts.

6.8.    Litigation. Except as otherwise disclosed in writing delivered by Seller to Buyer, Seller has not received any notice of and is not aware of any legal actions, suits, or other legal or administrative proceedings, including condemnation cases, pending or, to the best of Seller's knowledge, threatened against the Property or against Seller, and there are no outstanding judgments against Seller. There is no pending or to the best of Seller's knowledge, threatened litigation which, if adversely determined, would restrain the consummation of any of the transactions referred to herein, or declare illegal, invalid or non-binding any of the covenants or obligations of Seller herein.

6.9.     Taxes.  Except for real property taxes, Seller has paid any and all local, state and federal taxes required to be paid by Seller, including, without limitation, real and personal property taxes and assessments, employee withholding taxes, conveyance taxes, and general excise taxes (exclusive of prorations to be done through the Closing Date).  To the best of Seller's knowledge, there have been no supplemental or special taxes assessed against the Property.

6.10.    Licenses and Permits.  Seller has delivered true, correct and complete copies of all licenses and permits with respect to the Property to Buyer.  To the best of Seller's knowledge, all the licenses and permits are in full force and effect, and there is no action or proceeding pending or threatened to revoke any license or permit.  To the best of Seller's knowledge, Seller holds all licenses and permits necessary to operate the Property.  Seller shall not modify or rescind any of the licenses and permits prior to the Closing Date and shall use its best efforts to obtain any renewal or extension of licenses and permits as may be required by law in the ordinary course of business.  Seller has not taken any action, and to the best of Seller's knowledge no condition presently exists arising out of the Seller's activities in connection with the operation of the Property, which would preclude transfer and/or issuance of any licenses or permits which may be transferred and/or issued to Buyer as provided in this Agreement.

6.11.    Employees.  Seller is a party to a collective bargaining agreement for 5 of its approximately 18 employees which expires on February 28, 2023.  There is no pending or, to Seller's knowledge, threatened employee union organizing effort, strike, work stoppage, slowdown, picketing or material labor dispute with respect to its employees.  To Seller's knowledge, no petition has been filed, nor has any proceeding been instituted by any of the employees with any labor relations board or commission seeking recognition of a collective bargaining representative.

6.12.    Financial Information.  All financial statements prepared by Seller or any Affiliate, as hereinafter defined, of Seller or any property manager for the Property and delivered to Buyer by Seller or any Affiliate of Seller were relied on by Seller in its operation of the Property and, to the best of Seller's knowledge, are materially true and correct.

6.13.    Seller is Not a Foreign Person; OFAC.  Seller is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986, as amended, or a "nonresident person" as that term is used in Section 235-68 of the Hawaii Revised Statutes, as amended, and the regulations relating thereto.  Seller is a disregarded entity as defined in Section 1.1445-2(b)(2)(iii) of the Income Tax Regulations, and Pacific Links U.S. Holdings, Inc., a Delaware corporation,  is the owner of Seller who shall be treated as the transferor of the Property for purposes of Section 1.1445-2(b)(2)(iii) of the Income Tax Regulations.  Neither Seller nor, to Seller's knowledge, any of its equity owners, is a Person with whom U.S. Persons are restricted from doing business under regulations of the Office of Foreign Assets Control of the Department of the Treasury ("OFAC") or under any similar statute, executive order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other similar governmental action.

6.14.    Seller's Knowledge.  The representations and warranties set forth in this Section 6 are made as of the Effective Date and as of the Closing Date.  The phrase to the "best of Seller's knowledge" or to "Seller's knowledge" shall be deemed to mean Seller's knowledge after a commercially reasonable investigation of the matters to which such knowledge, or the absence thereof, pertain, including without limitation review of the contents of the files, documents, and materials made available to or disclosed to Buyer and the contents of files maintained by Seller or any of the Seller Parties. Where representations and warranties are made in this Agreement to the "best of Seller's knowledge" or to "Seller's knowledge", such phrases shall mean the knowledge of Seller Parties, who it is represented to have prepared and/or reviewed and are knowledgeable about the facts and matters which serve as the basis of Seller's representations and warranties.

Ex. A - 10

7.     <u>Buyer's Representations</u>. Buyer, by Buyer's execution of this Agreement, makes the following representations to Seller, which representations shall be true and correct as of the Effective Date and as of the Closing Date and shall survive the Closing in accordance with and pursuant to Section 7.6. of this Agreement:

    7.1.     <u>Organization</u>. Buyer is a corporation organized and validly existing and in good standing under the laws of South Korea. Buyer has all requisite power and authority to enter into this Agreement and to consummate the transactions contemplated hereunder.

    7.2.     <u>Due Authorization</u>. All the documents executed by Buyer which are to be delivered to Seller at the Closing are, and at the Closing will be, duly authorized, executed, and delivered by Buyer and will be legal, valid and binding obligations of Buyer in accordance with their respective terms. Prior to closing, Buyer shall form a shall form a special purpose limited liability company or a corporation to take title to the Property.

    7.3.     <u>Consents</u>. No consent, notice or approval of any Person is required with respect to the execution and delivery of this Agreement and any document pursuant hereto by Buyer or the performance by Buyer of its obligations under this Agreement or any document to be delivered pursuant hereto. The execution, delivery and performance of this Agreement and any document to be delivered pursuant hereto by Buyer and the consummation of the transactions contemplated hereby by Buyer do not violate any provision of any organizational document of Buyer. Neither the execution and delivery of this Agreement, or the consummation of the transactions contemplated hereby, will violate any statute, regulation, rule, injunction, judgment, order, ruling, or other restriction of any government, governmental agency, or court to which Buyer is subject or the provisions of any agreement to which Buyer is a party or by which it is bound.

    7.4.     <u>No Pending Actions</u>. No action at law or in equity and no investigation or other proceeding whatsoever is now pending or threatened to liquidate or dissolve Buyer, or to declare any of its rights, powers or privileges to be null or void or otherwise than in full force and effect.

    7.5.     <u>OFAC</u>. Neither Buyer nor, to Buyer's knowledge, any of its equity owners, is a Person with whom U.S. Persons are restricted from doing business under regulations of the OFAC or under any similar statute, executive order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other similar governmental action.

    7.6.     <u>Survival</u>. The representations and warranties in this Section 7 and in any document executed by Buyer pursuant to this Agreement shall survive the Closing until and including the one hundred eightieth (180th) day after the Closing Date, at which time such representations and warranties shall terminate and be of no further force or effect except with respect to claims asserted during such one hundred eighty (180) day period. Any claim for breach of a representation or warranty may be asserted only during the Limitation Period.

8.     <u>Covenants of the Parties</u>.

    8.1.     <u>Operation</u>. Seller shall cause the Real Property to be managed and operated in a manner consistent with past practices and policies, subject to reasonable wear and tear, taking by eminent domain or unavoidable casualty excepted. Seller shall purchase a tail insurance policy to cover liability arising from claims accruing prior to Closing.

Ex. A - 11

8.2.     Marketing. Seller shall not solicit backup offers and enter into discussions, negotiations, or any other communications concerning or related to the sale of the Property with any third party until termination of this Agreement, except as set forth in Section 8.6. of this Agreement.

8.3.     Reserved.

8.4.     Employment Matters.

8.4.1.     Termination by Seller. As of the Closing Date, Seller shall terminate or cause the termination of employment of all Employees. Seller shall be responsible for all wages, bonuses, other compensation, social security taxes, and other payroll taxes, including unemployment contributions, for the Employees accrued before the Closing Date and for benefit payments payable to the Employees accrued before the Closing Date.  Seller shall pay to the appropriate governmental agencies on or before the date such taxes become due, including all payroll taxes required to be withheld from such wages. Seller shall issue a Form W-2 with respect to each such Employee for wages paid before the Closing Date. Seller shall waive its unemployment compensation experience record so that it may be transferred to Buyer.

8.4.2.     Plant Closing Notices.  Within five (5) Business Days after the Effective Date, Seller shall deliver, at its sole cost and expense, all necessary plant closing notices to the applicable governmental agencies and Employees.

8.4.3.     Re-Hire by Buyer. Buyer may, in its sole discretion, offer employment to any Employee as of the Closing Date on terms and conditions determined by Buyer in its sole discretion. Employees who accept such offers of employment are referred to collectively herein as the "Transferred Employees". Seller shall transfer all personnel files for Transferred Employees to Buyer at Closing, provided that Seller shall have reasonable access to such personnel files after Closing with respect to employment matters for which Seller is responsible.

8.4.4.     Employee Rights.  Nothing in this Agreement shall be deemed to confer upon any Person any rights under or with respect to any plan, program, or arrangement described in or contemplated by this Agreement, and each Person shall be entitled to look only to the express terms of any such plan, program, or arrangement for such Person's rights thereunder.

8.4.5.     Survival.  This Section 8.4. shall survive the Closing Date and recordation of the Deed.

8.5.     Reserved.

8.6.     Seller's Bankruptcy and Bankruptcy Court Approval.

8.6.1     Bankruptcy Court Approval.

8.6.1.1. Seller and Buyer acknowledge that this Agreement and the sale of the Property are subject to Bankruptcy Court approval in accordance with the terms of this Agreement including this Section 8.6. and entry of a final unappealable Sale Order confirming such approval.  The entry of such Sale Order shall be a Condition Precedent to this Agreement in favor of Buyer.

8.6.1.2. Seller shall promptly seek approval of this Agreement ("Sale Motion") upon the receipt of Buyer's election to proceed with the transactions contemplated herein, and shall exercise good faith and use reasonable efforts to obtain approval of the Sale Order, subject to

Ex. A - 12

overbids on the terms set forth herein. The term "Sale Order" shall mean a final order of the Bankruptcy Court authorizing the sale of the Property to Buyer in accordance with the terms of this Agreement and in a form satisfactory to Buyer.

8.6.1.3. Seller agrees to proceed in good faith to obtain Bankruptcy Court approval of the sale contemplated herein with a determination that Buyer is in good faith pursuant to Bankruptcy Code Section 363(m) and to file such declarations and other evidence as may be required to support a finding of good faith.

8.6.1.4. From and after the Effective Date and prior to the Closing or the termination of this Agreement, Seller shall not take any action which is intended to (or is reasonably likely to), or fail to take any action the intent (or the reasonably likely result) of which failure to act is to, result in the reversal, voiding, modification or staying of this Agreement.

8.6.2. <u>Bankruptcy Filings</u>. Seller shall use reasonable efforts to provide such prior notice to Buyer as may be reasonable under the circumstances before the filing any papers that relate, in whole or in part, to this Agreement or to Buyer or its agents or representatives. Notwithstanding the foregoing, Seller shall not file any pleadings, motions, notices, statements, schedules, applications, reports and other papers in the Bankruptcy Case that would, or would reasonably be expected to, alter, modify, limit or restrict Buyer's rights or remedies pursuant to this Agreement, without the prior written consent of Buyer (which may be granted or withheld in Buyer's sole discretion).

8.6.3. <u>Bidding Procedures</u>. Seller reserves the right to obtain a higher bid for the Property pursuant to the following bidding procedures ("Bidding Procedures"):

8.6.3.1. Competing offers to acquire the Property shall be submitted in writing to Seller's counsel on or before 4:00 p.m. Hawaii Standard Time two (2) days prior to the Auction (as hereinafter defined).

8.6.3.2. Competing offers shall provide for an all-cash purchase price to be paid to Seller that exceeds the Purchase Price by at least SEVEN HUNDRED THOUSAND AND NO/100 DOLLARS ($700,000.00), which reflects a THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($300,000.00) initial overbid plus the FOUR HUNDRED THOUSAND AND NO/100 DOLLARS ($400,000.00) Break-Up Fee (as hereinafter defined).

8.6.3.3. Competing offers shall be accompanied by a purchase agreement in form and substance substantially identical this Agreement, together with a redlined, marked copy showing all changes to this Agreement, except there shall be no Condition Precedents or contingencies other than those expressly set forth in Section 10.1 of this Agreement (excluding, however, the Condition Precedent for financing set forth in Sections 8.3. and 10.1.5. of this Agreement), no due diligence provision and no right to terminate after a due diligence review, no break-up fee, topping fee, termination fee, expense reimbursement or similar type of payment, no financing conditions, and no internal approval conditions ("Competing Agreement").

8.6.3.4. The Competing Agreement shall not be subject to a due diligence period or right to terminate after a due diligence review or any other due diligence contingencies. Any qualified bidder may have an opportunity to evaluate the Property prior to the submission of a Competing Agreement. Prior to being permitted to conduct any due diligence, a party must execute a confidentiality agreement in form and substance satisfactory to Seller. Seller will provide parties interested in acquiring the Property with reasonable access to Seller's books, records, independent accountants and legal counsel for the purpose of conducting such due diligence. Seller shall not be

Ex. A - 13

required to provide confidential or proprietary information to a potential buyer if Seller reasonably believes that such disclosure would be detrimental to the interests of Seller. All due diligence review must be completed by all qualified bidders prior to submitting a Competing Agreement.

8.6.3.5. Competing offers must remain open until the conclusion of the hearing on the Sale Motion.

8.6.3.6. Competing offers must be accompanied by admissible evidence in the form of affidavits or declarations establishing the bidder's good faith within the meaning of Section 363(m) of the Bankruptcy Code.

8.6.3.7. Competing offers must be accompanied by admissible evidence in the form of affidavits or declarations establishing that the bidder is capable and qualified, financially, legally, and otherwise, of unconditionally performing all obligations under the Competing Agreement.

8.6.3.8. Competing offers must contain information, acceptable to Seller, which demonstrates to Seller in its sole and absolute discretion that the potential buyer has sufficient cash on hand or a binding financial commitment from an established and financially sound financial institution to ensure such potential buyer's ability to meet its commitments and otherwise fully perform pursuant to its offer.

8.6.3.9. Competing offers must disclose the identity of the potential buyer, including confirmation that its bid is made as principal for the potential buyer's account and, if not, the basis upon which the potential buyer is acting and the identities of all other participants, if any. The potential buyer must also disclose any agreements or understandings between the potential buyer and any third party with respect to the Property. The offer must also be accompanied by sufficient indicia that the person submitting the offer is legally empowered, by power of attorney or otherwise, to (i) bid on behalf of the potential buyer, and (ii) complete and sign, on behalf of the potential buyer, a binding and enforceable Competing Agreement.

8.6.3.10. Competing offers may not request or entitle the potential buyer to any fee, including, but not limited to, a break-up fee, topping fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a competing offer, a potential buyer shall be deemed to waive the right to pursue a substantial contribution claim under Section 503 of the Bankruptcy Code related in any way to the sale of the Property.

8.6.3.11. All competing offers must be accompanied by a cashier's check made payable to the order of Seller in an amount of ONE MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($1,500,000.00) ("Over Bidder's Deposit"), and further provide that (1) if the Bankruptcy Court approves a sale of the Property to that bidder, Seller may retain the Over Bidder's Deposit for application as a non-refundable deposit to be applied against the purchase price at the closing of the transaction, and (2) if the Bankruptcy Court does not approve a sale of the Property to that bidder, Seller will return the Over Bidder's Deposit within five (5) Business Days after entry of the order of the Bankruptcy Court disapproving such sale.

8.6.3.12. All competing offers must contain a proposed scheduled closing date that is not later than the Scheduled Closing Date set forth in this Agreement.

8.6.3.13. In order to provide adequate assurance of future performance under the executory contracts and leases designated for assignment and assumption, all qualified bidders

Ex. A - 14

shall submit a declaration with evidence demonstrating that they have sufficient financial resources to perform fully and timely under any assumed contracts and leases.

If any bidders have submitted a qualifying competing offer in accordance with these Bidding Procedures (each such bid, a "Qualified Bid"), then a public auction of the Property ("Auction") shall be held at a time and location to be subsequently designated. Members of the public may attend the Auction, it being understood that such members cannot impede the progress of the Auction. A court reporter will transcribe the Auction and a copy of the transcript will be filed with the Bankruptcy Court as soon as is reasonably possible. The Auction shall be governed by the following procedures:

i. All bidders shall be deemed to have consented to the jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction or the sale of the Property.

ii. Bidding will commence at the amount of the highest Qualified Bid.

iii. Each subsequent bid shall be in increments of no less than ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00). In the event Buyer makes any overbids, Buyer shall not be required to provide an Over Bidder's Deposit. Seller recognizes that in the event of overbidding, the net economic value to the bankruptcy estate will be reduced by the Break-Up Fee and also wishes to incentivize Buyer to bid further. Consequently, Seller agrees that in each round of bidding, Buyer shall receive a bid credit in the amount of the Break-Up Fee.

iv. Any bidder that fails to submit a timely, conforming Qualified Bid, as set forth above, shall be disqualified from bidding for the Property at the Auction, shall not be permitted to make any statements on the record at the Auction, and shall have no standing at the hearing on the Sale Motion.

v. All qualified bidders must appear in person at the Auction, or through a duly authorized representative. If multiple Qualifying Bids satisfying all Auction requirements are received, each party shall have the right to continue to improve its bid at the Auction. The Auction will be an 'open format' such that all participants are contemporaneously to be made aware of the particulars of any Qualified Bids that are submitted.

vi. Seller may conduct the Auction in all respects in the manner it determines will result in the highest, best or otherwise financially superior offer for the Property provided that such manner is not inconsistent with the provisions of the Sale Motion or the Bankruptcy Code.

vii. At the conclusion of the Auction, Seller may enter into a purchase and sale agreement with a back-up prospective buyer ("Back-up Buyer").

viii. If no timely, conforming Qualified Bid is submitted, Seller will request at the hearing on the Sale Motion that the Bankruptcy Court approve the proposed sale to Buyer.

8.6.4.   Break-Up Fee. Upon Seller's consummation of a transaction other than a sale to Buyer, Seller shall request authorization of the Bankruptcy Court to pay Buyer's fees and expenses associated with the contemplated sale of the Property in an amount of Buyer's fees and expenses, agreed by the parties to be Four Hundred Thousand AND NO/100 DOLLARS ($400,000.00). The Break-Up Fee will be subject to Bankruptcy Court approval and shall constitute a super-priority administrative expense of Seller under Section 364(c)(l) of the Bankruptcy Code with priority over any and all

administrative expenses of any kind, including those specified in Sections 503(b) or 507(b) of the Bankruptcy Code.

8.6.5. <u>Appeal of Sale Order</u>. In the event an appeal is taken or a stay pending appeal is requested from the Sale Order, Seller shall immediately notify Buyer of such appeal or stay request and shall promptly provide to Buyer a copy of the related notice of appeal or order of stay. Seller shall also provide Buyer with written notice of any motion or application filed in connection with any notice of appeal or order of stay. In the event of an appeal of the Sale Order, Seller shall be primarily responsible for drafting pleadings and attending hearings as necessary to defend against the appeal.

9. <u>Closing</u>.

9.1. <u>Scheduled Closing Date</u>. The closing shall occur within thirty (30) day after entry of the Sale Order (subject to satisfaction or waiver of all Conditions Precedent) ("<u>Scheduled Closing Date</u>"); provided that in the event that the Closing does not occur on or before August 2, 2022 for any reason other than a material default by Buyer, Buyer may in its sole discretion terminate this Agreement by written notice to Seller in which event the Termination Provisions shall apply.

9.2. <u>Closing</u>. The terms "<u>Closing</u>" or "<u>Closing Date</u>" shall mean the time and date the Deed is recorded in the Bureau of Conveyances of the State of Hawaii. Possession of the Property shall be delivered to Buyer upon the Closing. This transaction shall be escrowed with TITLE GUARANTY ESCROW SERVICES, INC. ("<u>Escrow Agent</u>"). The escrow officer shall be *Jeremy Trueblood* or another senior escrow officer in the event *Jeremy Trueblood* is unavailable.

9.3. <u>Escrow Instructions</u>. The terms and conditions set forth in this Agreement shall constitute both an agreement between Seller and Buyer and escrow instructions for Escrow Agent. Seller and Buyer shall promptly execute and deliver to Escrow Agent any separate or additional escrow instructions requested by Escrow Agent that are consistent with the terms of this Agreement. Any separate or additional instructions shall not modify or amend this Agreement unless expressly set forth by the mutual consent of Seller and Buyer and to the extent of any conflict between this Agreement and any such separate or additional instructions, the provisions of this Agreement shall control.

10. <u>Conditions to the Closing</u>. The following shall be conditions precedent ("<u>Conditions Precedent</u>") to the obligation of the parties to the Closing hereunder:

10.1. <u>Conditions Precedent to Buyer's Obligations</u>. Buyer's obligations under this Agreement are subject to the fulfillment of each of the following Conditions Precedent which are included herein for the benefit of Buyer and may be waived or asserted only by Buyer:

10.1.1. <u>Seller's Performance</u>. Seller is not in default as to its obligations under this Agreement;

10.1.2. <u>Seller's Representations</u>. All of Seller's representations as set forth herein shall be true and correct in all material respects as of the Effective Date and on the Closing Date;

10.1.3. <u>Title Policy Commitment</u>. Title Company shall be unconditionally committed to issue the Title Policy to Buyer at the Closing;

10.1.4. <u>No Material Adverse Change</u>. There shall not have occurred any material adverse change with respect to the condition of the Property between the Effective Date and the Closing Date;

Ex. A - 16

10.1.5.  RESERVED.

10.1.6.  RESERVED.

10.1.7.  Bankruptcy Court Approval.  A final non-appealable Sale Order shall have been entered by the Bankruptcy Court approving this Agreement and Seller has complied with all of the provisions of Section 8.6. of this Agreement.

10.2.  Conditions Precedent to Seller's Obligation to Close. Seller's obligations under this Agreement are subject to the fulfillment of each of the following Conditions Precedent which are included herein for the benefit of Seller and may be waived or asserted only by Seller.

10.2.1.  Buyer's Performance. Buyer is not in default as to its obligations under this Agreement;

10.2.2.  Buyer's Representations. All of Buyer's representations as set forth herein shall be true and correct in all material respects as of the Effective Date and on the Closing Date; and

10.2.3.  Patriot Act Compliance. Seller shall have confirmed Buyer's compliance with the requirements of the USA Patriot Act of 2001, 31 U.S.C. Section 5318.

10.3.  Failure of Conditions Precedent.

10.3.1.  Failure of Buyer's Conditions Precedent. If any of the Conditions Precedent set forth in Sections 10.1.1. and/or 10.1.2. above are not satisfied or waived in writing by Buyer on or prior to the Scheduled Closing Date, Buyer may elect, at its option, (i) to terminate this Agreement or bring a suit seeking any or all legal and equitable remedies, in accordance with and subject to Sections 8.6. and 17.2. of this Agreement, or (ii) to waive the unsatisfied conditions and any default in writing and proceed to Closing, and if necessary seek specific performance compelling the conveyance of the Property, in accordance with and subject to Sections 8.6. and 17.2. of this Agreement.

If the Conditions Precedent set forth in Sections 10.1.3., 10.1.4., 10.1.5., 10.1.6. and/or 10.1.7. above are not satisfied on or prior to the Scheduled Closing Date, this Agreement shall terminate and the Termination Provisions shall apply.

10.3.2.  Failure of Seller's Conditions Precedent. If any of the Conditions Precedent set forth in Sections 10.2.1., 10.2.2. and/or 10.2.3. above are not satisfied or waived in writing by Seller on or prior to the Scheduled Closing Date, Seller may elect, at its option, (i) to terminate this Agreement and retain the Deposit as liquidated damages in accordance with and subject to Sections 8.6. and 17.1. of this Agreement, or (ii) to waive the unsatisfied conditions in writing and proceed to Closing.

11.  Seller's Obligations at Closing. Except as noted below, two (2) Business Days prior to the Closing Date, Seller shall, at Seller's expense, deliver the following to Escrow Agent:

11.1.  Two (2) duplicate originals each of:

(i)  Deed, duly executed and acknowledged by Seller;

(ii)  Bill of Sale, duly executed by Seller;

Ex. A - 17

(iii) Assignment and Assumption of Assumed Contracts, duly executed by Seller, if applicable;

11.2. State of Hawaii conveyance tax certificate, duly executed by Seller;

11.3. A certificate or registration of title for any motor vehicle, duly executed by Seller;

11.4. Assignments of Trademarks and domain names, in forms appropriate for each type of Trademark and domain name, duly executed by Seller;

11.5. A certification in the form required by Section 1445(e) of the Internal Revenue Code, duly executed by Seller;

11.6. A certification in the form required by Section 235-68 of the Hawaii Revised Statutes (Form N-289), as amended, duly executed by Seller;

11.7. A Sale Order expressly providing that the Property is sold free and clear of liens and encumbrances, including any and all taxes owing by Seller to the Hawaii State Department of Taxation;

11.8. Such other documents, consents and affidavits reasonably necessary to effectuate the valid consummation of the transaction described in this Agreement; and

11.9. By 9:00 a.m. (Hawaii Standard Time) two (2) Business Day prior to the Closing Date (or such other time as Escrow Agent may permit), escrow funds to pay Seller's share of prorations, one-half (1/2) of the escrow fees, all recording fees, the conveyance tax, the premiums for a standard owner's policy in the amount of the Purchase Price and an extended Owner's ALTA title insurance policy *excluding the premiums for any special title endorsements required by Buyer*, the cost of all surveys including any ALTA survey ordered by Buyer, and such other costs and expenses which are to be paid by Seller under this Agreement. Seller may, as an alternative to providing such funds, deposit with escrow a written authorization to Escrow Agent providing for a deduction of the Closing costs from the proceeds to be disbursed to Seller by Escrow Agent on Closing. Seller shall pay its own attorneys' fees outside of escrow.

12. <u>Buyer's Obligations at Closing</u>. Except as noted below, two (2) Business Days prior to the Closing Date, Buyer shall deliver the following to Escrow Agent:

12.1. Two (2) duplicate originals of the Assignment and Assumption of Assumed Contracts, duly executed by Buyer, if applicable;

12.2. State of Hawaii conveyance tax certificate appropriately completed and duly executed by Buyer;

12.3. Assignments of Trademarks and domain names, in forms appropriate for each type of Trademark and domain name, duly executed by Buyer, if Buyer's signature is required;

12.4. A corporate consent of Buyer's board of directors authorizing (i) the purchase of the Property from Seller pursuant to the terms and conditions hereof, (ii) the execution and delivery of all instruments of conveyance, and (iii) authorizing the individual executing the instruments of conveyance to execute, acknowledge and deliver such instruments to Seller on behalf of Buyer;

12.5.    Such other documents, consents and affidavits reasonably necessary to effect the valid consummation of the transaction described in this Agreement; and

12.6.    By 9:00 a.m. (Hawaii Standard Time) two (2) Business Day prior to the Closing Date (or such other time as Escrow Agent may permit), escrow funds in the amount of the cash balance of the Purchase Price, Buyer's share of prorations, one-half (1/2) of the escrow fees, the premiums for any special title endorsements required by Buyer, and such other funds as are necessary to cover any other costs and expenses which are to be paid by Buyer under this Agreement. Buyer shall pay its own attorneys' fees outside of escrow.

13.    Prorations.

13.1.    Adjustments and Prorations. The following matters and items pertaining to the Property shall be prorated as of 12:01 a.m. (Hawaii Standard Time) on the Closing Date ("Cutoff Time"). Net credits in favor of Buyer shall be deducted from the balance of the Purchase Price at the Closing and net credits in favor of Seller shall be paid by Buyer in cash at the Closing. Except as otherwise provided herein, all such allocations and/or prorations shall be made in accordance with generally accepted accounting principles and practices. Estimated prorations shall be adjusted after Closing as set forth herein.

13.1.1.    Utility Charges. Seller shall provide written notice to the utility companies of the pending change of ownership of the Property not less than five (5) calendar days prior to the Closing Date and shall concurrently therewith deliver copies of such notices to Buyer. To the extent reasonably practicable, Seller shall cause all the utility meters to be read on the Closing Date and will be responsible for the cost of all utilities used prior to the Cutoff Time; provided, however, that if it is not reasonably practicable to cause such utility meters to be read as of the Cutoff Time, then the parties shall prorate utility charges upon the Closing on the basis of estimated utility costs and adjust the proration of the utility costs after Closing as set forth herein.

13.1.2.    Real Estate Taxes and Special Assessments. All real property taxes and assessments for the fiscal year in which the Closing shall occur shall be prorated as of the Cutoff Time. Installments for any special assessments for improvements to the Property which accrue prior to the Cutoff Time shall be paid by Seller, and installments for any special assessments for improvements to the Property which accrue after the Cutoff Time shall be paid by Buyer. If the amount of any such item is not ascertainable as of the Cutoff Time, the credit therefor shall be based on the most recent available bill or on such other basis as Escrow Agent may require, subject to adjustment after Closing as set forth herein.

13.1.3.    Insurance. Buyer may not assume any of the existing insurance policies maintained by Seller in connection with the Property. Seller shall be entitled to any refunds due for existing policies upon receipt of the same by Seller or Buyer.

13.1.4. Other Apportionments. Such other items as are provided for in this Agreement or as are normally prorated and adjusted in the sale of real property in the State of Hawaii.

13.2.    Proration Statement.

13.2.1.    Cooperation. Seller and Buyer shall cooperate with each other to make such inventories, examinations and audits of the Property, and of the books and records of the Property, as each party may deem necessary to make the adjustments and prorations required hereunder or under any other provisions of this Agreement. Based upon such audits and inventories, Seller and Buyer will jointly prepare, no later than five (5) Business Days prior to the Closing, a proration estimate. Such proration

Ex. A - 19

estimate shall contain the parties' reasonable estimate of the amounts of the items requiring prorations and adjustments in this Agreement and shall be subject to a final proration as soon as the amount of each item can be ascertained with reasonable certainty. The amounts set forth in such proration estimate shall be the basis upon which the prorations and adjustments provided for herein shall be made at the Closing.

          13.2.2. <u>Final Adjustments</u>. Seller and Buyer agree to make a final accounting of the adjustments and prorations within ninety (90) days after the Closing Date. If the parties cannot agree on such final accounting then the parties shall submit such dispute to a CPA firm mutually agreed to by the parties ("<u>Outside Accountant</u>"). The Outside Accountant shall be furnished all records relevant to such determination. The determination of the Outside Accountant, which shall be made within a period of thirty (30) days after such submittal by the parties and receipt of such records, shall be conclusive in the absence of manifest error and each party may enter judgment thereon. The foregoing limitation shall not apply to any item which, by its nature, cannot be finally determined within the period specified. However, no further adjustments shall be made beyond one (1) year after the Closing Date. The fees and expenses of the Outside Accountant shall be paid equally by Buyer and Seller. Either party owing the other party a sum of money based on adjustments or prorations after the Closing Date made pursuant to the final proration shall promptly pay that sum to the other party within ten (10) Business Days after delivery of a bill therefor, together with interest thereon at the rate of twelve percent (12%) per annum from the Closing Date to the date of payment if payment is not made within such ten (10) Business Day period. This Section shall survive the Closing.

     14.    <u>Brokerage</u>. Seller and Buyer acknowledge and agree that CBRE, Inc. ("<u>CBRE</u>") is representing the Seller in connection with the sale of the Property and Business and the Seller is, subject to Bankruptcy Court approval, responsible for the brokerage commission to CBRE. Buyer represents that NAI CBI is representing Buyer in connection with the purchase of the Property and Business. Buyer further represents to the Seller that Buyer has no knowledge of any other real estate broker, consultant or any finder in connection with, or making any claim for a commission in connection with, the transaction contemplated in this instrument, and Buyer represents and warrants that Buyer has not committed any act or suffered any act to be committed so as to create any liability or give rise to a claim for a real estate brokerage commission or finder's fee to any other person or entity except as stated above. From the brokerage commission Seller paying to CBRE, Seller agrees that the sales commission paid to CBRE will be shared with Buyer's Broker (NAI CBI) pursuant to a cooperating brokerage agreement, and payable through escrow at Closing of the transaction contemplated in this instrument. This Section shall survive the Closing.

     15.    <u>Casualty</u>.

       15.1.   <u>Notice of Casualty</u>. If, at any time after the Effective Date and prior to Closing or earlier termination of this Agreement, the Property or any portion thereof is damaged or destroyed by fire or any other casualty ("<u>Casualty</u>"), Seller shall give written notice of such Casualty, including the estimated amount of the damage and time required to repair the damage, to Buyer within three (3) days after the occurrence of such Casualty.

       15.2.   <u>Material Casualty</u>. If (i) the amount of the repair or restoration of the Property damaged by a Casualty equals or exceeds TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($200,000.00) or (ii) the time to fully repair and restore any damage caused by such Casualty is reasonably expected to exceed six (6) months (each, a "<u>Material Casualty</u>"), then Buyer shall have the right to elect, by providing written notice to Seller within ten (10) days after Buyer's receipt of Seller's written notice of such Material Casualty to (A) terminate this Agreement, in which case the Termination Provisions shall apply, or (B) proceed to Closing, without terminating this Agreement, in which case Seller shall (i) provide Buyer with a credit against the Purchase Price in an amount equal to the applicable

Ex. A - 20

insurance deductible and (ii) transfer and assign to Buyer all of Seller's right, title and interest in and to all proceeds from all casualty and lost profits insurance policies maintained by Seller with respect to the Property, and Buyer shall assume full responsibility for all needed repairs upon Closing. If Buyer fails to provide written notice of its election to Seller within such time period, then Buyer shall be deemed to have elected to terminate this Agreement pursuant to clause (A) of the preceding sentence. If the Closing is scheduled to occur within Buyer's ten (10) day election period, the Closing Date shall be postponed until the date which is five (5) Business Days after the expiration of such ten (10) day election period.

15.3.  Non-Material Casualty.  In the event of any Casualty which is not a Material Casualty, then Buyer shall not have the right to terminate this Agreement and shall proceed to Closing, in which case Seller shall (A) provide Buyer with a credit against the Purchase Price in an amount equal to the applicable insurance deductible and (B) transfer and assign to Buyer all of Seller's right, title and interest in and to all proceeds from all casualty and lost profits insurance policies maintained by Seller with respect to the Property, and Buyer shall assume full responsibility for all needed repairs upon Closing.

16.  Eminent Domain.

16.1.  Notice of Condemnation.  If, at any time after the Effective Date and prior to Closing, any governmental authority commences any condemnation proceeding or other proceeding in eminent domain with respect to all or any portion of the Real Property (a "Condemnation"), Seller shall give written notice of such Condemnation to Buyer within three (3) days after Seller receives notice of such Condemnation.

16.2.  Material Condemnation.  If the Condemnation would (i) result in the permanent loss of a portion of the Real Property with a fair market value more than TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($200,000.00), (ii) result in any permanent material reduction or restriction in access to the Land or Improvements, or (iii) have a permanent materially adverse effect on the ownership and operation of the Real Property as conducted prior to such Condemnation (each, a "Material Condemnation"), then Buyer shall have the right to elect, by providing written notice to Seller within ten (10) days after Buyer's receipt of Seller's written notice of such Material Condemnation, to (A) terminate this Agreement, in which case the Termination Provisions shall apply, or (B) proceed to Closing, without terminating this Agreement, in which case Seller shall assign to Buyer all of Seller's right, title and interest in all proceeds and awards from such Material Condemnation. If Buyer fails to provide written notice of its election to Seller within such time period, then Buyer shall be deemed to have elected to terminate this Agreement pursuant to clause (A) of the preceding sentence. If the Closing is scheduled to occur within Buyer's ten (10) day election period, the Closing shall be postponed until the date which is five (5) Business Days after the expiration of such ten (10) day election period.

16.3.  Non-Material Condemnation.  In the event of any Condemnation other than a Material Condemnation, Buyer shall not have the right to terminate this Agreement and shall proceed to Closing, in which case Seller shall assign to Buyer all of Seller's right, title and interest in all proceeds and awards from such Condemnation.

17.  Defaults and Remedies.

17.1.  Buyer's Default/Seller's Remedies.  If Buyer is in default in the performance of any obligation or covenant under this Agreement and Seller is not in default and Buyer does not cure such default to the reasonable satisfaction of Seller within five (5) Business Days following Buyer's receipt of written notice from Seller of such default, then Seller's sole and exclusive remedy shall be to terminate this Agreement in which event Seller shall be entitled to the Deposit as full and complete liquidated

Ex. A - 21

damages for Buyer's default of its obligations under this Agreement, it being agreed between the parties that Seller's damages in the event of such a breach would be extremely difficult or impractical to determine and the amount of the Deposit is a reasonable estimate thereof. Thereafter, the parties shall be released from all further obligations and liabilities under this Agreement.

17.2  Seller's Default/Buyer's Remedies. If Seller is in default in the performance of any obligation or covenant under this Agreement, including but not limited to, the obligation to convey the Property to Buyer and Buyer is not in default and Seller does not cure such default to the reasonable satisfaction of Buyer within five (5) Business Days following Seller's receipt of written notice from Buyer of such default, Buyer shall elect as its remedy one of the following: (i) to terminate this Agreement, and upon such termination (a) Buyer shall be entitled to the return of the Deposit, and (b) Seller shall pay all escrow cancellation charges and reimburse Buyer for Buyer's costs and fees incurred in connection with this transaction including its due diligence investigation or (ii) proceed to close and bring a suit for damages, specific performance if necessary or any other remedy at law or in equity.

18.  Miscellaneous.

18.1.  Instruments of Further Assurance, Good Faith. Each of the parties hereto agrees, at its own expense, to execute and deliver to the other at or after the Closing any and all further instruments and documents as either may reasonably request in order to carry out any of the provisions of this Agreement. Seller and Buyer shall act in good faith in all respects relative to the transactions contemplated hereby. This Section shall survive the Closing.

18.2.  Notices. Any notice, consent or approval required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given (i) upon hand delivery, (ii) two (2) Business Days after being deposited with Federal Express or another reliable overnight courier service for next day delivery, or (iii) three (3) Business Days after being deposited in the United States mail, registered or certified mail, postage prepaid, return receipt required, and addressed as follows (or such other address as either party may from time to time specify in writing to the other in accordance with this Section):

| | |
|---|---|
| If to Seller: | David Zhou<br>255 Duncan Mill Road, Unit 307<br>Toronto, ON<br>Canada M3B 3H9 |
| with a copy to: | Choi & Ito<br>700 Bishop Street, Suite 1107<br>Honolulu, Hawaii 96813<br>Attention: Chuck C. Choi |
| If to Buyer: | Jinwook Shin<br>SHIN & YOO<br>11th Floor, Woori Tech Bldg. 9<br>WorldCup Bukro 56-gil, Mapo-gu<br>Seoul 03923, S. KOREA |

Ex. A - 22

with a copy to:        Warren Kim, Esq.
                         1888 Kalakaua Lane, Ste C312
                         Honolulu, Hawaii 96815


If to Escrow Agent:     Title Guaranty Escrow Services, Inc.
                         Attn: Jeremy Trueblood
                         235 Queen Street
                         Honolulu, Hawaii 96813

18.3.   Parties in Interest.  This Agreement, and each and every term and provision hereof, shall inure to the benefit of, and be binding upon and enforceable against, Buyer and Seller hereto and their respective successors and permitted assigns.

18.4.   Incorporation of Exhibits and Schedules.  The following Exhibits shall be construed with and as integral parts of this Agreement to the same extent as if the same had been set forth verbatim herein:

Exhibits        A     Land Description

18.5.   Third-Party Beneficiaries.  This Agreement does not confer any rights or remedies on any Person other than (i) the parties hereto and their respective successors and permitted assigns and (ii) any indemnitee to the extent such indemnitee is expressly provided a right of defense or indemnification in this Agreement.

18.6.   Assignment.  Buyer is permitted to assign this Agreement to a new special purpose entity, provided that (i) such new entity is an Affiliate of Buyer, (ii) the assignment shall not release Buyer from its obligations under this Agreement, (iii) the assignment does not delay the Closing, and (iv) the permitted assignee assumes all the duties and obligations of Buyer under this Agreement. This Agreement shall not otherwise be assignable or transferable in whole or in part, or by operation of law, by either party and nothing in this Agreement is intended to confer upon any Person, other than the parties hereto except as set forth in Section 18.6., any rights, remedies or obligations under, or by reason of, this Agreement.  The term "Affiliate" means an entity directly or indirectly, through one or more intermediaries, controlled by or under common control with an entity (a) assigning or transferring the applicable interest or (b) being referred to.  The terms "controlled" and "control", as used in the immediately preceding sentence, means, with respect to an entity that is a corporation, the right to the exercise, directly or indirectly, of more than fifty percent (50%) of the voting rights attributable to the shares of the controlled corporation and, with respect to an entity that is not a corporation, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the controlled entity.

18.7.   Titles and Headings.  Titles and headings to sections and paragraphs herein are for the purpose of convenience and reference only and shall in no way limit, define or otherwise affect the provisions thereof.

18.8.   Severability.  If any term, provision, covenant or condition of this Agreement should be held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of this Agreement shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby.

18.9.   Time is of the Essence.  Time is specifically declared to be of the essence of this Agreement and of acts required to be done and performed by Buyer and Seller.

18.10.   Applicable Law and Forum.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Hawaii, excluding its choice of law rules that may otherwise require the application of the law of another jurisdiction.  Any legal action or any other proceeding, including an action for declaratory relief, brought to enforce the Agreement or because of or relating to any dispute, breach, default, or misrepresentation in connection with the Agreement, shall be brought and maintained solely in the Circuit Court of the First Circuit, State of Hawaii, or the Bankruptcy Court, as appropriate. Buyer and Seller by execution of this Agreement consent to exclusive personal jurisdiction and venue in such courts, and waive any right to object to such forum or seek any transfer or change of venue to any other forum.

18.11.   Attorneys' Fees.  Should either party hereto reasonably retain counsel for the purpose of enforcing or preventing the breach of any provision hereof, including, but not limited to, instituting any action or proceedings to enforce any provision hereof, for damages by reason of any alleged breach of any provision of this Agreement, for a declaration of such party's rights or obligations hereunder or for any other judicial remedy, then the prevailing party shall be entitled to be reimbursed by the other party for all costs and expenses incurred in connection therewith, including, without limitation, reasonable attorneys' fees and costs for the services rendered to such prevailing party.

18.12.   No Party Deemed Drafter.  The parties agree that no party shall be deemed to be the drafter of this Agreement and further that in the event that this Agreement is ever construed by a court of law, such court shall not construe this Agreement or any provision of this Agreement against any party as the drafter of this Agreement.

18.13.   Entire Agreement.  This Agreement constitutes and contains the entire agreement between Seller and Buyer and supersedes any and all prior negotiations, correspondence, understandings and agreements between the parties respecting the subject matter hereof.

18.14.   Amendment.  This Agreement may be amended only by a writing signed by each of the parties hereto.

18.15.   No Partnership.  Seller and Buyer are not and shall not be considered joint venturers or partners and neither shall have the power to bind, obligate or represent the other.

18.16.   Grammar.  The necessary grammatical changes required to make the provisions of this Agreement apply in the plural sense and to either entities, individuals, males or females, shall in all instances be assumed.

18.17.   Calculation of Time Periods.  Unless otherwise specified in this Agreement, when computing any period of time described in this Agreement, the day of the act or event after which the designated period of time begins to run is not to be included and the last day of the period so computed is to be included, unless such last day is a Saturday, Sunday or legal holiday under the laws of the State of Hawaii or the United States, in which event the period shall run until the end of the next day which is neither a Saturday, Sunday nor such legal holiday.  The final day of any such period shall be deemed to end at 5:00 p.m. Hawaii Standard Time.

18.18.   Business Days.  "Business Days" means Mondays to Fridays (Hawaii Standard Time), other than United States and State of Hawaii holidays.

Ex. A - 24

18.19. No Personal Liability. The parties hereby agree that no individual officer, director, member, manager, employee or representative of Buyer shall have any personal liability under this Agreement. The provisions of this Section shall survive the termination of this Agreement and/or the Closing and the recordation of the Deed.

18.20. Waivers. The failure of any party hereto to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, nor in any way to affect the validity of this Agreement or any part hereof or the right of any party thereafter to enforce each and every

such provision. No waiver of any breach of this Agreement shall be held to constitute a waiver of any other or subsequent breach. No waiver hereunder shall be effective unless in writing and signed by the waiving party.

18.21. Counterparts; Electronic Signatures. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Facsimile and PDF e-mail copies of this executed Agreement shall be fully binding and effective for all purposes whether or not originally executed documents are transmitted to the other party. Facsimile and PDF e-mail signatures on documents will be treated the same as original signatures. Notwithstanding the foregoing, all documents to be recorded shall be originals.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date _____

"Seller"

Hawaii MGCW LLC

By: _____
Name: Wei Zhou
Its: Manager

Hawaii MVCC LLC

By: _____
Name: Wei Zhou
Its: Manager

MDRE LLC

By: _____
Name: Wei Zhou
Its: Manager

MDRE 3 LLC

By: _____
Name: Wei Zhou
Its: Manager

MDRE 4 LLC

By: _____
Name: Wei Zhou
Its: Manager

MDRE 5 LLC

By: _____
Name: Wei Zhou
Its: Manager

Ex. A - 25

MDRE 2 LLC

By: _____

Name: Wei Zhou
Its: Manager

"Buyer"

KH Gangwon Development, Inc.

By: _____

Printed Name: Gyusik Bang
Its: President & CEO
Date: 2022. 5. 16

Ex. A - 26

EXHIBIT A

Property Description
[To be inserted]